UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
HICHAM AZKOUR,                                        :
                                                     :
                          Plaintiff,                 :
                                                     :
                  -against-                           :            MEMORANDUM & ORDER
                                                     :
JEAN-YVES HAOUZI, FRANCK MAUCORT,                     :            11 Civ. 5780 (RJS)(KNF)
JESSICA COMPERIATI , LITTLE REST                      :
TWELVE, INC., SHELDON SKIP TAYLOR,                    :
LAW OFFICES OF SHELDON SKIP TAYLOR,                   :
                                                     :
                          Defendants.                :
-------------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

Plaintiff Hicham Azkour ("Azkour"), proceeding pro se and in forma pauperis, brings

this action under 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42

U.S.C. § 2000e, et seq., New York Executive Law ("NYEL ") § 296, et seq.,[1] the Americans

with Disabilities Act ("ADA"), 42 U.S.C. § 12111, et seq., and the Age Discrimination in

Employment Act ("ADEA"), 29 U.S.C. § 621, et seq., alleging that defendants Jean-Yves

Haouzi ("Haouzi"), Franck Maucort ("Maucort"), Jessica Comperiati ("Comperiati"), and Little

Rest Twelve, Inc. ("LRT"), discriminated and retaliated against him, "on account of his race

(Arab)," by interfering with his rights to: (1) enforce an employment contract; (2) sue; (3) be a

party to a proceeding; (4) give evidence in a proceeding; and (5) "enjoy the full and equal benefit

of all laws and proceedings for the security of his person and property as is enjoyed by white

citizens."  Azkour also asserts claims under 42 U.S.C. §§ 1985 and 1986, alleging that the

---

[1]         These provisions of New York's Executive Law are often referred to as New York State's Human Rights
Law.

above-noted defendants, and defendants Sheldon Skip Taylor ("Taylor"), and the Law Offices

Sheldon Skip Taylor ("LSST"), conspired to "deter him by intimidation and threat from freely,

fully, and truthfully testifying to matters pending in the United States District Court for the

Southern District of New York."  According to Azkour, the "defendants conspired to injure

Plaintiff in his person and property on account of his having attended and testified in the

aforementioned pending matters."  Furthermore, Azkour asserts causes of action against the

defendants, under New York law, for defamation and intentional infliction of emotional distress

("IIED").  In addition, the complaint contains claims Azkour has made against LRT's previous

owners and managers, for actions he alleges were taken by their attorney, in defending against an

action Azkour brought under the Fair Labor Standards Act ("FLSA").

Before the Court is Azkour's application for the court to appoint counsel to assist him in

prosecuting this action.

## BACKGROUND

LRT operates a restaurant and bar in Manhattan known as Ajna Bar; Azkour worked for

LRT from October 2009, until his employment ceased in February 2010.  During his tenure with

LRT, Azkour performed the work of a busboy and food runner.  After Azkour's employment

with LRT ended, he commenced a civil action against it and members of its management for

failure to compensate him fully in accordance with FLSA, and analogous New York laws and

regulations, and for retaliating against him.  That action is pending.  In the instant action, Azkour

alleges that Taylor, LRT's former counsel in the pending FLSA action, asked inappropriate

questions during Azkour's deposition, made false and defamatory statements about him, and

conspired with Haouzi, Maucort and Comperiati to interfere with his rights.

-2-

In January 2010, Azkour filed a: (1) charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), alleging that LRT's previous owners and managers discriminated and retaliated against him; and (2) complaint with the United States Department of Labor ("DOL"), alleging that LRT's previous owners and managers violated FLSA.

According to Azkour, about six weeks after his employment with LRT ceased, new owners and managers took control of the restaurant.  On or about March 30, 2010, after the new owners and managers had taken control of LRT, Azkour approached Maucort, who, according to Azkour, is LRT's general manager, and requested that he be paid: 1) "full pay"; 2) back pay; 3) overtime compensation; 4) gratuities; and 5) service charges, to remedy "the unlawful acts of retaliation by the former managers."  Azkour's request was denied.  He returned to the restaurant on April 1, 2010, and renewed his request.  Azkour recalls that, during his April 1, 2010 visit to the restaurant, Maucort told him that "LRT and its new management would not be able to address his claims because they are not liable for the wrongs done to him by the former managers."  Thereafter, Azkour asked to meet with Haouzi, who, Azkour maintains, is LRT's owner, chief executive officer and chief operating officer.  However, Maucort, accompanied by armed security guards, directed Azkour to leave the premises.  Instead of exiting the restaurant immediately, Azkour requested a letter of reference to assist him in securing new employment, but Maucort ignored his request, and according to Azkour, made a derogatory, racially-charged utterance about him.  Azkour contends that the presence of the security personnel intimidated him, so he did not press his request further, and left the premises peacefully.

