```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
HICHAM AZKOUR,                                              :
                                                            :
                Plaintiff,                                  :
                                                            :
        -against-                                           :
                                                            :
                                                            :      MEMORANDUM & ORDER
JEAN-YVES HAOUZI, FRANCK MAUCORT,                           :
JESSICA COMPERIATI , LITTLE REST                            :      11 Civ. 5780 (RJS)(KNF)
TWELVE, INC., SHELDON SKIP TAYLOR                           :
ESQ, LAW OFFICES OF SHELDON SKIP                            :
TAYLOR,                                                     :
                                                            :
                Defendants.                                 :
------------------------------------------------------------X
```

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

## INTRODUCTION

Before the Court, in this action brought under the Fair Labor Standard Act ("FLSA"), is the plaintiff Hicham Azkour's ("Azkour") pro se motion, pursuant to Federal Rule of Civil Procedure 15(a)(2), for leave to file a fourth-amended complaint. Azkour seeks leave from the Court to amend his third-amended complaint to add a claim pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., alleging that the defendants "engaged in the (1) conduct (2) of a criminal enterprise (3) through a pattern (4) of racketeering activity." The motion is unopposed.

## BACKGROUND

Defendant Little Rest Twelve, Inc. ("LRT") operates a restaurant and bar in Manhattan

1

known as Ajna Bar.[1] Azkour worked for LRT from October 2009, until his employment ceased in February 2010. During his tenure with LRT, Azkour performed the work of a busboy and food runner. After Azkour's employment with LRT ended, he commenced a civil action against it and members of its management for failing to compensate him fully in accordance with FLSA, and analogous New York laws and regulations, and for retaliating against him. That action is pending. In the instant action, Azkour alleges that defendant Sheldon Skip Taylor (" Taylor"), LRT's former counsel in the pending FLSA action, asked inappropriate questions during Azkour's deposition, made false and defamatory statements about him, and conspired with defendants Jean-Yves Haouzi ("Haouzi"), Franck Maucort ("Maucort") and Jessica Comperiati ("Comperiati") to interfere with his rights.

In the motion at issue, Azkour seeks leave from the court to amend his complaint to add a civil RICO claim, through which he alleges that the defendants "engaged in the (1) conduct (2) of a criminal enterprise (3) through a pattern (4) of racketeering activity." Azkour avers that,

> [s]ince 2006, [the defendants] have been knowingly, intelligently, and willfully transmitting or causing to be transmitted by means of mail and wire communication in interstate commerce fraudulent and inaccurate customer bills, employee labor reports, and employee earning statements for the purpose of executing [a scheme or artifice to defraud, and for obtaining money by means of false and fraudulent pretenses, representations and promises] and, thus defrauding their patrons and employees alike, including Plaintiff.

Azkour contends that, "in a pattern of organized racketeering, defendants have been defrauding employees of Buddha Bar and Ajna Bar of 50% of their gratuities . . . by using mail and electronic access devices in interstate commerce . . . [and] fraudulently obtained, retained, and

---

[1] The establishment operated by LRT, identified as Ajna Bar, was previously operated under the name Buddha Bar.

misappropriated monies, which . . . must be paid to the wait staff of Buddha Bar and Ajna Bar." According to Azkour, the "Defendants have been defrauding the patrons of Buddha Bar and Ajna Bar by falsely representing to them that all gratuities and service charges paid by them using credit cards and other electronic access devices would and/or will compensate the wait staff's suffered labor and services."

Azkour has filed three versions of his complaint, during the pretrial phase of this litigation. After filing his original complaint, on August 8, 2011, which was never served on any defendant, Azkour filed his first-amended complaint on October 14, 2011, which, on December 16, 2011, was served on Haouzi, Maucort, Comperiati, and LRT. However, on October 20, 2011, prior to serving the first-amended complaint, Azkour filed his second-amended complaint, and never served it on any defendant. On November 3, 2011, Azkour filed a motion for leave to amend his second-amended complaint. In an Order issued on January 31, 2012, the Court determined that Azkour's motion to amend his second-amended complaint was unnecessary, because, at the time he filed his amended pleading "1) 21 days had not elapsed after service of any of his pleadings-he had not served any of his pleadings on any defendant; and 2) 21 days had not elapsed after a responsive pleading or Rule 12(b), (e), or (f) motion had been served . . . ." Accordingly, Azkour was permitted to file his third-amended complaint, as of right, pursuant to Fed. R. Civ. P. 15(a)(1).

