The Hon. Richard J. Sullivan, U.S.D.J.  
Thurgood Marshall  
United States Courthouse,  
Courtroom 905  
40 Foley Square  
New York, NY 10007

HICHAM AZKOUR  
93 Pitt Street,  
Apartment No. 3B  
New York, NY 10002


Email: hicham.azkour@gmail.com

September 23, 2013

**Hand Delivered**



Re: *Azkour v. Haouzi, et al.*, 11-cv-5780 (RJS)(KNF)

Dear Judge Sullivan:

In its Order denying my Third Motion to Reconsider, Docket Entry No. 125, the Court states that "[w]here a party has failed to include an argument in its objections to the Report and Recommendation, the usual practice is to review for clear error, *see Kingvision Pay-Per-View Ltd v. Zalazar*, 653 F. Supp. 2d 335, 337 (S.D.N.Y. 2009), and there is no reason to depart from that standard in this case."

First, my objection to the Report has not failed to include the argument that the Hon. Fox erred by finding that my Third Amended Complaint did not sufficiently plead a 42 U.S.C. § 1981 retaliation claim. The ensuing three motions to reconsider have not failed to do so either. Second, it is not quite clear to which *kind of standard*[1] this Court refers. The above-mentioned case law is *this*

---

[1] This Court is famous, a celebrity for its quaint departures from the standards, despite the 2007 statements below:

> Another judge would be Denny Chin, also in the Southern District, who I think I had four trials before, and I was always struck by how he made defendants and defense lawyers and prosecutors feel that they had a fair

1

Court's own decision based upon a Report & Recommendation by the Hon. Michael H. Dolinger, U.S.M.J., *to which no party objected*. Obviously, there was no objection because it was a default judgment. In my case, it was *not* a default judgment and I timely and sufficiently objected to the Hon. Fox's Report – timely and sufficiently enough to have this Court conduct a *de novo* review of the record for clear error. Therefore, the Court cannot compare its decision in *Kingvision* to *Thomas v. Arn*, 474 U.S. 140 (1985). In fact, both cases don't apply to me because of my timely, sufficient, unequivocal, and targeted objection to the Report in the above-referenced matter. See this Court's attached Opinions and Orders.

I referred to *Arn* for the simple reason that this Court *can* conduct a *de novo* review of the record *anytime*, especially when confronted with the evidence. Contrarily to what the Court pretends, I distinctly and unequivocally pointed to allegations in my Third Amended Complaint that Defendants - the current owners and management -were aware of the EEOC complaint when they took adverse action against him. There are indeed allegations of knowledge at the time of the adverse action. Therefore, my 42 U.S.C. § 1981 claim of retaliation should have survived Defendants' motion to dismiss, if it weren't to the inappropriate, improper, ill-motivated, aloof, unfair, and misguided decision of the Court.

The Court does not seem to express any regret. What would be the Court's argument if its decision was a finding of criminal conviction of an innocent man?

---

shake at the trial. And I remember on one occasion a defendant, who had been convicted, nevertheless thanked the Court for conducting a fair trial. I thought that speaks volumes about the man...

I think a prosecutor's first role is to do justice and to make sure that in making charging decisions, which are monumental decisions in an individual's life, that they have great--they have certainty, to a moral certainty, about the guilt of the individual being charged and would hold prosecutors to an extremely high standard. I think I had a reputation for doing that when I was supervising assistants, that we should never lightly indict anyone. And I would expect prosecutors to adhere to that norm when they appeared in front of me...

I would also expect them to treat defendants and defense lawyers with great respect. You know, our system of justice is, I think, the envy of the world, and much of it turns on the respect with which we treat accused individuals who are innocent until proven guilty.

Even though I have repeatedly reminded the Court that, in the context of 42 U.S.C. § 1981, unlike Title VII, I need not allege that Defendants had knowledge of my complaint with the Equal Employment Opportunity Commission ("EEOC"), the Court still ignores my argument and the standard set by the U.S. Supreme Court in *CBOCS West, Inc., v. Hedrick G. Humphries*, 553 U.S. 442 (2008).

As a matter of law, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, requires that those who invoke its remedial powers satisfy certain procedural and administrative requirements that 42 U.S.C. § 1981 *does not contain*. For example, 42 U.S.C. § 2000e-5(e)(1) requires a charge of discrimination must be brought before the Equal Employment Opportunity Commission (EEOC) within 180 days of the discriminatory act; § 2000e-5(f)(1) requires a suit must be filed within 90 days of obtaining an EEOC right-to-sue letter.

Moreover, even if, arguendo, I suppose that the Court's finding that the "Defendants' knowledge" element is not present in my pleading, the Court cannot ignore the fact that defendant Little Rest Twelve, Inc. has always had knowledge of my protected activity, whether under its current management or former one. And since the individual defendants in the above-referenced matter have been sued in their official capacity as officers and decision-makers, they should have known since March 30, 2010 that I engaged in protected activity, which they knew as their testimony reflects.