## DISCUSSION

Civil litigants have no constitutional right to counsel.  See <u>United States v. Coven</u>,

662 F.2d 162, 176 (2d Cir. 1981).  However, 28 U.S.C. § 1915(e)(1) authorizes a district court to "request an attorney to represent any person unable to afford counsel."  Azkour made a successful application to proceed in forma pauperis; accordingly, he is within the class of litigants to whom 28 U.S.C. §1915(e)(1) speaks.  "In deciding whether to appoint counsel, [a] district [court] should first determine whether the indigent's position seems likely to be of substance."  Hodge v. Police Officers, 802 F.2d 58, 61 (2d Cir. 1986).  Once this threshold is met, the court should proceed to consider other criteria "such as the factual and legal complexity of the case, the ability of the litigant to navigate the legal minefield unassisted, and any other reason why in the particular case appointment of counsel would more probably lead to a just resolution of the dispute."  Carmona v. U.S. Bureau of Prisons, 243 F.3d 629, 632 (2d Cir. 2001) (citing Hodge, 802 F.2d at 61-62).  An indigent's claim is likely to be of substance if it has merit and "appears to have some chance of success[.]"  Hodge, 802 F.2d at 60-61.  Pleadings drafted by a pro se litigant, such as Azkour, are to be construed liberally and interpreted to raise the strongest arguments they suggest.  See Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).  In reviewing Azkour's complaint, the Court has applied this standard.

I.     **Intentional Discrimination Claims**

   A.     **Section 1981 Claim**

   Section 1981 of Title 42 of the United States Code provides, in part, that

> [a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.

42 U.S.C. § 1981(a).

To establish a § 1981 discrimination claim, a plaintiff must demonstrate: (1) that she is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) that the discrimination concerned one or more of the activities enumerated in § 1981. See Lauture v. Int'l Bus. Mach. Corp., 216 F.3d 258, 261 (2d Cir. 2000) (citation omitted).

In his complaint, Azkour alleges, inter alia, that the defendants discriminated against him by interfering with his rights to enforce an employment contract and to enter into new employment contracts, "on account of his race (Arab)," by, among other things, refusing to provide him a letter of reference.  A person who is "subjected to intentional discrimination [limiting his employment opportunities] based on the fact that he was born an Arab," may assert a § 1981 claim.  St. Francis College v. Al-Khazraji, 481 U.S. 604, 613, 107 S. Ct. 2022, 2028 (1987).  Accordingly, the Court finds that Azkour's § 1981 claim may have merit.

**B.      Title VII Claim**

Title VII  prohibits discrimination on the basis of race, color, religion, sex, and national origin with respect to compensation, terms, conditions or privileges of employment, and proscribes discriminatory practices that would deprive any individual of employment opportunities or otherwise affect adversely his or her status as an employee.[2]  See Thompson v. North American Stainless, LP., __ U.S.__, 131 S. Ct. 863, 868 (2011).  Title VII also prohibits an employer from retaliating against its employees by "discriminating against any of his or her employees . . . because [the employee] has opposed any practice made an unlawful employment practice by" the statute.  42 U.S.C. § 2000e-3(a).

---

[2]      "The standard[] for recovery under the New York State Human Rights Law . . . [is] the same as the federal standard[] under Title VII"; therefore, no independent analysis of Azkour's New York State Human Rights Law claim is necessary.  Nelson v. HSBC, USA, 41 A.D.3d 445, 446, 837 N.Y.S.2d 712, 713 (App. Div. 2d Dep't 2007).