If this motion is granted, the pleading Azkour files would be the fourth iteration of his complaint. Azkour does not allege that new information has come to him that prompts him to file the instant motion to amend. It appears that the facts supporting his civil RICO claim were

3

known to him when he filed the original complaint, but he has delayed, until now, in making any attempt to assert the civil RICO claim in this action.

## DISCUSSION

The pleadings drafted by a pro se litigant, such as Azkour, are held to less stringent standards than those prepared by attorneys, see Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972), and are to be construed liberally and interpreted to raise the strongest arguments they suggest.  See Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).  In reviewing Azkour's motion to file the proposed fourth-amended complaint, the Court has applied these standards.

Once the time for amending the pleadings as a matter of course expires, "a party may amend its pleading only with the opposing party's written consent or the court's leave, and the court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).  "Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962)).

Motions to amend, under Rule 15(a)(2), may be made at any stage of the litigation.  See 6 Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1487 (3d. 2010).  However, a party seeking to amend should bring its motion "as soon as the necessity for altering the pleading becomes apparent," to avoid an allegation of delay.  Id. at §

1488; see also Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir. 1990) (upholding the district court's decision to deny leave to amend where the plaintiff waited more than 17 months after bringing suit to request leave to amend the pleading, and plaintiff's reason for the delay was ignorance of the law). However, "[m]ere delay . . . absent a showing of bad faith or undue prejudice, does not provide a basis for [a] district court to deny the right to amend." State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981) (citation omitted). Bad faith exists when a party attempts to amend its pleading for an improper purpose. See Austin v. Ford Models, Inc., 149 F.3d 148, 155 (2d Cir. 1998) (affirming the district court's denial of leave to amend a complaint where plaintiff sought to "erase . . . admissions [made] in [the previous] complaint") (abrogated on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S. Ct. 992 (2002). Prejudice may exist, inter alia, when the amendment would: "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; [or](ii) significantly delay the resolution of the dispute . . . ." Monahan v. New York City Dep't of Corrections, 214 F.3d 275, 284 (2d Cir. 2000) (internal quotation marks and citation omitted). In addition, the Second Circuit Court of Appeals has identified prejudice to the opposing party "resulting from a proposed amendment as among the most important reasons to deny leave to amend." AEP Energy Services Gas Holding Co. v. Bank of America, N.A., 626 F.3d 699, 725 (2d Cir. 2010) (internal quotation marks and citation omitted). As the defendants did not oppose the instant motion, the Court does not have any information before it establishing that granting Azkour's request to file the proposed amended complaint would cause the defendants undue prejudice or that the request to amend is an act of bad faith on Azkour's part. Therefore,

Azkour's delay in filing the instant motion is not decisive.

"[W]hen a claim is clearly frivolous or legally insufficient on its face," leave to amend a complaint should be denied. Papadopoulos v. United States, No. 08 Civ. 11256, 2010 WL 3155037 at *4 (S.D.N.Y. Aug. 9, 2010). Futility of a proposed amendment is determined by using the same standard that governs Federal Rule of Civil Procedure 12(b)(6) motions to dismiss. See Nettis v. Levitt, 241 F.3d 186, 194 n.4 (2d Cir. 2001) (citation omitted) (overruled on other grounds). Thus, leave to amend may be denied, based on futility, if the proposed new claim would not withstand a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim. When considering a motion to dismiss, all facts alleged in the complaint are assumed to be true and all reasonable inferences are drawn in the plaintiff's favor. See Interpharm, Inc v. Wells Fargo Bank, Nat'l Ass'n, 655 F.3d 136, 141 (2d Cir. 2011). To survive a motion to dismiss, a party must allege "enough facts to state a claim [for] relief that is plausible on its face." Bell Atlantic Corp v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007); see Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)( finding "[t]he plausibility standard" implies more than "sheer possibility," but less than probability). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

**RICO CLAIM**

Azkour's proposed fourth-amended complaint asserts claims pursuant to 18 U.S.C. §§ 1962(b), (c), and (d). Section 1962(b) makes it unlawful "for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or

indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(b). Section 1962(c) makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Section 1962(d) prohibits a conspiracy to violate subparagraphs (a), (b), or (c) of section 1962. See 18 U.S.C. § 1962(d). To establish such a conspiracy, "a plaintiff must prove the existence of an agreement to violate RICO's substantive provisions." Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc., 187 F.3d 229, 244 (2d Cir. 1999) (citation omitted).

To state a claim for damages under RICO, a plaintiff must allege a violation of "the substantive RICO statute, 18 U.S.C. § 1962." Moss v. Morgan Stanley Inc., 719 F.2d 5, 17 (2d Cir. 1983). To satisfy that obligation, a plaintiff must allege that: "(1) the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." Id.