If the Court really reviewed the entire record as it so represents, it should have noticed that I reserved an entire section to the liability of a successor in a corporation.

The Court concluded its Order, Docket Entry No. 125, by emphasizing that I "may disagree with the Court's reasoning" - I may strongly disagree – "but repeated expressions of that disagreement will not change the outcome." Indeed. Yet, the Court should note that, because I have already determined the definition of fairness from this Court's perspective, I now believe that the Court has disagreements with the law, not with me.

In a nutshell, this Court believes that errors should be corrected by the U.S. Court of Appeals only. Errors, this Court contends, should not be remedied at the source. Rather, they should be treated at the end. If errors were cancer, the Court's reasoning would be an innovation in medicine.

Even though my arguments will not change the outcome of this Court's decisions, no matter how pretentiously erroneous they may be - I mean the Court's decisions, not my arguments – they nevertheless make a statement: this case must go forward and, again, as the Court concluded its Order at Docket Entry No. 125, amendment may be a good medicine to cure error.

I thank the Court for sympathizing with my frustration and its unmissed sincerity for expressing such a sentiment. However, I don't believe that my frustration is doubly stressful because I lost. *So far, I did not lose anything, unless the Court, for some lugubrious reasons of its own, predicts so.*

Thank you for your prompt attention to this delicate matter.

Respectfully submitted on September 12, 2013

By:    HICHAM AZKOUR, pro se

[signature]

Cc: the Hon. Kevin N. Fox, U.S.M.J.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing **LETTER ADDRESSED TO THE HON. SULLIVAN ON SEPTEMBER 23, 2013** has been served upon the defendants' attorney of record on this 23th day of September 2013, VIA ECF/MAIL:

Andrew S. Hoffmann, Esq.

450 Seventh Avenue, Suite 1400

New York, New York 10123

Dated: September 23, 2013

By: HICHAM AZKOUR, pro se

HICHAM AZKOUR

93 Pitt Street, Apt. 3B

New York, New York 10002

Email: hicham.azkour@gmail.com


1 of 3 DOCUMENTS

KINGVISION PAY-PER-VIEW LTD. as broadcast licensee of the May 14, 2005
WRIGHT/TRINIDAD program, Plaintiff, -v- FRANCISCO ZALAZAR, individually and d/b/a
FRAN BARBER SHOP, and FRAN BARBER SHOP, Defendants.

No. 06 Civ. 4441 (RJS)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2009 U.S. Dist. LEXIS 91421

September 29, 2009, Decided
September 30, 2009, Filed

**PRIOR HISTORY:** Kingvision Pay-Per-View Ltd. v. Zalazar, 2009 U.S. Dist. LEXIS 71552 (S.D.N.Y., Aug. 12, 2009)

**COUNSEL:** [*1] For Kingvision Pay-Per-View Ltd., as Broadcast Licensee of the May 14, 20005 Wright /Trinidad Program, Plaintiff: Julie Cohen Lonstein, LEAD ATTORNEY, Lonstein Law Office P.C., Ellenville, NY.

**JUDGES:** RICHARD J. SULLIVAN, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** RICHARD J. SULLIVAN

**OPINION**

*ORDER*

*RICHARD J. SULLIVAN*, District Judge:

By Order dated August 12, 2009, the Court adopted the Report and Recommendation of Magistrate Judge Dolinger dated June 11, 2009. Accordingly, IT IS HEREBY ORDERED that a default judgment, pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, is entered against Defendants Francisco Zalazar, individually and doing business as Fran Barber Shop, and Fran Barber Shop, jointly and severally, for (1) $ 6,025.00 in statutory damages and (2) $ 1,337.50 in attorney's fees and costs. The Clerk of the Court is respectfully directed to close this case.

SO ORDERED.

Dated: September 29, 2009

New York, New York

/s/ Richard J. Sullivan

RICHARD J. SULLIVAN

UNITED STATES DISTRICT JUDGE

2 of 3 DOCUMENTS

**KINGVISION PAY-PER-VIEW LTD. as broadcast licensee of the May 14, 2005 WRIGHT/TRINIDAD program, Plaintiff, -v- FRANCISCO ZALAZAR, individually and d/b/a FRAN BARBER SHOP, and FRAN BARBER SHOP, Defendants.**

No. 06 Civ. 4441 (RJS)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

653 F. Supp. 2d 335; 2009 U.S. Dist. LEXIS 71552

August 12, 2009, Decided
August 13, 2009, Filed

**SUBSEQUENT HISTORY:** Judgment entered by Kingvision Pay-Per-View Ltd. v. Zalazar, 2009 U.S. Dist. LEXIS 91421 (S.D.N.Y., Sept. 29, 2009)

**PRIOR HISTORY:** Kingvision Pay-Per-View, Ltd. v. Zalazar, 653 F. Supp. 2d 335, 2009 U.S. Dist. LEXIS 71559 (S.D.N.Y., June 11, 2009)

**COUNSEL:** [**1] For Kingvision Pay-Per-View Ltd., as Broadcast Licensee of the May 14, 20005 Wright /Trinidad Program, Plaintiff: Julie Cohen Lonstein, LEAD ATTORNEY, Lonstein Law Office P.C., Ellenville, NY.