Courts analyze Title VII claims of racial discrimination in accordance with the three-part burden-shifting framework established in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S. Ct. 1817 (1973).  To establish a <u>prima facie</u> case of discrimination, under Title VII, a plaintiff must show: (1) he or she is a member of a protected class; (2) he or she is qualified to perform the job at issue or performed the job satisfactorily; (3) he or she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination.  <u>See</u> <u>Feingold v. State of New York</u>, 366 F.3d 138, 152 (2d Cir. 2004).  If the plaintiff meets this burden, a presumption of unlawful discrimination arises and the burden of production then shifts to the defendant, who must adduce evidence that an adverse employment action was taken for a legitimate, non-discriminatory reason.  <u>See id.</u>  If the defendant states such a reason, the presumption of discrimination falls out of the case and the plaintiff must prove, by a preponderance of the evidence, that the reason(s) offered by the defendant was merely a pretext for discrimination.  <u>See id.</u>

As noted above, Azkour is a member of a racial minority, as such, he is a member of a protected class under Title VII.  According to Azkour, he sought employment with LRT, and wanted to pursue job opportunities with other employers.  However, without more, these facts do not establish what position(s) he sought and whether he was qualified for the position(s).  The paucity of information regarding the position(s) Azkour sought prevents the Court, at this juncture, from concluding that Azkour can establish a <u>prima facie</u> case of race discrimination, under Title VII.  As a consequence, the Court is also unable to conclude that Azkour's Title VII race discrimination claim is likely to have merit.

**C.     Age Discrimination in Employment Act Claim**

ADEA provides, in relevant part, that it "shall be unlawful for an employer . . . to fail or

refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 129 S. Ct. 2343, 2350 (2009) (citing 29 U.S.C. § 623(a)(1)) (internal quotation marks omitted).  ADEA's protections extend to individuals who are at least 40 years of age.  See 29 U.S.C. § 631(a).

To establish a prima facie case of discrimination, based on disparate treatment, pursuant to the ADEA, a plaintiff "must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action."  Id. at 2352.  Unlike Title VII, the burden-shifting framework established by the Supreme Court in McDonnell Douglas is not applicable to discrimination claims brought pursuant to the ADEA.  Id.

Azkour does not allege that the defendants made any reference to or mention of his age in their interactions with him.  Furthermore, he does not allege that LRT took any action adverse to him from which one might infer that Azkour's age was a causative factor in the action the defendants took.  Therefore, it does not appear that Azkour's ADEA claim is likely to be of substance.

### D.    Americans with Disabilities Act Claim

An employer is subject to the ADA if it is "engaged in an industry affecting commerce [that has] [] 25 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year . . . ."  42 U.S.C. § 12111(5)(A).

The complaint indicates that the defendants operate a restaurant and bar.  Their establishment is engaged in an industry that affects commerce.  However, Azkour has not made any factual allegations about the number of employees the defendants have or have had, such that it is clear that the defendants are employers subject to the ADA's proscriptions.  Therefore,

the Court is unable to determine that Azkour's ADA claim is likely to have merit.

## II.   Retaliation Claims

### Section 1981 Claim

In addition to prohibiting discrimination based on race, § 1981 bars an employer from taking an adverse action against any employee who engages in conduct to champion the rights secured to him by § 1981.  See 42 U.S.C. § 1981.  Retaliation claims brought under § 1981 are analyzed pursuant to  McDonnell Douglas.  See Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010).  Along with his § 1981 retaliation claim, Azkour alleges retaliation under Title VII, ADEA, ADA, and NYEL § 296.  The McDonnell Douglas evidentiary framework is used to analyze retaliation claims brought under each of these statutes; as such, no independent analysis of each of these retaliation claims is necessary.  See Mack v. Otis Elevator Co., 326 F.3d 116, 129 (2d Cir. 2003) (Title VII retaliation claim); see Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 223 (2d Cir. 2001) (ADA retaliation claim); see Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 110 (2d Cir. 2010) (ADEA retaliation claim); see Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 609 (2d Cir. 2006) (NYEL § 296 retaliation claim).

A plaintiff may establish a  prima facie case of retaliation under § 1981 by showing: "(1) his participation in protected activity; (2) defendant's knowledge thereof; (3) [a] materially adverse employment action [was taken by the employer]; and (4) a causal connection between the protected activity and the adverse employment action." See Hicks, 593 F.3d at 164 (internal quotation marks and citations omitted).  If the plaintiff satisfies this burden, a presumption of retaliation is created.  The defendant employer must then articulate a legitimate, non-discriminatory reason for its adverse employment action.  See id.  If the employer does so, the presumption of retaliation falls away and, the plaintiff must demonstrate that retaliation was

a substantial reason for the adverse action.  See id.

An adverse employment action, in the context of a retaliation claim, is one that would

likely dissuade a reasonable employee from making or supporting a similar charge of

discrimination.  See id. at 170; Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68, 126

S. Ct. 2405, 2415 (2006).  A causal connection between the protected activity and the adverse

action may be established through evidence of retaliatory animus directed against a plaintiff by

the defendant.  See Mullins v. City of New York, 626 F.3d 47, 53 (2d Cir. 2010).