"Racketeering activity" is, inter alia, "any act which is indictable under any of the following provisions of Title 18, United States Code . . . section 1341 (relating to mail fraud), [and] section 1343 (relating to wire fraud) . . . ." 18 U.S.C. § 1961(1). Section 1341 provides, in pertinent part, that "[w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, . . . places in any post office or authorized depository for mail

matter, [for the purpose of executing such scheme or artifice,] any matter or thing whatever to be sent or delivered by the Postal Service . . . [or] by any private or commercial interstate carrier" commits mail fraud.  18 U.S.C. § 1341.  Section 1343 explains that, "[w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate . . . commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, " commits wire fraud.  18 U.S.C. § 1343.

Under RICO, a "pattern of racketeering activity" requires that at least two predicate offenses be committed within ten years of each other.  18 U.S.C. § 1961(5).  To satisfy this standard, a plaintiff "must allege either an open-ended pattern of racketeering activity (i.e., past criminal conduct coupled with a threat of future criminal conduct) or a closed-ended pattern of racketeering activity (i.e., past criminal conduct extending over a substantial period of time)." First Capital Asset Mgmt. v. Satinwood, Inc., 385 F.3d 159, 180 (2d Cir. 2004) (citation omitted).  "[T]he duration of a pattern of racketeering activity is measured by the RICO predicate acts the defendants commit."  Cofacredit, 187 F.3d at 243 (citation omitted).

The predicate acts that Azkour alleges to support his RICO claim involve fraud.  Fraud claims are subject to a heightened pleading standard, under which a plaintiff must "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  Accordingly, to satisfy Rule 9(b), "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4)

explain why the statements were fraudulent." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006) (citation omitted).

**A.      Wire Fraud**

The elements of a substantive wire fraud claim are (1) a scheme to defraud; and (2) communication by wire in "interstate or foreign commerce" to further that scheme. Cofacredit, 187 F.3d at 243. To state such a claim, the plaintiff's "allegations . . . should state the contents of the communications, who was involved, where and when they took place, and explain why they were fraudulent." Mills v. Polar Molecular Corp., 12 F.3d 1170, 1176 (2d Cir. 1993). "Purely intrastate communication [is] beyond the statute['s] reach" and cannot serve as a predicate offense for a RICO violation. Cofacredit, 187 F.3d at 243 (citations omitted).

Azkour alleges that the defendants engaged "in a pattern of organized racketeering . . . in interstate commerce" and "knowingly, intelligently, and willfully transmitt[ed] or [caused] to be transmitted by means of mail and wire communication in interstate commerce fraudulent and inaccurate customer bills, employee labor reports, and employee earning statements . . . ." Azkour does not state where and when the communications took place. In addition, although Azkour concludes that the communications occurred in "interstate commerce," he does not provide factual allegations to support that conclusion. See McCoy v. Goldberg, 748 F. Supp. 146, 154 (S.D.N.Y. 1990) ("[w]here all parties are New York residents, all telephone calls are presumed to be intrastate and, absent any indication otherwise, the predicate act of wire fraud is not stated."). Accordingly, Azkour may not rely on his allegation of wire fraud as a predicate act to support his contention that a "pattern of racketeering activity" —which is a necessary element

of a RICO claim— existed.

**B.     Mail Fraud**

A complaint alleging mail fraud must show (1) the existence of a scheme to defraud; (2) the defendants' knowing and intentional participation in the scheme; and (3) the use of the mails in furtherance of the scheme.  See Cofacredit, S.A., 187 F.3d at 243.  "While there is no requirement that the defendant personally mail a letter, the plaintiff must show '1) that the defendant 'caused' the mailing . . . and 2) that the mailing was for the purpose of executing the scheme or . . . 'incidental to an essential part of the scheme.'"  McLaughlin v. Anderson, 962 F.2d 187, 191 (2d Cir. 1992) (citation omitted).

> Allegations of mail fraud must be made with the particularity required by Federal Rule of Civil Procedure 9(b)[;] the complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements.

Id. (citations omitted).