**JUDGES:** RICHARD J. SULLIVAN, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** RICHARD J. SULLIVAN

**OPINION**

[*337] ORDER

RICHARD J. SULLIVAN, District Judge:

By Order dated January 7, 2009, the Court granted Plaintiff's application for a default judgment in this action. The Court thereafter referred the action to the Honorable Michael H. Dolinger, Magistrate Judge, for a determination of damages. On June 11, 2009, Magistrate Judge Dolinger issued his Report and Recommendation recommending an award of $ 6,025.00 in statutory damages and $ 1,337.50 in attorney's fees and costs. No objections to the Report and Recommendation have been filed.

Where no timely objection to a report and recommendation has been made, the "court need only satisfy itself that there is no clear error on the face of the record." *Wilds v. United Parcel Serv.*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003) (internal quotations and citations omitted). The Court has reviewed Magistrate Judge Dolinger's thorough Report and Recommendation, and discerns no clear error therein. Accordingly, [**2] the June 11, 2009 Report and Recommendation is adopted in its entirety.

SO ORDERED.

Dated: August 12, 2009

New York, New York

/s/ Richard J. Sullivan

RICHARD J. SULLIVAN

UNITED STATES DISTRICT JUDGE

3 of 3 DOCUMENTS

**KINGVISION PAY-PER-VIEW, LTD. as Broadcast Licensee of the May 14, 2005 WRIGHT/TRINIDAD Program, Plaintiff, -against- FRANCISCO ZALAZAR, Individually and d/b/a FRAN BARBER SHOP, and FRAN BARBER SHOP, Defendants.**

06 Civ. 4441 (RJS) (MHD)

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

653 F. Supp. 2d 335; 2009 U.S. Dist. LEXIS 71559

June 11, 2009, Decided
June 11, 2009, Filed

**SUBSEQUENT HISTORY:** Adopted by, Judgment entered by Kingvision Pay-Per-View Ltd. v. Zalazar, 653 F. Supp. 2d 335, 2009 U.S. Dist. LEXIS 71552 (S.D.N.Y., Aug. 12, 2009)

**CORE TERMS:** patron, awarding, statutory damages, unauthorized, exhibition, barber, shop, attorney's fees, enhanced, establishment, signal, calculation, television, maximum, Communications Act, commercial advantage, hourly rate, pay-per-view, willfully, advertising, willfulness, exhibiting, deterrence, recommend, broadcast, cable, cover charge, financial gain, base amount, reasonable fees

**COUNSEL:** [**1] For Kingvision Pay-Per-View Ltd., as Broadcast Licensee of the May 14, 20005 Wright /Trinidad Program, Plaintiff: Julie Cohen Lonstein, LEAD ATTORNEY, Lonstein Law Office P.C., Ellenville, NY.

**JUDGES:** MICHAEL H. DOLINGER, UNITED STATES MAGISTRATE JUDGE.

**OPINION BY:** MICHAEL H. DOLINGER

**OPINION**

[*337] *REPORT & RECOMMENDATION*

TO THE HONORABLE RICHARD J. SULLIVAN, U.S.D.J.:

Plaintiff Kingvision Pay-Per-View, Ltd. ("Kingvision") seeks damages for the alleged unauthorized public exhibition of a championship boxing telecast in 2005 by defendants Francisco Zalazar, individually and doing business as Fran Barber Shop, and by Fran Barber Shop, in violation of the Communications Act of 1934, as amended, 47 U.S.C. §§ 553 and 605. Defendants failed to answer the complaint, and a default was entered against them. Plaintiff now seeks statutory damages and attorney's fees and costs.

For the reasons that follow, we recommend that judgment be entered awarding [*338] plaintiff $ 6,025.00 in statutory damages and $ 1,337.50 in attorney's fees and costs.

*PROCEDURAL BACKGROUND*

Plaintiff filed its complaint on June 13, 2006, alleging that defendants had engaged in an unauthorized exhibition of the Wright/Trinidad boxing telecast to nine people on [**2] May 14, 2005. (Aff. of Donna K. Westrich, sworn to Oct. 27, 2006

("Westrich Aff.") P 7). Defendants failed to respond to the complaint after being served with process on July 6, 2006, and the District Court granted plaintiff's motion for entry of a default on January 7, 2009. (*See* Order dated Jan. 7, 2009). The matter was then referred to this court to conduct an inquest on damages. Plaintiff has filed affidavits in support of the relief it seeks. Defendants, although offered the opportunity to respond, have chosen not to do so.