 On or about January 22, 2010, Azkour filed a charge with the EEOC, alleging

discrimination and retaliation based on his race.  By filing a charge with the EEOC, Azkour

engaged in protected activity.  Azkour contends that LRT's previous managers and owners knew

that he made the above-noted filing with the EEOC.  However, with the exception of defendant

Taylor, Azkour does not allege that any other defendant in the instant action had any knowledge

of his filing with the EEOC at the time Azkour was denied re-employment with LRT or a letter

of reference.  See Long v. AT&T Information Systems Inc., 733 F. Supp. 188, 206 (S.D.N.Y.

1990)(dismissing a retaliation claim because plaintiff failed to establish that those who fired him

had knowledge of plaintiff's EEOC charge filed three weeks prior to his termination).  In

addition, without a showing that the defendants, other than Taylor, had any knowledge of his

involvement in protected activity, it is unlikely Azkour would be able to demonstrate that a

causal relationship exists between his protected activity, and the adverse employment action he

attributes to the defendants.  In the circumstance of the case at bar, the facts alleged by Azkour,

do not indicate to the Court that his retaliation claims against LRT's new owners and managers

may have merit.

-9-

With respect to Taylor, Azkour has not pleaded any facts demonstrating that Taylor took an adverse employment action against him. Azkour does not allege that Taylor was a LRT manager or owner. According to Azkour, his only interaction with Taylor occurred through Taylor's role as counsel to LRT's previous owners and managers in the pending FLSA action.

The instant complaint makes clear that Azkour is displeased with the tactics and methods employed by Taylor in his defense of LRT in the FLSA action, and that Azkour's retaliation claim against Taylor is designed to redress his displeasure with Taylor's alleged conduct during the FLSA action. However, inasmuch as Taylor and Azkour were never in an employer-employee relationship, Taylor was never in a position to take a materially adverse employment action against Azkour. Thus, Azkour would be unable to establish, with respect to Taylor, an element of his prima facie case of retaliation. See Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 720 (2d Cir. 2010).

## III.   Conspiracy claims

To establish a prima facie claim of conspiracy under § 1985(2) a plaintiff must plead facts sufficient to support a finding of: "(1) a conspiracy between two or more persons, (2) to deter a witness by force, intimidation or threat from attending court or testifying freely in any pending matter, which (3) results in injury to the plaintiff." Chahal v. Paine Webber Inc., 725 F.2d 20, 23 (2d Cir. 1984). A plaintiff who submits a claim of conspiracy that "contain[s] only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." Gallop v. Cheney, 642 F.3d 364, 369 (2d Cir. 2011) (citation omitted). Pursuant to § 1986, liability may be imposed on any individual who, despite knowledge that any of the wrongs discussed in § 1985 are about to be committed, and having the power to prevent or aid, neglects to take action to prevent the wrongs from being

-10-

committed.  See Mian v. Donaldson, Lufkin & Jenrette Secs. Corp., 7 F.3d 1085, 1088 (2d Cir.

1993); see also 42 U.S.C. § 1986.  Without a violation of § 1985, there can be no violation of §

1986.  See 42 U.S.C. § 1986.

Azkour contends that the defendants conspired with LRT's previous owners and

managers and their previous counsel to deter him from testifying in matters pending before this

court.  Azkour's conspiracy claim is based on alleged acts of misconduct committed by counsel

to LRT's previous owners and managers, in the FLSA action.  Beyond alleging a conspiracy,

Azkour has not made factual allegations demonstrating that the instant defendants had any

knowledge of or connection to the actions in which Azkour maintains LRT's previous owners

and managers engaged during the FLSA litigation, or that the instant defendants conspired with

them.  The facts, alleged by Azkour, do not appear to state a claim under § 1985.  Without a

violation of § 1985, there can be no violation of § 1986.  See 42 U.S.C. § 1986.  Accordingly,

these claims do not appear likely to have merit.