Azkour contends that the "defendants have been defrauding the patrons of Buddha Bar and Ajna Bar by falsely representing to them that all gratuities and service charges paid by them using credit cards and other electronic devices would and/or will compensate the wait staff's suffered labor and services."  In furtherance of this alleged scheme, Azkour maintains that the defendants engaged  "in a pattern of organized racketeering . . . by using the mail" and "transmitted by means of mail and wire communication in interstate commerce[,] fraudulent and inaccurate customer bills, employee labor reports, and employee earning statements . . . ." However, Azkour does not allege what purpose the "customer bills, employee labor reports, and

employee earning statements" played in the alleged fraudulent scheme, or to what extent they assisted the defendants in perpetrating mail fraud. In addition, Azkour has not indicated "when and where the statements[: inaccurate customer bills and employee labor reports and earning statements] were made" and mailed. McLaughlin, 962 F.2d at 191. In the absence of this information, Azkour has failed to "state with particularity the circumstances constituting [mail] fraud." Fed. R. Civ. P. 9(b). Azkour's proposed fourth-amended complaint also lacks factual allegations "explain[ing] [adequately] why the statements [that were mailed] were fraudulent"; without this information, he has not met his burden of pleading all the elements of mail fraud, and has not complied with Rule 9(b)'s heightened pleading standard. Lerner, 459 F.3d at 290; see also McLaughlin, 962 F.2d at 191. Therefore, Azkour may not rely on his allegation of mail fraud as a predicate RICO offense to support his claim that the defendants engaged in a "pattern of racketeering activity."

**SECTION 1962(c) CLAIM**

It is unlawful for a person employed by or associated with an enterprise engaged in or whose activities affect interstate commerce to conduct or participate in the enterprise's affairs through a pattern of racketeering activity. See 18 U.S.C. § 1962(c). Any individual or entity having the capacity to hold legal or beneficial interest in property, is a person under RICO. See 18 U.S.C. § 1961(3). An enterprise includes a "corporation . . . or other legal entity, or any . . . group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Azkour contends that,

> [b]y unlawfully and knowingly accepting employment and associating themselves with an enterprise engaging in, or the activities of which affect, interstate commerce, by conducting and participating, directly or indirectly, in the conduct of such

11

>enterprise's affairs through a pattern of racketeering activity, defendants Maucort,
>Comperiati, and Taylor have been violating 18 U.S.C. § 1962(c).

Azkour asserts that Haouzi, Maucort and Comperiati are "executive officers, agents, and/or employees of Little Rest Twelve, Inc.," and that Taylor was employed to provide legal counsel for LRT and other defendants in another pending action.

Under § 1962(c), the "RICO person" who conducts the affairs of the "RICO enterprise" must be distinct from the enterprise. See Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A., 30 F.3d 339, 344 (2d Cir. 1994). This distinctiveness requirement may not be circumvented "by alleging a RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant." Id. at 344. The allegations Azkour makes in the proposed fourth-amended complaint, to support his § 1962(c) claim do not satisfy the distinctiveness element that must be shown to exist to state a plausible claim under § 1962(c), as the RICO enterprise alleged consists merely of LRT and its own employees and agents. Thus, allowing Azkour to amend his pleading to assert a claim under § 1962(c) is not reasonable and appropriate.

As Azkour has failed to provide, with particularity, sufficient factual information to support his allegations of mail and wire fraud, he has not established that two predicate RICO offenses were committed to support his allegation that the defendants engaged in a "pattern of racketeering activity," in violation of RICO.[2] Leave to amend may be denied based on futility, if

---

[2] The Court is mindful that Azkour asserted that three predicate RICO offenses were committed, wire fraud, mail fraud and access device fraud, 18 U.S.C. § 1029(a)(5). However, since Azkour failed to establish that two of the three predicate offenses were committed, as required to prosecute a civil RICO claim, see 18 U.S.C. § 1961(5), no need exists to analyze the third predicate offense, because a pattern of racketeering activity cannot be established on the basis of a violation of a single RICO predicate offense.

the proposed new claim(s) cannot withstand a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim. See Oneida Indian Nation of New York v. City of Sherrill, New York, 337 F.3d 139, 168 (2d Cir. 2003), rev'd on other grounds, 544 U.S. 197, 125 S. Ct. 1478 (2005). The allegations contained in Azkour's proposed fourth-amended complaint fail to demonstrate that a civil RICO claim exists. Therefore, granting Azkour's motion, for an order permitting him to amend his complaint to assert such a claim, would be futile, as the proposed claim would not survive a Rule 12(b)(6) motion to dismiss.

## CONCLUSION

For the reasons set forth above, Azkour's motion for leave to amend his third-amended complaint, Docket Entry No. 41, is denied.

Dated: New York, New York  
August 24, 2012

SO ORDERED:

*(signature)*  
KEVIN NATHANIEL FOX  
UNITED STATES MAGISTRATE JUDGE