## *EVIDENTIARY RECORD*

Defendants' default "is deemed to constitute a concession to all well-pleaded allegations of liability," but it is "not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Group*, 973 F.2d 155, 158 (2d Cir. 1992); *see also Cotton v. Slone*, 4 F.3d 176, 181 (2d Cir. 1993) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)). To determine the amount of damages, we rely on the factual allegations of the complaint as well as the additional affidavits filed by the plaintiff containing pertinent factual information. *See, e.g., Tamarin v. Adam Caterers Inc.*, 13 F.3d 51, 54 (2d Cir. 1993); *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991) [**3] (quoting *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)).

By contract, Kingvision was granted the exclusive right to distribute the Wright/Trinidad Program ("the Program"), including all undercard bouts [1] and the entire television broadcast, scheduled for May 14, 2005, via closed circuit television and encrypted satellite signal. (Westrich Aff. P 3). Kingvision subsequently entered into agreements with various commercial entities in the State of New York, allowing them to publicly exhibit the Program to their patrons by paying a fee directly to Kingvision. (Compl. P 16; Westrich Aff. P 3). Kingvision paid significant sums of money for the exclusive distribution of the Program. (Compl. P 17).

---

1 "Undercard" is defined as "the list of lower-profile contests on the same bill as the main fight at an event, typically taking place earlier in the evening." Oxford English Dictionary, http://dictionary.oed.com (last visited June 2, 2009).

---

Kingvision distributed the Program by closed circuit television and encrypted satellite signal only to those who paid the requisite fees. (Compl. P 15; *see* Westrich Aff, Ex. B). Establishments that entered into an agreement with Kingvision [**4] to receive and exhibit the Program paid an authorization fee of $ 200.00. (Westrich Aff. Ex. B). Additionally, they were charged a fee of $ 12.50 per seat based on the fire code occupancy of the venue to allow for establishments of varying sizes. (*Id.*) Kingvision typically suffers a significant drop in sales when a program is exhibited by entities unauthorized to do so. (Westrich Aff. P 10).

Defendants were not authorized to receive or exhibit the Program. (Compl. P 18). Without having paid a fee or signed a contract, defendants unlawfully used an illegal satellite receiver or cable converter box to intercept Kingvision's Program for the purpose of receiving it and exhibiting it to patrons within the barber shop. (*Id.* at PP 18, 19).

[*339] Plaintiff discovered defendants' violation through a hired independent auditor, Lee Packtor, who visited Fran Barber Shop at the time of the Program's broadcast on May 14, 2005 and witnessed its exhibition to patrons. (*See* Westrich Aft. P 7, Ex. D). He paid no cover charge and observed one television set exhibiting a portion of the Program to approximately nine people in an establishment with an estimated capacity of 25. (*Id.*).

On three other [**5] occasions, Kingvision hired independent auditors who observed unauthorized exhibitions of Kingvision programs at Fran Barber Shop. (*See* Aff. of Julie Cohen Lonstein, sworn to Nov. 30, 2006 ("Lonstein Aff.") PP 5, 6, 7). These violations occurred on September 29, 2001; November 27, 2004; and July 26, 2005. [2] (*Id.*). There is no evidence that Kingvision pursued defendants for these violations.

---

2 It bears noting that defendants' most recent violation of the Communications Act, on July 26, 2005, occurred nearly a year before defendant was served with process by plaintiff for the May 14, 2005 violation. (*See* Pl.'s Mem. of Law in Supp. of Damages and Costs 2).

---

## *ANALYSIS*

## I. *Damages Under the Communications Act*

Plaintiff brings claims under both 47 U.S.C. §§ 605(a) and 553(a)(1). The Second Circuit has held that both statutes apply to the unauthorized interception of signals from a cable television system. Section 605(a) prohibits a broad range of unauthorized interception or receipt of communications (such as "wire or radio" signals), whereas section 553 concerns only the interception of cable transmissions. *See Int'l Cablevision, Inc. v. Sykes*, 75 F.3d 123, 133 (2d Cir. 1996). Each of these provisions [**6] authorizes the court to grant an award to an aggrieved party. This award may be actual damages plus the profits accruing to the defendant by virtue of his violation or, alternatively, an award of statutory damages. 47 U.S.C. §§ 553(c)(3)(A), 605(e)(3)(C) (I).