IV.    **Defamation Claim**

"[T]he elements of a defamation claim are a false statement, published without privilege

or authorization to a third party, constituting fault . . . and it must either cause special harm or

constitute defamation per se."  Peters v. Baldwin Union Free School Dist., 320 F.3d 164, 169 (2d

Cir. 2003) (internal quotation marks and citations omitted).  Under New York law, a participant

in a judicial proceeding who makes statements in connection with that proceeding is entitled to

an absolute privilege with respect to the statements made.  See Kelly v. Albarino, 485 F.3d 664,

665-66 (2d Cir. 2007).  The alleged defamatory statements must be pertinent to the matter before

the court; "[h]owever, [since] this is the broadest of possible privileges . . . any matter which, by

any possibility, under any circumstances, at any stage of the proceeding, may be or may become

material or pertinent is protected . . . ." Id.  For a statement made in connection with a court proceeding to be the subject of a defamation action, it must be "so obviously impertinent as not to admit of discussion, and so needlessly defamatory as to warrant the inference of express malice . . . [i]n other words, the statement must be . . . motivated by no other desire than to defame." Dachowitz v. Kranis, 61 A.D.2d 783, 786, 401 N.Y.S.2d 844, 848 (App. Div. 2d Dep't 1978) (internal quotation marks and citations omitted).

Azkour contends that he was defamed by the defendants based on statements and submissions made by LRT's previous owners and managers, in the FLSA action noted above. More specifically, Azkour claims that he was defamed by the defendants in the FLSA action because of: (1) an incident report, the text of which he claims was altered to include false information; (2) statements made to the court describing Azkour as a "violent drunkard"; (3) unspecified statements made in public "court papers"; and (4) statements made and questions, respecting the validity of his marriage, asked of him by counsel at a deposition taken in the FLSA action.  For example, counsel stated the following:

> [w]ell, I think that one thing we could explore and should explore is the fact that he went to Denver and got married in Denver.  I'm going to ask now how long it was before he got married.  And I think we're entitled to find out whether this was a marriage of convenience for immigration purposes or a legitimate marriage.

Azkour concedes that all the alleged defamatory utterances were made in connection with the FLSA action he filed against LRT's previous owners and managers.   All the utterances upon which Azkour relies in support of his defamation claim are similar to the exemplar utterance noted above.  Based on the record before it, the Court is unable to conclude that the utterances to which Azkour has made reference were "motivated by no other desire than to defame."  See Dachowitz, 61 A.D.2d at 786, 40 N.Y.S.2d at 848.  Therefore, it appears, at this juncture, that the

-12-

utterances complained of are protected by absolute privilege.  See Kelly, 485 F.3d at 666.

Accordingly, it is likely that Azkour's defamation claim has no merit.

**IV.  IIED Claim**

      To state a claim for IIED, a plaintiff must demonstrate: "(1) extreme and outrageous

conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe

emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe

emotional distress."  Conboy v. AT&T Corp., 241 F.3d 242, 258 (2d Cir. 2001) (citations

omitted).  To establish extreme and outrageous conduct, the conduct alleged "must be so

outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."  Id. at

258.

      Azkour alleges that the defendants: (1) failed to compensate him for the actions of LRT's

previous owners and managers; (2) used derogatory, racially-charged language against him; and

(3) failed to provide him with a letter of reference.  Azkour also contends that LRT's previous

owners and managers, along with their counsel, have made defamatory statements and court

submissions in defending against the pending FLSA action.  However, Azkour, has failed to

plead any facts establishing that LRT's previous owners and managers engaged in conduct that

was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds

of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."  Id.

Without factual allegations of such a nature, it is not likely that Azkour's IIED claim has merit.

      Most of the claims asserted in Azkour's third amended complaint appear to lack merit,

and, thus, have little likelihood of success.  That Azkour may have alleged facts sufficient to

state one claim upon which relief may be granted, does not mean that ultimately the claim will

be shown to be meritorious, or that when all the <u>Hodge</u> factors are considered the case warrants allocating the scarce resource of volunteer-attorney time.  See <u>Ferrelli v. River Manor Health Care Center</u>, 323 F.3d 196, 205-06 (2d Cir. 2003).  The facts alleged show that this is not a complex case.  Azkour has articulately set forth the facts and made citation to applicable statutes.  Based on Azkour's submissions, he appears capable of prosecuting this action unassisted.  These factors militate against granting his application for court-appointed counsel.  Therefore, at this juncture, the Court finds that it would be neither reasonable nor appropriate to appoint pro-bono counsel to represent Azkour.

**CONCLUSION**

For the reasons set forth above, Azkour's application for the court to appoint counsel to represent him in this action is denied.  This order resolves Docket Entry No. 21.

Dated: New York, New York
       May 11, 2012

SO ORDERED:

_Kevin Nathaniel Fox_
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

Copies mailed to:

Hicham Azkour
Andrew Hoffmann