### A. *General Criteria for Statutory Damages*

Although a defendant may be liable under both section 553 and section 605, the plaintiff may recover only once. *See, e.g., Kingvision Pay-Per-View, Ltd. v. New Paradise Rest.*, 2000 U.S. Dist. LEXIS 8792, 2000 WL 378053, at *2 (S.D.N.Y. Apr. 11, 2000); *Time Warner Cable of New York City v. Barnes*, 13 F. Supp. 2d 543, 548 (S.D.N.Y. 1998); *Time Warner Cable of New York City v. Taco Rapido Rest.*, 988 F. Supp. 107, 110 (E.D.N.Y. 1997) ("[W]here a defendant is found to have violated both statutes, the court should award damages pursuant to [section] 605."); *Time Warner Cable of New York City v. Olmo*, 977 F. Supp. 585, 589 (E.D.N.Y. 1997) (citing *Sykes*, 75 F.3d at 131-33). Potential recoveries under these two provisions differ to a degree, with section 605 offering the more generous potential award.

Section 553 gives the court discretion to award between $ 250.00 and $ 10,000.00 in statutory damages for "all [**7] violations," 47 U.S.C. § 553(c) (3)(A)(ii), but with the proviso that the maximum award may be increased by up to $ 50,000.00 for violations "committed willfully for the purpose of commercial advantage or private financial gain . . . " 47 U.S.C. § 553(c) (3)(B). Section 553 also authorizes the court to reduce the award of statutory damages to a minimum of $ 100.00 if it "finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section." 47 U.S.C. § 553(c) (3) (C).

The terms of section 605(e) (3) allow for statutory damages ranging from $ 1,000.00 to $ 10,000.00 for "each violation." 47 U.S.C. § 605(e) (3) (C) (i) (II). The maximum [*340] fee increases to $ 100,000.00 per violation if the violation was "committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e) (3) (C) (ii). Section 605 also gives the courts discretion to reduce the statutory award against an innocent violator, with a prescribed $ 250.00 minimum for such unintended violations. 47 U.S.C. § 605(e) (3) (C) (iii).

Plaintiff alleges that defendants willfully violated both sections 553 and 605, but [**8] elects to recover statutory damages only under section 605(e)(3)(C)(i)(II). (Westrich Aff. P 8).

### B. *The Calculation of Damages*

The court has broad discretion in assessing damages. *See, e.g., Taco Rapido Rest.*, 988 F. Supp. at 111 (citing, *inter alia*, 47 U.S.C. §605(e)(3)(C)(i)(II)). When determining statutory damages under section 605, courts generally choose between two methods of calculation -- a per-customer damage calculation or a flat-sum award. *See Kingvision Pay-Per-View, Ltd. v. Recio*, 2003 U.S. Dist. LEXIS 10440, 2003 WL 21383826, at *4 (S.D.N.Y. June 11, 2003).

The per-customer approach employs a formula that multiplies a dollar amount per customer by the number of patrons present during the unauthorized exhibition. *See, e.g., New Contenders, Inc. v. Diaz Seafood Corp.*, 1997 U.S. Dist. LEXIS 13132, 1997 WL 538827, at *2 (S.D.N.Y. Sept. 2, 1997) (awarding $ 300.00 per patron); *Taco Rapido Rest.*, 988 F. Supp. at 111 (awarding $ 50.00 per patron); *Kingvision Pay-Per-View, Ltd. v. Tardes Calenas Rest.*, 2005 U.S. Dist. LEXIS 43856, 2005 WL 4850311, at *5 (E.D.N.Y. Nov. 29, 2005) (awarding $ 100.00 per patron to include loss to plaintiff and revenue to defendant); *Cablevision Sys. Corp. v. 45 Midland Enters.*, 858 F. Supp. 42, 45 (S.D.N.Y. 1994) (awarding $ 50.00 [**9] per patron).

The flat-sum approach is typically used when the exact number of patrons who observed the unauthorized programming is unknown. *See, e.g., Entm't by J & J, Inc. v. Ramsarran*, 2002 U.S. Dist. LEXIS 8802, 2002 WL 720480, at *2 (E.D.N.Y. Mar. 11, 2002); *Garden City Boxing Club, Inc. v. Polanco*, 2006 U.S. Dist. LEXIS 5010, 2006 WL 305458, at *5 (S.D.N.Y. Feb. 7, 2006) (awarding $ 2,000.00 in statutory damages and an additional $ 10,000.00 in enhanced damages for restaurant/bar advertising and exhibiting fight without a cover charge); *Kingvision Pay-Per-View, Ltd. v. Jasper Grocery*, 152 F. Supp. 2d 438, 442 (S.D.N.Y. 2001) (awarding $ 5,000.00 in statutory damages and an additional $ 10,000.00 in enhanced damages where grocery store did not

charge a cover fee).

In determining a damages award, courts consider a variety of factors. Those include the financial loss to the plaintiff, the costs that the defendant avoided, the profits realized by the defendant as a result of the event, the financial burden of an award on the defendant, and the adequacy of the deterrent effect. *See Polanco*, 2006 U.S. Dist. LEXIS 5010, 2006 WL 305458, at *5 (considering the cost avoided, disgorgement of profits, deterrence, and the risk of putting the defendant out of business); [**10] *Ramsarran*, 2002 U.S. Dist. LEXIS 8802, 2002 WL 720480, at *2 (considering financial loss to plaintiff and financial status of defendant); *Entm't by J & J Inc. v. Al-Waha Enters.*, 219 F. Supp.2d 769, 776 (S.D. Tex. 2002) (increasing award from $ 1,500.00, the cost defendant avoided, to $ 5,000.00, in light of the deterrence goal of 47 U.S.C. § 605).

In support of its application for damages, plaintiff has proffered evidence of the number of people present at the time of the Program's exhibition, as well as the revenues that it lost as a result of the unauthorized exhibition of the Program. (*See* Westrich Aff. P 7; *see also* Pl.'s Mem. [*341] of Law in Supp. of Damages and Costs 5). Mr. Packtor reported that he observed nine people in the establishment, which had an approximate capacity of 25 people, on the night of May 14, 2005. (Westrich Aff. Ex. D). Although Mr. Packtor did not specify whether this number refers only to patrons or to all persons on the premises, including staff, we infer, in the absence of opposition from the defendants, that the estimate refers to the number of patrons.

Since there is evidence of the number of people present at the time of the Program's exhibition, we will proceed with a per-person [**11] approach to calculating damages. Though there is no strict standard, the per-patron approach employs a formula that multiplies a dollar amount per patron by the number of patrons present during the unauthorized exhibition. *See, e.g., J & J Sports Prods., Inc. v. Schrader Rest. Corp.*, 485 F. Supp. 2d 422, 423 (S.D.N.Y. 2007) (awarding $ 50 per patron); *New Contenders*, 1997 U.S. Dist. LEXIS 13132, 1997 WL 538827, at *2 (awarding $ 300 per patron, taking into account profits from sales of food and drink); *45 Midland Enters.*, 858 F. Supp. at 45 (awarding $ 50 per patron).

In determining the amount by which to multiply the number of patrons, we first note the evidence of plaintiff's lost revenues. If the nine patrons present had paid $ 54.95 to view the Program legally at home on a pay-per-view channel rather than for free at Fran Barber Shop, they would have collectively paid $ 494.55. This approach to calculating a base amount of statutory damages has been followed by a number of courts. *See J & J Sports Prods. v. Arhin*, 2009 U.S. Dist. LEXIS 32852, 2009 WL 1044500, at *1 (E.D.N.Y. Apr. 17, 2009) (awarding $ 54.95 per patron present at time of audit); *Kingvision Pay-Per-View Ltd. v. Cazares*, 2006 U.S. Dist. LEXIS 50753, 2006 WL 2086031, at *3-4 (E.D.N.Y. July 25, 2006) [**12] (awarding $ 54.95 per patron present at time of audit); *cf. Garden City Boxing v. Bello*, 2005 U.S. Dist. LEXIS 23115, 2005 WL 2496062, at *3 (E.D.N.Y. Sept. 20, 2005) (awarding $ 54.95 according to the maximum capacity of the fire code occupancy). By comparison, if defendant had initially obtained a license for the Program from plaintiff, Kingvision would have received $ 512.50 in payment.³ Variants of this calculation have also been used by a number of courts. *See Joe Hand Promotions, Inc. v. Martinez*, 2008 U.S. Dist. LEXIS 83254, 2008 WL 4619855, at *5 (S.D.N.Y. Oct. 17, 2008) (awarding amount of plaintiff's lost revenue plus defendant's presumed revenue per patron present at a restaurant/bar); *Al-Waha Enters.*, 219 F. Supp. 2d at 776 (looking to plaintiff's lost revenue as a result of defendants' violation to determine award); *Entm't by J & J Inc. v. Nina's Rest. and Catering*, 2002 U.S. Dist. LEXIS 8908, 2002 WL 1000286, at *3 (S.D.N.Y. May 9, 2002) (determining award based on plaintiff's lost revenue and increasing it by one and a half for future deterrence).

---

3 This calculation includes a $ 200.00 authorization fee and a fee of $ 12.50 per person based on the assumption -- not specifically proven on the record -- that the fire code maximum was 25 people. [**13] (*See* Westrich Aff. Ex. B).

---

We choose to follow the second lost-revenue approach because it accurately reflects both the loss of revenue to plaintiff by virtue of defendants' violation and the cost avoided by defendants through their impermissible conduct. Therefore, we conclude that the figure of $ 512.50 accurately reflects the loss to plaintiff as a result of defendants' violation and is an appropriate starting point for determining the base amount of statutory damages.

Since the minimum statutory amount -- except for innocent violations -- is $ 1,000.00, we double the loss award, arriving at a base amount of $ 1,025.00.

[*342] Plaintiff also requests an increased award under section 605(e)(3)(C)(ii), which allows for enhanced damages if "the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." "Willfulness has been defined by the Supreme Court as 'disregard for the governing statute and an indifference for its

requirements.'" *Cablevision Sys. New York City Corp. v. Loshkin*, 980 F. Supp. 107, 114 (E.D.N.Y. 1997) (quoting *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 126-27, 105 S. Ct. 613, 83 L. Ed. 2d 523 (1985)).

The court typically looks [**14] to a variety of factors when determining willfulness in these cases. These include both circumstances reflecting deliberate actions by the defendant to acquire a normally unavailable signal, *see, e.g., Googies Luncheonette, Inc.*, 77 F. Supp. 2d at 490, and "i) repeated violations over an extended period of time; ii) substantial unlawful monetary gains; iii) advertising of the broadcast; or iv) charging of a cover charge or premiums for food or drinks." *Kingvision Pay-Per-View, Ltd. v. Lalaleo*, 429 F. Supp. 2d 506, 515 (E.D.N.Y. 2006) (citing *Kingvision Pay-Per-View, Ltd. v. El Rey Del Bistec Y Caridad, Inc.*, 2001 U.S. Dist. LEXIS 20531, 2001 WL 1586667, at *2 (S.D.N.Y. Dec. 12, 2001)). Even without evidence of advertising or the charging of a fee, the circumstances in cases of piracy of pay-per-view programs generally strongly suggest that the defendant was acting willfully and for commercial advantage. *See, e.g., Time Warner Cable of New York City v. Googies Luncheonette, Inc.*, 77 F. Supp.2d 485, 490 (S.D.N.Y. 1999) ("Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems.").

The record does not reflect that defendants sought or obtained any monetary payments [**15] for exhibiting the Program or that they engaged in any advertising. Nonetheless, plaintiff's showing clearly demonstrates willfulness. The acquisition of an encrypted signal by defendants undoubtedly required some affirmative action on their part. *See Googies Luncheonette*, 77 F. Supp. 2d at 490; *Al-Waha Enters.*, 219 F. Supp. 2d at 776 ("Based on the limited methods of intercepting closed circuit broadcasting of pay-per-view events and the low probability that a commercial establishment could intercept such a broadcast merely by chance . . . courts have held [the unauthorized display of a pay-per-view event] to be willful"). Moreover, their success in acquiring the Program necessitated some degree of technical sophistication and presumably reflected a desire to obtain a benefit to which they were not entitled. (*See* Westrich Aff. P 9).

As for the balance of the statutory test, plaintiff proffers evidence showing that defendant has violated the Communications Act in this same manner on at least three other documented occasions. (*See* Lonstein Aff. PP 5, 6, 7 & Exs. B, C, D). This history of repeated violations reflects the defendants' intent to profit in some way by their violation. [**16] Although there is no evidence that the barber shop realized any direct financial gain from showing the Program, defendants' pattern of showing such unauthorized programs was presumably intended, at least in part, to assist in retaining loyal customers and generating goodwill for the business. These inferences are particularly reasonable in the absence of any response from the defendants in this case. Therefore, we conclude that defendants acted to obtain, at the least, an "indirect commercial advantage" through their unauthorized acquisition and exhibition of the Program. 47 U.S.C. § 605(e)(3)(C)(ii). Necessarily, then, plaintiff satisfies the statutory standard [*343] for enhanced statutory damages. *See, e.g., Taco Rapido Rest.*, 988 F. Supp. at 111-12.

As for the amount of enhancement, plaintiff seeks the statutory maximum of $ 100,000.00. (Compl. P 29). We are generally reluctant to award the statutory maximum because it greatly exceeds the amount necessary to compensate plaintiffs and is likely to destroy defendants' typically small businesses. *See, e.g., J & J Sports Prods., Inc. v. Dehavalen*, 2007 U.S. Dist. LEXIS 6829, 2007 WL 294101, at *3 (S.D.N.Y. Jan. 30, 2007). In this case, we note that there is [**17] no evidence that the plaintiff previously sought relief against the defendants in connection with other violations, or even communicated with the defendants to demand that they cease those violations. It is also obvious that the establishment is not a large or up-scale venue making significant, or any, revenue from showing the Program. Against these considerations must be balanced the serious need for general and specific deterrence of such violations, from which plaintiff has continued to suffer substantial revenue loss. (Westrich Aft. P 10); *see Al-Waha Enters.*, 219 F. Supp. 2d at 776.

Based on these considerations, we recommend $ 5,000.00 in additional damages for defendants' willfulness. *See, e.g., J & J Sports Prods. v. Jusna, Inc.*, 553 F. Supp. 2d 226, 228-29 (E.D.N.Y. 2008) (awarding $ 1,500.00 in enhanced damages against a hair salon with no evidence of additional pirating); *J & J Sports Prods. Inc., v. Rodrigues*, 2007 U.S. Dist. LEXIS 45586, 2007 WL 1726462, at *7 (E.D.N.Y. Apr. 19, 2007) (imposing enhanced damages of $ 3,000.00 on a barber shop showing a match to eight patrons with no evidence of additional pirating); *J & J Sports Prods. Inc., v. Echeverria*, 2007 U.S. Dist. LEXIS 31704, 2007 WL 1160423, at *4 (E.D.N.Y. Mar. 16, 2007) [**18] (imposing enhanced damages of $ 3,000.00 on a barber shop illegally showing a boxing match to two people with no evidence of additional piracy); *Taco Rapido Rest.*, 988 F. Supp. at 111-12 (awarding $ 5,000.00 to a restaurant in enhanced damages). In our opinion, this amount is sufficient to compensate the plaintiff and also deter the defendants and others from further violations.

The complaint names both the establishment and its proprietor as defendants. Since the record reflects one violation of the statute caused by the joint actions of the defendants, they should be held jointly and severally liable for a single award of $ 6,025.00 in statutory damages. *See, e.g., Cmty. Television Sys., Inc. v. Caruso*, 284 F.3d 430, 436 (2d Cir. 2002).

## II. Attorney's Fees and Costs

Plaintiff is also entitled to recover costs and reasonable attorney's fees. See 47 U.S.C. § 605(e) (3) (B) (iii). The determination of reasonable fees begins with the calculation of a "presumptively reasonable fee." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008).

The presumptively reasonable fee is calculated by setting an hourly rate that reflects what a paying [**19] client would be willing to pay, and multiplying that rate by the number of hours reasonably expended litigating the case. *Id.; Joe Hand Promotions Inc. v. El Norteno Rest. Corp.*, 2007 U.S. Dist. LEXIS 72789, 2007 WL 2891016, at *5 (E.D.N.Y. Sept. 28, 2007) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)); *Cazares*, 2006 U.S. Dist. LEXIS 50753, 2006 WL 2086031, at *5. In the absence of unusual circumstances and particularly difficult or novel legal questions, the court should set the reasonable hourly rate at the prevailing rate for similar legal services provided by lawyers of "reasonably comparable skill, experience, and reputation" in the relevant community. *Farbotko v. Clinton County*, 433 F.3d 204, 208 (2d Cir. 2005) (citing [*344] *Blum v. Stenson*, 465 U.S. 886, 896 & n.11 (1984)).

Plaintiff's attorney reports that she expended a total of three hours handling this action, and that she charges $ 200.00 per hour. (*See* Lonstein Aft. P 4). She also reports that her paralegal assistant spent a total of two hours and thirty minutes at a rate of $ 75.00 per hour. (*Id.*). The resulting fee request of $ 787.50 reflects the absence of unusual issues in this particular case, is comparable to awards of attorney's fees in similar cases, and [**20] is plainly reasonable. *See Schrader Rest. Corp.*, 485 F. Supp. 2d at 424 (awarding $ 724.00 in attorney's fees based on $ 200.00 hourly rate for attorney and $ 75.00 hourly rate for paralegal); *Nina's Rest.*, 2002 U.S. Dist. LEXIS 8908, 2002 WL 1000286, at *4 (awarding $ 1,575.00 in attorney's fees in a similar case); *Ramsarran*, 2002 U.S. Dist. LEXIS 8802, 2002 WL 720480, at *3 (awarding $ 850.00 in attorney's fees based on $ 250.00 hourly rate).

Plaintiff also seeks to recover $ 550.00 in costs incurred, which includes fees for service of process and filing. (Lonstein Aft. P 3). We recommend that this amount be awarded.

## CONCLUSION

For the foregoing reasons, we recommend entry of a judgment against the defendants, jointly and severally, in the amount of $ 6,025.00 in statutory damages under section 605 of the Communications Act, $ 787.50 in attorney's fees, and $ 550.00 in costs, for a total award of $ 7,362.50.

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable [**21] Richard J. Sullivan, 500 Pearl Street, New York, NY 10007. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Small v. Secretary of Health & Human Services*, 892 F.2d 15, 16 (2d Cir. 1989); 28 U.S.C. § 636(b) (1); Fed. R. Civ. P. 72, 6(a), 6(e).

DATED: New York, NY

June 11, 2009

RESPECTFULLY SUBMITTED,

/s/ Michael H. Dolinger

MICHAEL H. DOLINGER

UNITED STATES MAGISTRATE JUDGE