# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

HICHAM AZKOUR,

Plaintiff,

v.

JEAN-YVES HAOUZI, *ET AL.*,

Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/18/13

Civil Action No. 11-CV-5780
(RJS)(KNF)

---

## OBJECTION TO THE HON. FOX'S ORDER DENYING PLAINTIFF'S SECOND REQUEST FOR LEAVE TO AMEND HIS THIRD AMENDED COMPLAINT

---

HICHAM AZKOUR, pro se

93 Pitt Street, Apt. 3B

New York, New York 10002


Email: hicham.azkour@gmail.com

HICHAM AZKOUR, pro se Plaintiff, pursuant to Rule 72(b)[1] of the Federal Rule of Civil Procedure, timely appeals to this Court from the Order issued by the Hon. Kevin N. Fox, U.S.M.J, on October 7, 2013, <u>Docket Entry No. 127</u>, *see also Azkour v. Haouzi,* <u>2013 U.S. Dist. LEXIS 147484 (S.D.N.Y., October 7, 2013)</u>, denying Plaintiff's second request to amend his Third Amended Complaint.

In both his first and second request for leave to amend his Third Amended Complaint, <u>Docket Entries Nos. 92 and 110</u>, Plaintiff alleged that new information had come to him that prompted him to file the aforementioned requests for leave to amend. In particular, the new facts supporting his ADA claims were not known to him when he filed the Third Amended Complaint. Moreover, Plaintiff has not delayed in sufficiently and properly re-alleging the ADA claims in this action. Therefore, any allegation of delay in filing the first request for leave to amend is neither true nor relevant.

Thus, the Hon. Fox's Order is an abuse of discretion and should be also reviewed as such. A district court has abused its discretion if it has (1) "based its ruling on an erroneous view of the law," (2) made a "clearly erroneous assessment of the evidence," or (3) "rendered a decision that cannot be located within the range of permissible decisions." *Sims v. Blot,* <u>534 F.3d 117, 132 (2d Cir.2008)</u> (internal quotation marks omitted); *cf. United States v. Hasan,* <u>586 F.3d 161, 167-69 (2d Cir.2009)</u> (explaining "abuse of discretion").

As we will set forth below, not only did the Hon. Fox abuse his discretion in denying Plaintiff's second request for leave to amend his Third Amended Complaint, but his Order, as based upon the specific objections set forth below and the record starting approximately at <u>Docket Entry No. 92</u>, suggests that his decision is not within the range of permissible decisions in this Circuit. His Order simply flouts the evidence and laws. Because it forecloses Plaintiff's ADA claims, the denial is based on *futility,* and

---

[1] *See* this Court's Opinion with respect to motions to amend in *Schiller v. City of New York,* <u>No. 04-CV-7922, 2009 WL 497580, at *2, 2009 U.S. Dist. LEXIS 15551, at *8-9 (S.D.N.Y. Feb. 27, 2009)</u>

Plaintiff's request for leave to amend was analyzed under the same standard as a motion to dismiss for failure to state a claim, the Hon. Fox's Order should be reviewed as a dispositive matter pursuant to Rule 72(b)[2] and portions of the record, starting at <u>Docket Entry No. 92</u>, may be examined under the *de novo* standard.

## I-   <u>STANDARD OF REVIEW</u>

The standard of review for a magistrate judge's order depends on whether the order is dispositive. *See* 28 U.S.C. § 636; Fed. R. Civ. P. 72. When reviewing a dispositive order, "a judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see* Fed. R. Civ. P. 72(b). When reviewing a pretrial order regarding non-dispositive issues, a district court judge may only reconsider the order "where it has been shown that the magistrate's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *see* Fed. R. Civ. P. 72(a).

The district court shall reverse a magistrate judge's order where the ruling is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); *see Fielding v. Tollaksen*, <u>510 F.3d 175, 178 (2d Cir. 2007)</u>. An order is "clearly erroneous" if the reviewing court is "left with the definite and firm conviction that a mistake has been committed." *Easley v. Cromartie*, <u>532 U.S. 234, 242, 121 S. Ct. 1452, 149 L. Ed. 2d 430 (2001)</u> (quoting *United States v. U.S. Gypsum Co.*, <u>333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 746 (1948)</u>). An order is contrary to law "when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Thompson v. Keane*, <u>No. 95 Civ. 2442 (SHS), 1996 U.S. Dist. LEXIS 6022, 1996 WL 229887, at *1 (S.D.N.Y. May 6, 1996)</u> (internal quotation marks omitted).

---

[2] Fed. R. Civ. P. 72(b)(3)  pertinently states:

> The district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Courts in the Second Circuit are divided on the issue of whether, and under what circumstances, motions to amend a pleading are dispositive or non-dispositive. The Second Circuit has not yet ruled on the issue, see *Children First Found., Inc. v. Martinez*, No. 1:04-CV-0927 (NPM), 2007 U.S. Dist. LEXIS 94944, 2007 WL 4618524, at *4 (N.D.N.Y Dec. 27, 2007) (citing *Rubin v. Valicenti Advisory Servs.*, 471 F. Supp. 2d 329, 333 (W.D.N.Y. 2007)), but has stated in dictum and in an unpublished opinion that motions to amend are non-dispositive and has suggested that the procedures of Rule 72(a) invariably apply. *See Fielding*, 510 F.3d at 178 (indicating that a motion to amend the complaint is "non-dispositive" and governed by Fed. R. Civ. P. 72(a)); *Kilcullen v. New York State Dep't of Transp.*, 55 Fed. Appx. 583, 584 (2d. Cir. 2003) (analyzing a magistrate judge's decision to deny a Rule 15(a) motion to add a claim to the complaint under the Rule 72(a) standard). In addition, several district courts, opining that "the weight of authority" within this Circuit classifies a motion to amend a pleading as non-dispositive, have automatically applied Rule 72(a) standards to motions to amend, even in cases where the magistrate judge's decision on the motions foreclosed a party from asserting potential claims. *See, e.g., Lyondell-Citgo Refining, L.P. v. Petroleos de Venezuela, S.A.*, No. 02 Civ. 0795 (CBM), 2005 U.S. Dist. LEXIS 6533, 2005 WL 883485, at *3 (S.D.N.Y. Apr. 14, 2005); *Credit Suisse First Boston LLC v. Couer D'Alene Mines Corp.*, No. 03 Civ. 9547 (PKL)(MHD), 2005 U.S. Dist. LEXIS 1893, 2005 WL 323714, at *3 (S.D.N.Y. Feb. 10, 2005).

However, this Court already suggested that a motion for leave to amend may be dispositive when denied, *see Schiller v. City of New York*, No. 04-CV-7922, 2009 WL 497580, at *2, 2009 U.S. Dist. LEXIS 15551, at *8-9 (S.D.N.Y. Feb. 27, 2009). Indeed, some district courts have held that a Rule 15(a) motion is dispositive where the magistrate judge's denial of the motion foreclosed potential claims. *See, e.g., Covington v. Kid*, No. 94 Civ. 4234 (WHP), 1999 U.S. Dist. LEXIS 64, 1999 WL 9835, at *2 (S.D.N.Y. Jan. 7,1999); *Champion Titanium Horseshoe, Inc. v. Wyman-Gordon Inv. Castings, Inc.*, 925 F.Supp. 188, 189-90 (S.D.N.Y. 1996); *Moss v. Stinnes Corp.*, No. 92 Civ. 3788 (JFK), 1995 U.S. Dist. LEXIS 15692, 1995 WL 625685, at *1 (S.D.N.Y. Oct. 25, 1995). Some of these courts have specifically held "that a denial of a motion to

amend is dispositive where the denial is based on futility because such a motion is analyzed under the same standard as a motion to dismiss for failure to state a claim or a motion for summary judgment, both of which are dispositive motions." *Children First Found.*, 2007 U.S. Dist. LEXIS 94944, 2007 WL 4618524, at *4 (citing *HHC, Inc. v. RH&M Mach. Co.*, 39 F. Supp. 2d 317, 321 (S.D.N.Y. 1999)).

In the instant matter, the denial of Plaintiff's request for leave to amend is *dispositive* where the denial is based on *futility* because such a request is analyzed – and the Hon. Fox concurs - under the same standard as a motion to dismiss for failure to state a claim, which is clearly a dispositive motion. To this effect, the Hon. Fox states in his Order:

> As noted earlier, each of these claims has been reviewed in the context of an analysis of the defendants' motion to dismiss and, with one exception, *has been found to be deficient.*

As this Court knows, the exception is Plaintiff's intentional discrimination allegations under 42 U.S.C. § 1981.

## II-    BACKGROUND & PROCEDURAL HISTORY

After initiating this action on August 8, 2011, Docket Entry No. 2, Plaintiff filed his Third Amended Complaint on February 2, 2012 Docket Entry No. 40. The Third Amended Complaint alleges fourteen causes of action for discrimination on the basis of race, national origin, disability, age, retaliation, conspiring to violate Plaintiff's civil rights, negligent failure to prevent such a conspiracy, defamation, and intentional infliction of emotional distress. On November 5, 2012, prior to Defendants' submission of their motion to dismiss Plaintiff's Third Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rule of Civil Procedure, Plaintiff filed a notice of voluntary dismissal pursuant to Rule 41(a)(1) of the same, dismissing all claims against defendants Sheldon Skip Taylor, the Law Offices of Sheldon Skip Taylor, and dismissing some but

not all claims against defendants Jean-Yves Haouzi, Jessica Comperiati, Frank Maucort, and Little Rest Twelve, Inc., Docket Entry No. 92.

When he filed his notice of partial voluntary dismissal on November 5, 2012, Plaintiff also requested that the Court grant him leave to amend both his claims under 42 U.S.C. § 12111, *et seq.* because they were deficient and would not withstand a motion to dismiss. Plaintiff initially realized that his ADA claims were deficient and that his Third Amended Complaint should be amended as suggested by the Hon. Fox's Memorandum and Order denying Plaintiff's request for the appointment of a pro bono counsel in the present matter. *See Azkour v. Haouzi,* 2012 U.S. Dist. LEXIS 66497 (S.D.N.Y., May 11, 2012). In his opinion, the Hon. Fox states:

> An employer is subject to the ADA if it is "engaged in an industry affecting commerce [that has] [] 25 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year . . . ." 42 U.S.C. § 12111(5)(A).

> The complaint indicates that the defendants operate a restaurant and bar. Their establishment is engaged in an industry that affects commerce. However, Azkour has not made any factual allegations about the number of employees the defendants have or have had, such that it is clear that the defendants are employers subject to the ADA's proscriptions. Therefore, the Court is unable to determine that Azkour's ADA claim is likely to have merit.

Furthermore, Plaintiff became positively aware that his Third Amended Complaint needed to be meritoriously amended when, on or about October 12, 2012, he received a letter from Defendants' counsel denying him reinstatement, unless he submitted to a psychiatric evaluation. *See* EXHIBIT A. The Court is aware and Defendants do not deny that this letter was their final response[3] to Plaintiff's request for injunctive relief in the

---

[3] In this letter, Defendants' counsel misrepresents to the Court that Plaintiff refused an offer of reinstatement made to him by his clients in January 2011. Counsel refers the Court to the document at Docket Entry No. 61, where David Stein, Esq. conveyed to the Hon. Fox that he

related matter *Azkour v. Little Rest Twelve, Inc., et al.*, <u>10-cv-4132 (RJS)(KNF)</u> ("FLSA Action"), which is still pending before this Court. *See* FLSA Action <u>Docket Entries Nos. 129, 130, and 132</u>. The Court is also aware, as a matter of law, that a reinstatement based upon a *sine qua none* condition of being clinically examined by Defendants' psychiatrist is prohibited by 42 U.S.C. § 12112(d). After acquiring this information, Plaintiff brought his request for leave to amend the Third Amended Complaint, "as soon as the necessity for altering the pleading [became] apparent," to avoid an allegation of delay by Defendants. *See* 6 Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1488 (3d. 2010).

Anyway, the Hon. Fox did not rule on Plaintiff's request for leave to amend his Third Amended Complaint because, according to the Hon. Fox, Plaintiff had allegedly filed a *motion*[4] without his permission, as directed by an Order issued on May 1, 2012, which requires both parties to abstain from filing motions without the Hon. Fox's prior authorization. In fact, the Hon. Fox did not even bother considering Plaintiff's request until its subsequent, inexplicable termination on or about January 10, 2013. *See* <u>Docket Entry No. 99</u>. Although the Hon. Fox did not hold a pre-motion conference to address Plaintiff's request as mandated by the Second Circuit, he arbitrarily terminated Plaintiff's voluntary partial dismissal, his request for leave to amend, and the proposed Fifth Amended Complaint attached to <u>Docket Entry No. 92</u>.

In his Order dated October 7, 2013, the Hon. Fox omits, most certainly for *the* inappropriate reasons, to address his Order at <u>Docket Entry No. 99</u>, which terminated Plaintiff's first request for leave to amend his Third Amended Complaint. Maybe the

---

would not attend a hearing on Plaintiff's pro se motion for injunctive relief. Strangely, while counsel misrepresents to the Court that Plaintiff rejected reinstatement, his client deny Plaintiff any reinstatement based on his alleged "mental disability". *See* <u>EXHIBIT A.</u> There is nothing in the record that indicates that Defendants have ever extended an offer of reinstatement to Plaintiff, nor is there anything that suggests that, at one point in time, he rejected any such offer. In fact, this is the reason why Plaintiff renewed his request for injunctive relief on September 26, 2012, two weeks after Mr. Stein's termination.

[4] The Court may note that Plaintiff requested *leave* to amend in his pleading at <u>Docket Entry No. 92.</u>

Hon. Fox omits to mention such Order because the refusal to permit a motion to be filed without a prior conference, followed by a failure to hold such a conference until nearly nine months after one was first requested, and then by an eventual denial[5] of the motion for having been filed in violation of a court order, or for any other reason, are actions so "at odds with the purpose and intent of [the Federal Rules]," *Padovani v. Bruchhausen,* 293 F.2d 546, 548 (2d Cir.1961), as to warrant mandamus relief.

On December 3, 2012, Defendants moved to dismiss the Third Amended Complaint. Docket Entry No. 95. Although the documents at Docket Entry No. 92 were technically stricken from the record by the Hon. Fox's Order of January 10, 2013, Docket Entry No. 99, Defendants' attempt to dismiss Plaintiff's Third Amended Complaint addressed only the remaining claims asserted in the Fifth Amended Complaint. Defendants, in their argument supporting their motion to dismiss, did not address Plaintiff's causes of action alleging discrimination on the basis of national origin and age, retaliation, conspiring to violate Plaintiff's civil rights, negligent failure to prevent such a conspiracy, defamation, and intentional infliction of emotional distress.  Based on Defendants' failure to address the above-enumerated claims, Plaintiff assumed that they had answered the Fifth Amended Complaint, rather than the Third Amended Complaint. The Court may note that Plaintiff, in his opposition to their motion in the pleading at Docket Entry No. 98, had been consistently referring to his allegations as articulated in the proposed Fifth Amended Complaint.

Plaintiff filed the aforementioned pleading on December 7, 2012. It is titled "Opposition to Defendants' Motion to Dismiss & Plaintiff's Memorandum of Law in Support of His Motion for Judgment on the Pleadings as to Defendants' Liability & Monetary Damages."[6] Docket Entry No. 98. Defendants did not file a reply and, as of that date, the Hon. Fox continued to be undisturbed by the parties' transactions. However,

---

[5] Plaintiff renewed his request for leave to file a motion to amend his Third Amended Complaint and proposed as amendment the Fifth Amended Complaint attached to Civil Rights Action Docket Entry No. 92. *See* Plaintiff's request at Docket Entry No. 110.

[6] Plaintiff has not in fact filed a motion for judgment on the pleadings, which would be improper given that the pleadings are not yet closed in this matter. *See* Fed, R. Civ. P. 12(c).

as related above, a month after filing the above-mentioned opposition, the Hon. Fox decided to terminate Plaintiff's request for leave to amend at Docket Entry No. 92, purposefully sabotaging the entire case.

On June 1, 2013, after Plaintiff petitioned the United States Court of Appeals for the issuance of a writ of mandamus on or about May 3, 2013, *see In re Hicham Azkour*, USCA Case No. 13-1925; *see also* USCA Mandate at Docket Entry No. 114, Judge Fox suddenly decided to issue a Report & Recommendation ("Report") recommending that this Court: (1) grant Defendants' partial motion to dismiss, Docket Entry No. 95, respecting Plaintiff's ADA claim for intentional discrimination and his 42 U.S.C. § 1981 and ADA retaliation claims; and (2) deny that motion as it relates to Plaintiff's 42 U.S.C. § 1981 intentional discrimination claim. *See Azkour v. Haouzi*, 2013 U.S. Dist. LEXIS 91415 (S.D.N.Y., June 28, 2013) or Docket Entry No. 105.

Plaintiff, on or about July 19, 2013, objected to the Report and, as mentioned above, renewed his request for leave to amend his Third Amended Complaint. Docket Entries Nos. 110 and 111. Plaintiff objected to the Report because the Hon. Fox erred in dismissing Plaintiff's claim of retaliation under 42 U.S.C. § 1981. Contrarily to what the Report alleges, Plaintiff's Third Amended Complaint articulates the prima facie elements of a retaliation claim brought under  42 U.S.C. § 1981. When filing his motions for reconsideration of this Court's adoption of the Report, Docket Entries Nos. 115, 119, and 122, Plaintiff demonstrated to this Court that his allegations articulate his claim of retaliation, albeit he admitted that his ADA claims were deficient and needed amendment as per Plaintiff's request at Docket Entry No. 92. He also demonstrated to this Court, by the preponderance of the evidence, that Defendants were aware and did not deny the fact that they were aware of his protected activity when they engaged in an adverse action against him.

Despite Plaintiff's targeted objection, this Court adopted the Hon. Fox's erroneous Report and granted Defendants' motion with respect to Plaintiff's claims of discrimination under the ADA and retaliation under both the ADA and 42 U.S.C. § 1981,

but denied the motion with respect to the Plaintiff's claim of discrimination under 42 U.S.C. § 1981. This Court, by the same order, gave effect to Plaintiff's notice of voluntary dismissal. *See Azkour v. Haouzi*, 2013 U.S. Dist. LEXIS 109008 (S.D.N.Y., Aug. 1, 2013).

Thereafter, as articulated above, Plaintiff filed his three motions for reconsideration. All of them, without good cause or argument, were denied. All the probative and relevant evidence presented by Plaintiff to support his three motions for reconsideration was discarded and ignored. *See* Docket Entries Nos. 117, 121, 125. Quite strangely, in the last denial, Docket Entry No. 125, this Court expressed sympathy with Plaintiff's frustrations in litigating the present matter and suggested that he lost his case. It nevertheless advised Plaintiff to continue his *efforts* to amend or to appeal.

Plaintiff's *efforts* to amend have heretofore failed and, considering the surrounding circumstances and the statements made by the Court, the Hon. Fox's decision to deny Plaintiff's proposed amendment does not appear to be a fortuitous one. It rather seems to be a deliberate effort, which is orchestrated and aimed at ending this action at the expense of Plaintiff's inviolate right to due process and the equal protection of the laws. It also appears to be a retaliatory measure taken by the Hon. Fox and this Court against Plaintiff because, on May 3, 2013, he complained to the United States Court of Appeals of inordinate delays and inactions. These might be unsubstantiated accusations, but there is some doubt as to the fortuitous and coincidental nature of the events.

## III-   ARGUMENT

### 1.   THE HON. FOX DID NOT REVIEW THE THIRD AMENDED COMPLAINT AND THE FIFTH AMENDED COMPLAINT

It would not be an understatement to say that the Hon. Fox, when he drafted his opinions, had not thoroughly reviewed the Third Amended Complaint at Docket Entry

No. 40 and the Fifth Amended Complaint at Docket Entry No. 92. And even if, *arguendo*, there had been any reviews of these two amended complaints, one would say that they had been elusive, superficial, and conducted as mere formalities, as it was the case with the status conference of August 20, 2013[7]. The simplest and initial way to prove the Hon. Fox's failure to review the complaints is his inexplicable reference to Plaintiff's present action as a class action in his Report. *See Azkour v. Haouzi*, 2013 U.S. Dist. LEXIS 91415 (S.D.N.Y., June 28, 2013) or Docket Entry No. 105. In footnote No. 1 of this Report, the Hon. Fox writes:

> Throughout Azkour's third-amended complaint, he characterizes this matter as a class action. However, "[a] pro se litigant" such as Azkour, "is not empowered to proceed on behalf of anyone other than himself." *McCall v. Pataki*, 232 F.3d 321, 322 (2d Cir. 2000) (citations omitted). Construing Azkour's complaint liberally, as it is required to do, *see Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (citation omitted), the Court analyzes his complaint as having being brought solely on Azkour's behalf.

Any person, even one who is not trained in law, will quickly determine after the first reading of the Third Amended Complaint that Plaintiff does not speak on behalf of any similarly situated employees and does not *propose* that his suit be considered as a class action. Moreover, the present action was brought two years ago, on or about August 8, 2011, and at no time during its protracted prosecution, did Plaintiff request class action certification as per Rule 23(c) of the Federal Rules of Civil Procedure. Furthermore, even if Plaintiff supposedly had requested certification, his request would have been summarily denied by the Hon. Fox himself based on the fact that, at the time of the present action's filing, Plaintiff was not an attorney – and has never been an attorney - admitted to practice law in this District or any other jurisdiction. Therefore, there is not a shred of evidence which points to the fact that there is a possibility that Plaintiff could

---

[7] The docket sheet does not show that the conference was transcribed. If there were a transcript, the Court would understand that this conference was scheduled as a meaningless protocol shielding the Hon. Fox and this Court from any allegations accusing them of denying pre-motion conferences arbitrarily. It is a "public relations stunt." Counsel for Defendants did not even bother showing up.

have referred in his Third Amended Complaint to the present action as a class action, whether implicitly or explicitly.

Moreover, as a pro se litigant, who already intervened in a class action for the purpose of enforcing an injunction, *see Reyes v. Buddha-Bar NYC*, <u>2009 U.S. Dist. LEXIS 45277 (S.D.N.Y., May 28, 2009),</u> Plaintiff is conscious that he is not empowered to proceed on behalf of anyone other than himself. *See, e.g.,* 28 U.S.C. § 1654[8]; *Eagle Associates v. Bank of Montreal,* <u>926 F.2d 1305, 1308 (2d Cir.1991)</u>. Statutorily, Plaintiff is not a class counsel as defined by 28 U.S.C. § 1711(c). The latter defines class counsel as "the persons who serve as the attorneys for the class members in a *proposed* or *certified* class action." Emphasis added. On the other hand, 28 U.S.C. § 1711(b) defines class action as "any civil action filed in a district court of the United States under rule 23 of the Federal Rules of Civil Procedure or any civil action that is removed to a district court of the United States that was originally filed under a State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representatives as a class action."

In any event, this Court is aware that *McCall,* the case law to which the Hon. Fox referred in his Report's footnote, rather addresses the dismissal of a pro se plaintiff's complaint for failure to oppose a defendant's motion to dismiss. As stated above, the Court, while adopting the Hon. Fox's erroneous Report, was also aware that Plaintiff based his entire opposition upon claims brought by the Fifth Amended Complaint, rather than by the Third Amended Complaint. And this alone could have warranted an *automatic* dismissal, because the Hon. Fox could have assumed that Plaintiff had simply failed to oppose Defendants' motion to dismiss his Third Amended Complaint, not his *proposed* Fifth Amended Complaint – which, in reality, was the subject of Defendants'

---

[8] 28 U.S.C. § 1654 states:

> In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein.

motion to dismiss[9]. But *MacCall* considers that any dismissal based upon a pro se plaintiff's failure to oppose a motion to dismiss is error and this - it has now become clear - restrained the Hon. Fox from dismissing the Third Amended Complaint altogether. In fact, mere reference to *McCall* betrayed the true intentions of the Hon. Fox and showed that he was, in all actuality, trying to "get rid" of Plaintiff's "encumbering", "deranging", "superfluous" Third Amended Complaint without, as justice so requires,  addressing the entire transaction on the merits, whether the merits of Plaintiff's claims or the merits of Defendants' motion to dismiss:

> The district court in the present case did not address the merits of defendants' Rule 12(b)(6) motion and appears to have dismissed the complaint solely on the ground that Herrera did not respond to the motion. Dismissal on that basis was error. This Court, however, is "free to affirm an appealed decision on any ground which finds support in the record, regardless of the ground upon which the trial court relied."*Leecan v. Lopes,* 893 F.2d 1434, 1439 (2d Cir.), *cert. denied,* 496 U.S. 929, 110 S.Ct. 2627, 110 L.Ed.2d 647 (1990); *see Headley v. Tilghman,* 53 F.3d 472, 476 (2d Cir.), *cert. denied,* 516 U.S. 877, 116 S.Ct. 207, 133 L.Ed.2d 140 (1995). Accordingly, we turn to the question of whether Herrera's complaint stated a claim on which relief can be granted.

*McCall*, 232 F.3d at 323.

In a nutshell, the Hon. Fox did not really bother reviewing the allegations in the Third Amended Complaint and, as we have demonstrated to this Court numerous times, this led to his recommendation that Plaintiff's 42 U.S.C. § 1981 retaliation claim be dismissed, despite the fact that Plaintiff's allegations Nos. 43, 48, 49, 50, 58, 59, 109 and 110, along with the presented material evidence indicating his engagement in protected activity, articulate unambiguously the prima facie elements of a retaliation claim. Moreover, his contention that the ADA allegations in the Fifth Amended Complaint

---

[9] In his motion to dismiss, Defendants' counsel vaguely addressed the *5 amended* claims articulated by Plaintiff's *proposed* Fifth Amended Complaint, not the 14 claims articulated by Third Amended Complaint.

remained unchanged – and would not withstand a motion to dismiss - proves that he did not review a line of the proposed amendment.

## 2.   <u>THE HON. FOX DID NOT SHOW WHY, HOW, AND WHERE PLAINTIFF'S AMENDMENT IS FUTILE</u>

More disturbing are the Hon. Fox's bald assertions in his Order, <u>Docket Entry No. 127</u>, which arbitrarily deny amendment:

> In this case, it would be futile to allow the plaintiff to amend his third-amended complaint because the proposed new claims are essentially *identical* to the corresponding claims set forth in his third-amended complaint. As noted earlier, each of these claims has been reviewed in the context of an analysis of the defendants' motion to dismiss and, with one exception, *has been found to be deficient.*

This is a mischievous argument because it states that Plaintiff's ADA claims in the Third Amended Complaint are deficient and, consequently, they remain deficient in his Fifth Amended Complaint, despite the ostensibly substantial amendments. Nevertheless, the Hon. Fox does not show in what way, where, and how the amended claims are deficient. Even though he states in his Order that Plaintiff's amended claims were "reviewed in the context of an analysis of the defendants' motion to dismiss", he nonetheless does not show, based upon any legal arguments and relevant facts, that Plaintiff's amended claims cannot withstand a Rule 12(b)(6) motion to dismiss. A review of the Fifth Amended Complaint indicates that Plaintiff cured the deficiencies to an extent where no dismissal could be possible as demonstrated by all the footnotes supporting his amendment and which mainly consist of law provisions. In addition, an initial review of the legal arguments at <u>Docket Entry No. 98</u> demonstrates how the amendment is not futile, malicious, prejudicial, or dilatory in nature. In essence, Plaintiff's amendment is meritorious and if Plaintiff's first request for leave to amend were considered, *see* <u>Docket Entry No. 92</u>, dismissal of his ADA claims would have been inappropriate. "Dismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts

which would entitle him or her to relief." *See Chambers v. Time Warner*, 282 F.3d 147, 152 (2d Cir. 2002); *Young v. County of Fulton*, 160 F.3d 899, 902 (2d Cir. 1998). In order to conduct a *de novo*[10] review of the record for the purpose of this objection, this Court should likely apply the same standard in reviewing a grant of judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. *See Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999). Leave to amend should be freely granted in the instant matter and the Court must, *sua sponte*, convert Plaintiff's Rule 12(c) motion and consider summary judgment in the present matter because it is fair, timely, appropriate, and because there are no genuine issues of material fact.

Anyway, in a conclusory fashion, the Hon. Fox decided that leave to amend a pleading "should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir.2001). That is a legal conclusion *only*. It does not demonstrate, in any way, how Plaintiff's proposed amendment is contemplated to delay resolution of the instant matter, is made in bad faith, with undue prejudice to Defendants, or is futile. To counter the Hon. Fox's facetious reasoning, Plaintiff contends that *Milanese* also states that leave to amend "will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss for failure to state a claim." *Id.* In the instant case, the Hon. Fox did not demonstrate how Plaintiff's ADA amended claims cannot withstand a Rule 12(b)(6) motion to dismiss for failure to state a claim. A review of Plaintiff's *premature* motion for judgment on the pleadings as per Rule 12(c), Docket Entry No. 98, along with the Rule 56.1 statement supporting it, Docket Entry No. 97, demonstrate that Plaintiff's claims cannot be dismissed for failure to state a claim. In fact, as stated above, they are ripe for a summary judgment based on the Defendants' own admissions. *See* EXHIBIT A.

---

[10] As requested above, a *de novo* review should consider the Third Amended Complaint and all the pleadings filed starting from Docket Entry No. 92 to the present pleading.

### 3. THE HON. FOX DID NOT ASSESS PLAINTIFF'S NEWLY ACQUIRED EVIDENCE

In his letter dated October 12, 2012, in which his client Little Rest Twelve, Inc. denies Plaintiff's request for reinstatement, counsel for Defendants writes:

> Thirdly, there is a real question based upon plaintiff's own admissions made before the Court including his motion to appoint a Guardian Ad Litem based on his own contention that he suffers from "mental disability" and was thus incompetent as a matter of law, as to whether he is qualified or capable to perform his former job duties at this time.

As if this type of statement does not express a clear intent to discriminate against Plaintiff, counsel goes further and states:

> The Record demonstrates, or at a minimum raises a substantial question as to whether plaintiff, at present, is capable of performing the essential functions of his job due to his admittedly severe mental problems. LRT is entitled to have plaintiff examined by medical experts to determine his fitness for duty or whether he might present a danger to himself or other employees if he is permitted to return to active employment. Such an examination should be a condition precedent to his reinstatement and the Court should be permitted to consider the results thereof before ordering LRT to return plaintiff to active employment.

Indeed, this is direct evidence of discrimination, as prohibited by 42 U.S.C. § 12112(d). To this day, Defendants have not shown that a medical examination of Plaintiff is required as per 42 U.S.C. § 12112(d)(3).

By having his amended ADA allegations rely on this newly acquired fact, Plaintiff has indubitably demonstrated that there is no futility in his timely amendment.

"Determinations of futility are made under the same standards that govern Rule 12(b)(6) motions to dismiss." *Nettis v. Levitt*, 241 F.3d 186, 194 n. 4 (2d Cir.2001)[11]. "One appropriate basis for denying leave to amend is that the proposed amendment would be futile because it fails to state a claim." *Id.* ; *Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir.1999) ("[W]here the [moving party] is unable to demonstrate that he would be able to amend his [pleading] in a manner which would survive dismissal, opportunity to replead is rightfully denied."). When considering whether a proposed amendment is "meritless" or "futile," this Court should conduct an inquiry comparable to the analysis governing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Milanese*, 244 F.3d at 110. If a proposed claim would be subject to dismissal under Rule 12(b)(6), the Court should "refuse to grant leave to amend rather than assent and then await a motion to dismiss." *Bank of New York v. Sasson*, 786 F.Supp. 349, 352 (S.D.N.Y. 1992).

Unlike in *Bank of New York*, the Hon. Fox refused to grant leave to amend, despite the striking evidence that Plaintiff's proposed amended claims would not be subjected to dismissal and, purposefully, instead, assented to wait and watch Plaintiff's initial ADA claims dismissed.

Ironically, in *Azkour v. Haouzi*, 2012 U.S. Dist. LEXIS 66497 (S.D.N.Y., May 11, 2012), the Hon. Fox complains that Plaintiff does not allege that Defendants are covered by the ADA pursuant to 42 U.S.C. § 12111(5)(A) and, therefore, Plaintiff's ADA claims may be dismissed. Yet, in the Fifth Amended Complaint the Hon. Fox ignores the submitted evidence and, unlike in the Third Amended Complaint, Plaintiff, at ¶¶ 4, 7-12,

---

[11] This case law may prove instructive for Defendants' counsel as it undermines his defense that his individual clients are merely successors and, thus, are not liable to Plaintiff. Counsel has been arguing that the new management should not be liable for discrimination or retaliation because Plaintiff never worked for them. When analyzing whether a successorship has taken place, a court should "disregard[] mere questions of form and ask[] whether, in substance, 'it was the intent of [the successor] to absorb and continue the operation of [the predecessor].'"*Nettis v. Levitt*, 241 F.3d 186, 194 (2d Cir.2001) (citations omitted). "[W]hen a successor firm acquires substantially all of the predecessor's assets and carries on substantially all of the predecessor's operations, the successor may be held to have assumed its predecessor's tort liabilities, notwithstanding the traditional rule that a purchaser of corporate assets does not assume the seller's liabilities." *Id.* at 193.

alleges sufficiently that Defendants are covered by the ADA pursuant to the aforementioned statute. Not only does he allege that they are covered by such provision, but he also sufficiently alleges, at ¶¶ 167-190, 191-208, and 209-129, that they have refused to rehire/hire/reinstate/employ him and, thus, discriminated and retaliated against him because they regard him as a disabled person with a record of impairment, within the meaning of both 42 U.S.C. §§ 12102(2)(B) and (C), and because he has engaged in protected activity. To this effect, Plaintiff presented to the Hon. Fox, upon numerous times, the above-mentioned letter he received from Defendants' counsel, which states that they refuse to reinstate him unless he submits to a psychiatric assessment. *See* EXHIBIT A. The Hon. Fox abused his discretion by refusing to assess this evidence.

Also, it appears that the Hon. Fox's Order strikingly parrots the September 9, 2013 letter addressed to him by Defendants' counsel, in which they groundlessly oppose Plaintiff's request for leave to amend. *See* EXHIBIT B. In this letter, counsel claims that "all of plaintiff's claims under the ADA suffer from his inability to allege facts establishing that defendants were aware of his *purported* disability at the time of the actions complained of." Emphasis is added. Counsel avoids being more particular and ambiguously, without the least iota of conciseness, refers to unspecified actions. While in the FLSA Action he asserts that Plaintiff is not eligible for back pay and front pay because of his mental disability, counsel, in the aforementioned letter and for the mere purpose of dodging Plaintiff's ADA claims, suddenly avers that his clients were not aware of Plaintiff's *purported* disability. *See* FLSA Action Docket Entry No. 177. To change course and qualify *mental incompetence* as a *purported* disability seems to be a huge manoeuver in bad faith and an immeasurable mastery in the arts of travesty.

Speaking of travesty, what comes as prominently scandalous in this letter is counsel's characterization of the present matter as a "legal travesty". *See* EXHIBIT B. In other words, counsel wants to convey to this Court that he is a serious, honest, and ethical attorney, who knows his trade and is above the instant ludicrous, meritless matter. The problem, as demonstrated by EXHIBIT C, EXHIBIT D, EXHIBIT E, and EXHIBIT F, is that such characterization has failed counsel's true intent and made his actions rather look

like the real travesty. A review of all the contradictions in these exhibits, which are the unique artifact of counsel for Defendants, instructively reveal that counsel is the big protagonist, or the "big nothing", or even the "all-hat-no-cattle" personage in a mockingly undignified or trivializing treatment of a dignified subject, which is justice. His travesty is clearly distinguished from the mock epic and other kinds of burlesque in that it treats a solemn subject frivolously, while they treat frivolous subjects with mock solemnity. Cervantes's *Don Quixote* (1605) is a travesty of chivalric romances, and James Joyce's *Ulysses* (1922) is partly a travesty of Homer's *Odyssey*.

So, counsel, like an ambitious or, rather, pretentions 7th grade pupil, uses big words without knowing their meaning. Additionally, he appears to have lost his memory during the course of this "travesty" or, perhaps, has he been making after-the-fact statements to fit the facts, and not *vice versa*. For instance, in his letter dated October 12, 2012, EXHIBIT A, and another one dated April 27, 2012, EXHIBIT C, counsel psychotically complains to this Court about Plaintiff's violent tendencies and expresses his fear for his safety and life. In another letter, dated October 23, 2012, he refers to Plaintiff as a person who is engaging in the "extraordinarily unpleasant and creepy" acts of speaking of his children, EXHIBIT D. In EXHIBIT C, he refers to Plaintiff as a violent "Koran-quoting lunatic". Nonetheless, a year later, counsel has inexplicably dissipated his fears and would like to depose a *lunatic*, *violent* Plaintiff on November 26, 2013. *See* EXHIBIT F.

Not only has counsel contradicted himself through those strange letters and unveiled that he is indeed a champion of dishonesty, but he has also boldly filed an affidavit, allegedly executed by a certain Kristal Mallookis, Docket Entry No. 129-1, where he conveys to this Court that Plaintiff did not sufficiently *lie* to his prospective employers so that his damages be mitigated. As a matter of course, this affidavit is not admissible for the purposes of the FLSA Action. However, the Court may now note that this evidence, suddenly, does not refer anymore to Plaintiff as a mentally incompetent person. In fact, the affidavit refers to Plaintiff as a person who is able to work and has

outstanding professional experience as a waiter[12], not a busboy. Unfortunately, Kristal Mallookis did not propose that Plaintiff contact her so that she may place him in a position that is compatible with his "impressive" background. This is the burlesque part in the actions of counsel for Defendants. He makes or causes a statement to be made, sometimes under oath, just to have it immediately contradicted and undermined by a subsequent statement. In his pleading at Docket Entry No. 177, counsel contends that his clients' discriminatory failure to provide Plaintiff with a post-employment reference letter should not be a barrier for prospective employers to hire him. He refers in this pleading to Plaintiff's "mindset". While he accuses Plaintiff of misrepresentations as to the mitigation of his damages, counsel suggests that Plaintiff should lie to prospective employers about his last position at Ajna Bar or, at least, omit to speak of the 17-week stunt, as counsel likes to call it. *See* ¶ 12 of defendant Jessica Comperiati Affidavit, Docket Entry No. 165.

This may prove to this Court what kind of travesty we have been facing for the last three years.

Counsel's travesty reaches yet its zenith when, as an officer of the court, he issues a non-compliant request for production of documents. This request was apparently made pursuant to Rule 34 of the Federal Rules of Civil Procedure. First of all, counsel requires that these documents be produced within 20 days. Second, most of these documents are in the possession of Defendants. *See* EXHIBIT E.

---

[12] Indeed, beside other skills that require federal security clearance, of which counsel may remain ignorant, Plaintiff has additionally extraordinary and exceptional skills as a waiter. Plaintiff, for example, worked for the Brown Palace Hotel as a waiter in the Palace Arms, Denver, Colorado. He also worked for the same landmark institution as one of the bartenders of the Churchill Bar. We do not believe that counsel for Defendants, considering his boorish style, may be allowed within the premises of such a landmark. This Court, while clerking for the Hon. David M. Ebel of the 10th Circuit, may have visited the Brown Palace Hotel, which sits a few block away from the Byron White U.S. Courthouse, and may testify to its exceptional character, including the extraordinary talent and taste of its gifted employees, including busboys.

Something that might arouse the envy of Sancho Panza himself is counsel's outlandish request No. 5. As we stated earlier, counsel makes a statement and denies it a few days later. This request is answered by defendant Jessica's own sworn averment at ¶ 12, Docket Entry No. 165. Pertinently, she states:

> Mr. Azkour claims that his search for work was hampered by Ajna Bar's alleged refusal to give him a "reference", which created a "gap" in his resume. This is completely ridiculous. First it is my experience that applicants for busboy and food runner positions are rarely, if ever, asked for written references when applying for employment. Moreover, I cannot imagine any restaurant that would be concerned about a 17 week "gap" in the resume of someone applying to work as a busboy or food server.

All the contradictions, to which counsel's letters and pleadings point, should remind us of one thing: Plaintiff's alleged and perceived "mental disability" has been used by Defendants and their counsel as a pretext to discriminate and retaliate against Plaintiff. It is a pretext, which is inherently part of both Defendants' and counsel's pattern of innate, incorrigible misconducts, the essence of which this Court may, for example, grasp in counsel's mania of filing pleadings twice, thrice in some instances. The couple of answers to the Third Amended Complaint, Docket Entries Nos. 128 and 129, for which he presumably charged his clients twice, along with the hilarious discovery requests where he requests from Plaintiff a sort of production of documents, which are solely in his clients' possession, reflect that this action has indeed become a travesty and a conference is required to address counsel's non-compliance with Rule 26.

Moreover, despite this Court's Order prohibiting him from communicating with Plaintiff by email, Docket Entry No. 60, counsel, on October 17, 2013, violated such Order and sent an email to Plaintiff requesting that he provide him with his input on the relevant portions of a schedule questionnaire so that he may submit it to the Hon. Fox. *See* EXHIBIT G.

There is no doubt that Defendants regard Plaintiff as disabled, whether for a good or bad reason on their part – but mostly for the bad reason, which remains a dumb pretext to evade liability. Moreover, there is no doubt, as we have proved to this Court by dint of the EEOC Notice to Sue, Charge No. 520-2012-00209, that Defendants were fully aware, at least since approximately October 28, 2011, that Plaintiff was complaining of discrimination on the basis of perceived disability. Plaintiff became aware of this discriminatory practice, which has been heretofore nakedly used by Defendants in their campaign to smear him, after former counsel had capitalized on Plaintiff's statements during the failed settlement conference, which took place on July 11, 2012, in the presence of the Hon. Fox, and began filing papers accusing Plaintiff of mental incompetence and, consequently, of his inability to testify and prosecute the FLSA Action. Plaintiff's proposed Fifth Amended Complaint articulates Defendants' awareness of this protected activity. It also articulates that they had engaged and continued to engage in adverse employment actions against Plaintiff as related and argued in Docket Entry No. 98.  And this, ultimately, supports Plaintiff claims of retaliation, interference, intimidation, and coercion as proscribed by 42 U.S.C. § 12203.

## 4.   THE HON. FOX DID NOT EXERCISE DUE DILIGENCE TO HAVE HIS RULING SUPPORTED BY THE LAWS AND FACTS

This Court is reminded that prior to his first request to amend his Third Amended Complaint into a Fifth Amended Complaint, Docket Entry No. 92, Plaintiff filed a request for leave to amend the Third Amended Complaint into a Fourth Amended Complaint, pursuant to Federal Rule of Civil Procedure 15(a)(2), and add a claim pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, alleging that Defendants "engaged in the (1) conduct (2) of a criminal enterprise (3) through a pattern (4) of racketeering activity." The motion was unopposed. *Azkour v. Haouzi*, 2012 U.S. Dist. LEXIS 121707 (S.D.N.Y. Aug. 24, 2012) or Docket Entry No. 87.

Unlike the Order from which we appeal, <u>Docket Entry No. 127</u>, the aforementioned opinion, which denies Plaintiff's request for leave to amend, is clearly warranted by laws and facts and, considering its well-reasoned nature and fairness, it is also reliably quoted by other courts in the Second Circuit and other sister circuits. *See, e.g., Reza v. Khatun*, <u>2013 U.S. Dist. LEXIS 87654 (E.D.N.Y. June 21, 2013)</u>. In the Hon. Fox's August 24, 2012 opinion, he set forth convincing reasons for which Plaintiff's request for leave to amend should not be granted. He discussed his decision by relying on case law and by addressing each and every claim Plaintiff contemplated to add. For instance, the Hon. Fox discussed the standards underlying RICO claims, in general, along with the heightened standard of pleading, in particular. He structured his opinion by discussing separately the wire fraud claim, the mail fraud claim, and the 18 U.S.C. § 1962(c) claim. Not only did he professionally and fairly address Plaintiff's request, but he also, in good faith, stated the following:

> Motions to amend, under Rule 15(a)(2), may be made at any stage of the litigation. *See* 6 Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1487 (3d. 2010). However, a party seeking to amend should bring its motion "as soon as the necessity for altering the pleading becomes apparent," to avoid an allegation of delay. *Id.* at § 1488; see also *Cresswell v. Sullivan & Cromwell*, <u>922 F.2d 60, 72 (2d Cir. 1990)</u> (upholding the district court's decision to deny leave to amend where the plaintiff waited more than 17 months after bringing suit to request leave to amend the pleading, and plaintiff's reason for the delay was ignorance of the law). However, "[m]ere delay . . . absent a showing of bad faith or undue prejudice, does not provide a basis for [a] district court to deny the right to amend." *State Teachers Ret. Bd. v. Fluor Corp.*, <u>654 F.2d 843, 856 (2d Cir. 1981)</u> (citation omitted). Bad faith exists when a party attempts to amend its pleading for an improper purpose. *See Austin v. Ford Models, Inc.*, <u>149 F.3d 148, 155 (2d Cir. 1998)</u> (affirming the district court's denial of leave to amend a complaint where plaintiff sought to "erase . . . admissions [made] in [the previous] complaint") (abrogated on other grounds by *Swierkiewicz v. Sorema N.A.*, <u>534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002)</u>. Prejudice may exist,

*inter alia*, when the amendment would: "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; [or](ii) significantly delay the resolution of the dispute . . . ." *Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 284 (2d Cir. 2000) (internal quotation marks and citation omitted). In addition, the Second Circuit Court of Appeals has identified prejudice to the opposing party "resulting from a proposed amendment as among the most important reasons to deny leave to amend." *AEP Energy Services Gas Holding Co. v. Bank of America, N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) (internal quotation marks and citation omitted). As the defendants did not oppose the instant motion, the Court does not have any information before it establishing that granting Azkour's request to file the proposed amended complaint would cause the defendants undue prejudice or that the request to amend is an act of bad faith on Azkour's part. Therefore, Azkour's delay in filing the instant motion is not decisive.

A review of this portion of the Hon. Fox's opinion and its comparison with his Order at Docket Entry No. 127 may provide this Court that he is now exhibiting some bad faith in summarily – while solely relying on his whim and Defendants' wishes - denying Plaintiff's contemplated amendment. If this Court reviews the Fifth Amended Complaint, it will realize that Plaintiff acquired material evidence sufficiently pointing to Defendants' discriminatory practice on or about October 12, 2012. See EXHIBIT A. Therefore, Plaintiff's request was not made after an inordinate delay, where no satisfactory explanation was offered for the delay, and where the amendment would prejudice Defendants. *See, e.g., Tokio Marine & Fire Insurance Co. v. Employers Insurance of Wausau*, 786 F.2d 101, 103 (2d Cir. 1986). As the law in this Circuit requires, the burden is on Plaintiff to provide satisfactory explanation so that he may seek amendment. In this instance, Plaintiff already did. *See Sanders v. Thrall Car Mfg. Co.*, 582 F. Supp. 945, 952 (S.D.N.Y. 1983), *aff'd*, 730 F.2d 910 (2d Cir. 1984).

And even if the Plaintiff's contemplated amendment were to cause some delay, there is no bad faith in requesting amendment at all. Rule 15(a) provides that leave to amend "shall be freely given." Reasons for a proper denial of leave to amend include undue

delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party. *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1963). Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend. *Howey v. United States*, 481 F.2d 1187, 1190-91 (9th Cir. 1973); *Middle Atlantic Utilities Co. v. S.M.W. Development Co.*, 392 F.2d 380, 384 (2d Cir. 1968).

Plaintiff, who is acting pro se in a civil rights action, should be fairly freely afforded an opportunity to amend his Third Amended Complaint. "'A *pro se* plaintiff who brings a civil rights action should be 'fairly freely' afforded an opportunity to amend his complaint, even if he makes the request after the court has entered judgment dismissing his original complaint.'" *Frazier v. Coughlin*, 850 F.2d 129, 130 (2d Cir. 1988) (quoting *Satchell v. Dilworth*, 745 F.2d 781, 785 (2d Cir. 1984)); *see John v. N.Y. Dep't of Corr.*, 130 Fed. Appx. 506, 507 (2d Cir. 2005) ("A district court should not dismiss *pro se* complaint 'without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'") (quoting *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991)).

Finally, Plaintiff is proceeding in this matter *pro se,* and "a pro se litigant in particular 'should be afforded every reasonable opportunity to demonstrate that he has a valid claim,'" *Dluhos v. Floating & Abandoned Vessel*, 162 F.3d 63, 69-70 (2d Cir.1998) (citing *Satchell v. Dilworth*, 745 F.2d 781, 785 (2d Cir.1984)). The Hon. Fox shall deny leave to amend only if Plaintiff provides no indication as to how he would amend his Third Amended Complaint to state a valid claim were the Hon. Fox to grant him leave to do so. In both his first and second requests, along with the proposed amendment at Docket Entry No. 92, [13]Plaintiff did not state the vague hope that through discovery he might uncover a claim that he could viably state against the Defendants. Plaintiff, instead,

---

[13] Speaking of discovery, it seems that counsel for Defendants, in order to circumvent Plaintiff's potential request for a judgment on the pleadings as to the 42 U.S.C. § 1981 discrimination claim, made an odd request for the production of documents. All the documents requested by counsel are in the possession of Defendants, i.e., in Plaintiff's personnel file, which Defendants have been consistently refusing to disclose. Oddly enough, counsel requests that Plaintiff, for example, produce a document transcribing his conversation with defendant Maucort and a document proving that he was not given a reference letter. *See* EXHIBIT E.

presented convincing, relevant, and probative evidence which points to Defendants' wrongdoing. Plaintiff, unlike Defendants' counsel, is not using the tools of discovery to hunt for a viable claim in the Defendants' records. *See Dluhos,* 162 F.3d at 69. ("[A] motion to amend should be denied if there is an 'apparent or declared reason—such as undue delay, bad faith or dilatory motive . . ., repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [or] futility of amendment.'") (quoting *Foman v. Davis,* 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962)).

## IV-   **CONCLUSION**

**WHEREFORE,** for the reasons set forth above, Plaintiff respectfully requests that this Court conduct a *de novo* review of the record and reverse the Hon. Fox's Order, Docket Entry No. 127, denying him leave to amend his Third Amended Complaint into the proposed Fifth Amended Complaint, which is located at Docket Entry No. 92.

Respectfully submitted on this 18th day of October, 2013

By:   HICHAM AZKOUR
_____

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing **OBJECTION TO THE HON. FOX'S ORDER DENYING PLAINTIFF'S SECOND REQUEST FOR LEAVE TO AMEND HIS THIRD AMENDED COMPLAINT,** has been served upon the defendants' attorney of record on this 18th day of October 2013, VIA ECF/MAIL:

Andrew S. Hoffmann, Esq.

450 Seventh Avenue, Suite 1400

New York, New York 10123

Dated: October 18, 2013

By: HICHAM AZKOUR, pro se

_____

HICHAM AZKOUR

93 Pitt Street, Apt. 3B

New York, New York 10002

Email: hicham.azkour@gmail.com

# EXHIBIT A



HOFFMANN & ASSOCIATES
Attorneys at Law
450 Seventh Avenue, Suite 1400
New York, New York 10123
Tel. (212) 679-0400
Fax (212) 679-1080

ANDREW S. HOFFMANN*

——— ————————

*Admitted in New York and Ohio

October 12, 2012

**Via Email: sullivannysdchambers@nysd.uscourts.gov**
Hon. Richard J. Sullivan, U.S.D.J.
United States District Court
Southern District of New York
500 Pearl Street, Room 640
New York, New York 10007

                    Re:    Azkour v. Little Rest Twelve, Inc.
                           10 Civ. 4132 (RJS)(KNF)

Dear Judge Sullivan,

        We represent defendant Little Rest Twelve, Inc. (hereinafter "LRT") in the above-captioned matter and, pursuant to the Court's direction, submit this letter in response to plaintiff's request for leave to file a motion seeking his immediate reinstatement to his former position as a busboy at Ajna Bar.

        LRT respectfully urges the Court to deny plaintiff's request, and intends to formally oppose such motion in the event it is permitted by the Court for the following reasons.

        First, as noted by plaintiff himself, he notified the Court through counsel in January 2011 that he did not wish to seek reinstatement to his former position. See Docket Entry No. 61.

        On April 26, 2012 Magistrate Judge Fox directed plaintiff to submit proposed findings of fact, conclusions of law and an inquest memorandum accompanied by supporting affidavits and exhibits setting forth plaintiff's proof of damages, interest, costs and attorney's fees in this action.

Plaintiff made a complete submission to the Court on June 2, 2012, which did not seek or make any request or claim for reinstatement to his prior position at Ajna Bar. Rather, plaintiff's submission sought "front pay" damages predicated on his contention that he "has sustained emotional trauma which has impeded him from finding work, and seems likely to impede him in the future." A necessary element of a claim for front pay is that reinstatement to a discriminatee's former position is impracticable. *Whittlesey v. Union Carbide Corporation*, 742 F. 2d 724 (2d Cir. 1984).

As recently as September 14, 2012 plaintiff continued to maintain that reinstatement to Ajna Bar was impracticable. See Plaintiff's letter to the Court dated September 14, 2012 at p. 3 ("and from my own perspective, it [reinstatement] is impracticable as well").

Under these circumstances, we contend that plaintiff has knowingly waived any right he may have to reinstatement to his former position as a busboy at Ajna Bar, and we object to him raising this issue for the first time at this advanced stage of the case.

Second, as plaintiff well knows, and understood up until several weeks ago, his reinstatement to Ajna Bar is truly impracticable given the animosity, insults and outlandish accusations he has made and displayed towards management.

Upon a determination of liability for employment discrimination or retaliation, Courts are authorized to "order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement. As an equitable remedy, reinstatement effectuates the "make-whole" relief mandated by Congress for victims of unlawful employment discrimination. *Pollard v. E. I du Pont de Nemours & Co.*, 532 U.S. 843, 850 (2001). Courts, however, have "recognized that reinstatement [is] not always a viable option, " due, for example, to "continuing hostility between the plaintiff and the employer or its workers or because of psychological injuries suffered by the plaintiff as a result of the discrimination." *Id.* at 846. See also *Banks v. Travellers Cos.*, 180 F. 3d 358, 364 (2d Cir. 1999) ("reinstatement is not always feasible for instance, because no position may be available or because animosity may impeded the resumption of a reasonable employer-employee relationship"). The decision of whether to grant reinstatement lies within the sole discretion of the trial court. See *EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2002).

Here, the record before the Court including the outrageous letters and other viperous submissions made by plaintiff demonstrate quite vividly that he bears animosity and ill will towards LRT and its management that his presence at Ajna Bar is likely to result in discord and potential violence. We ask the Court to consider the disruptive effect that plaintiff's presence could create and the resulting impact to the decorum required in a restaurant environment. Under such circumstances, we respectfully urge the Court to exercise its discretion to decline to order reinstatement. See *Hill v. Airborne Freight Corporation*, 2003 U.S. Dist. LEXIS 2379 (E.D.N.Y. 2003) (Court declined to order reinstatement where record showed ongoing acrimonious

relationship between plaintiff and Airborne management and the disruptive effect it would likely have).

Thirdly, there is a real question based on plaintiff's own admissions made before the Court including his motion to appoint a Guardian Ad Litem based on his own contention that he suffers from a "mental disability" and was thus incompetent as a matter of law, as to whether he is qualified or capable to perform his former job duties at this time.

The record demonstrates, or at a minimum raises a substantial question as to whether plaintiff, at present, is capable of performing the essential functions of his job due to his admittedly severe mental problems.  LRT is entitled to have plaintiff examined by medical experts to determine his fitness for duty or whether he might present a danger to himself or other employees if he is permitted to return to active employment.  Such an examination should be a condition precedent to his reinstatement and the Court should be permitted to consider the results thereof before ordering LRT to return plaintiff to active employment.

Respectfully submitted,

Andrew S. Hoffmann

cc:    Hicham Azkour

# EXHIBIT B

## HOFFMANN & ASSOCIATES
Attorneys at Law
450 Seventh Avenue, Suite 1400
New York, New York 10123
Tel. (212) 679-0400
Fax (212) 679-1080

ANDREW S. HOFFMANN*

_____

TRAM D. LOPRESTO

*Admitted in New York and Ohio

September 9, 2013

**<u>Via Facsimile: (212) 805-6712</u>**
Kevin N. Fox, U.S.M.J
United States District Court
Southern District of New York
500 Pearl Street, Room 20A
New York, New York 10007

> Re:   Hicham Azkour v. Jean-Yves
>       Haouzi, Franck Maucort, Jessica
>       Comperiati, Little Rest Twelve, Inc.,
>       Sheldon Skip Taylor, Esq., and The
>       Law Offices Sheldon Skip Taylor
>
>       Index No. 11 Civ. 5780 (RJS)(KNF)

Dear Magistrate Judge Fox,

As the Court is aware, we represent defendants in the above-captioned matter.

At the status conference held before Your Honor on August 20, 2013 the Court determined not to address plaintiff's outstanding request to file a fifth amended complaint herein until Judge Sullivan had an opportunity to rule on plaintiff's motion to reconsider the Court's August 1, 2013 Order adopting (in part) Your Honor's report and recommendation concerning our motion to dismiss this action.

By Order dated August 26, 2013 Judge Sullivan denied plaintiff's motion for reconsideration.

With this letter, defendants renew their opposition to plaintiff's attempt to file a fifth amended complaint herein.

Based on plaintiff's earlier submission (Docket No. 92) it appears that the proposed amendment seeks to add claims (1) for retaliation under 42 U.S.C. §1981 and (2) for discrimination, retaliation and intimidation under the Americans With Disabilities Act ("ADA").

Judge Sullivan's recent Order disposed of plaintiff's claim for retaliation under 42 U.S.C. §1981. Moreover, all of plaintiff's claims under the ADA suffer from his inability to allege facts establishing that defendants were aware of his purported disability at the time of the actions complained of.

Accordingly, defendants request that the Court deny plaintiff's attempt to further prolong the instant legal travesty and deny his request to file a fifth amended complaint herein.

Respectfully submitted,

Andrew S. Hoffmann

cc:    Hicham Azkour

2

# EXHIBIT C

HOFFMANN & ASSOCIATES
Attorneys at Law
450 Seventh Avenue, Suite 1400
New York, New York 10123
Tel. (212) 679-0400
Fax (212) 679-1080

ANDREW S. HOFFMANN*

------

*Admitted in New York and Ohio

April 27, 2012

**Via Email: sullivannysdchambers@nysd.uscourts.gov**
Richard J. Sullivan, U.S.D.J.
United States District Court
Southern District of New York
500 Pearl Street, Room 640
New York, New York 10007

**Via Facsimile: (212) 805-6712**
Kevin N. Fox, U.S.M.J
United States District Court
Southern District of New York
500 Pearl Street, Room 20A
New York, New York 10007

Re:   Azkour v. Haouzi, et. al.
Index No. 10 Civ. 4132 (RJS)(KNF)
Index No. 11 Civ. 5780 (RJS)(KNF)

Dear Judges Sullivan and Fox,

We represent defendants in the two above-captioned civil actions commenced by
Hicham Azkour. This letter supplements our previous letters hand-delivered to Your
Honors on April 24 and April 25, 2012. Since the date of our last letter, I have received
three additional emails from Mr. Azkour, all of which violate the Court's directive on
January 13, 2012 to "refrain from any and all threatening and inappropriate
communications with defendants' counsel."

The first email is entitled "MOOT" and suggests that I refer this matter to another
attorney, Mr. Martin Russo, and makes reference to the Russian mob. The second email
threatens that if I do not cooperate with him, I may suffer "severe consequences,"
including, but not limited to disbarment. The third email is entitled "Who killed Who"

and attaches a 99 page document regarding a case entitled *JWL Group Inc., et al. v. Inna Gudavadze, et al.* Index No. 150024/2010 where Mr. Russo is apparently counsel to one of the parties. Azkour's email once again refers to the Russian mafia and suggests that the parties to the litigation be left to "kill each other." Azkour also again threatens to add me as a defendant for "racketeering and association practices." A copy of Mr. Azkour's three most recent emails are annexed hereto as Exhibit "A."

My only connection to Mr. Azkour is that he worked at my client's restaurant for the grand total of *five weeks* during a time when the business was run by a different set of managers. I am a single parent raising two children. I make my living and support my children by representing clients, like those in this action. It is utterly appalling that I *continue* to be threatened by a Koran-quoting lunatic solely because of my representation of a client. I did not invite nor do I need this nonsense. Mr. Azkour repeatedly threatens me with impunity. He continues to file new frivolous actions, motions and pleadings which require my clients to incur unnecessary fees.

Once again we respectfully urge the Court to intervene to curtail Mr. Azkour's behavior in these unfortunate litigations.

Respectfully submitted,

Andrew S. Hoffmann

cc:    Hicham Azkour
       Jean-Yves Haouzi
       Franck Maucort
       Jessica Comperiati
       Sheldon Skip Taylor, Esq.

2

# EXHIBIT D

**HOFFMANN & ASSOCIATES**
Attorneys at Law
450 Seventh Avenue, Suite 1400
New York, New York 10123
Tel. (212) 679-0400
Fax (212) 679-1080

ANDREW S. HOFFMANN*

*Admitted in New York and Ohio

October 23, 2012

**Via Email: sullivannysdchambers@nysd.uscourts.gov**
Hon. Richard J. Sullivan, U.S.D.J.
United States District Court
Southern District of New York
500 Pearl Street, Room 640
New York, New York 10007

Re:   Azkour v. Little Rest Twelve, Inc.
10 Civ. 4132 (RJS)(KNF)

Dear Judge Sullivan,

As Your Honor is aware, we represent defendant Little Rest Twelve, Inc. in the above-captioned matter. The purpose of this letter is to bring to the Court's attention two recent improper actions by plaintiff Hicham Azkour which we respectfully believe are in violation of the Court's prior orders as well as the applicable rules of the Court.

First, on October 3, 2012 plaintiff filed a letter with the Court entitled "Amended Pre-Motion Letter" (Docket Entry No. 136) in which he again seeks leave to file a motion for summary judgment on the question of damages.

In the letter, at footnote 1 (on page 3) plaintiff divulges confidential settlement proposals made by him as well as defendant's responses thereto, all of which were elicited during a mediation held before Magistrate Judge Fox in this matter. Plaintiff was advised and clearly understood that these matters were and must continue to be treated as confidential and should not have been communicated to the Court. In fact, he correctly refers in his letter to his "confidential" proposal to settle this matter.

It is improper and unfair for plaintiff to communicate to the Court about confidential settlement discussions between the parties, and on behalf of defendant we strenuously object to his doing so.

Second, in plaintiff's "Reply to Defendant's Opposition to Plaintiff's Request for Injunctive Relief" which as filed on October 18, 2012 (Docket Entry No. 139) plaintiff makes a false and outrageous personal attack against me which clearly flouts directives given to him by Your Honor as well as Magistrate Judge Fox to refrain from such conduct.

In his pleading, plaintiff references my request for an extension of time submitted to the Court on October 4, 2012 in which I requested a one week extension of time to respond to plaintiff's letter concerning reinstatement because I was planning to attend my oldest son's college visiting day. Plaintiff, at footnote 2 of his pleading, claims that "on or about April 23-27 2012 counsel for plaintiff stated to this Court that he is the single parent of two daughters."

Plaintiff's representation to the Court that I have ever claimed to anyone, at any time, that I am the parent of two daughters is a complete falsehood. I enclose for the Court's review the letter plaintiff is apparently referring to, which is dated April 27, 2012. As the Court can see, the only reference in the letter is as follows: "I am a single parent raising two children." Certainly, the gender of my children is none of plaintiff's business and it is extraordinarily unpleasant and creepy to have Mr. Azkour discussing my family or personal life in any manner. I have complained to the Court on prior occasions about Azkour's aberrant behavior and do not believe that I should have to put up with such nonsense for simply doing my job representing a client.

I respectfully request that the Court take appropriate action to admonish Mr. Azkour for his improper behavior.

Respectfully submitted,

Andrew S. Hoffmann

cc:     Hicham Azkour

2

# EXHIBIT E

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
HICHAM AZKOUR

                         Plaintiffs,                Index No.  11-civ-5780

             -against-              **DEFENDANTS' FIRST**
                                        **REQUEST FOR PRODUCTION**
JEAN-YVES HAOUZI, FRANCK MAUCORT,  **OF DOCUMENTS**
JESSICA COMPERIATI, LITTLE REST
TWELVE, INC., SHELDON SKIP TAYLOR, ESQ.
LAW OFFICES OF SHELDON SKIP TAYLOR

                        Defendants.
-------------------------------------------------------------------X

        Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, defendants hereby

propounds their first request for production of the following documents for inspection and

copying by defendant within 20 days at the office of Hoffmann & Associates, 450 Seventh

Avenue, Suite 1400, New York, New York 10123.:

## DEFINITIONS AND INSTRUCTIONS

      A.     As used herein, "plaintiff" shall mean Hicham Azkour.

      B.     As used herein, "defendants" shall mean Little Rest Twelve, Inc. (and any

related entities or persons acting on its behalf), Jean-Yves Haouzi, Franck Maucort, Jessica

Comperiati, Sheldon Skip Taylor, Esq. and Law Offices of Sheldon Skip Taylor.

      C.     In producing the documents or things called for by this request, plaintiff is

requested to segregate the documents produced according to the number or numbers of the

request(s) herein to which they relate.

D.     Each document produced in response to this request shall be the original document, as well as any draft or non-identical copy thereof.

E.     Unless otherwise indicated, documents shall be those prepared in or concerning the period October, 2009 through the date this document request is fully complied with.

## DOCUMENTS REQUESTED

1.     The "employment contract" entered into between plaintiff and defendant Little Rest Twelve, Inc. on or about October 10, 2009 as alleged in paragraph 36 of plaintiff's third amended complaint.

2.     Any documents supporting plaintiff's claim that defendant Little Rest Twelve, Inc. hired him as a "waiter."

3.     Any documents supporting plaintiff's claim that defendant Little Rest Twelve, Inc. "compelled" plaintiff to work as a busboy and food runner.

4.     Any documents supporting plaintiff's claims regarding the conversations he had with defendant Maucort on March 30, 2010 and April 1, 2010 as alleged in paragraphs 48-54 in plaintiff's third amended complaint.

5.     Any documents supporting plaintiff's claim that defendants refused to provide him with a letter of reference.

6.     Any documents supporting plaintiff's claim that defendants gave negative professional references to employers seeking to inquire about plaintiff's employment with defendant.

7.     Any documents supporting plaintiff's claim that defendants terminated the employment of all Moroccan employees because they suspected them of being "Muslim Arabs."

8.     Any other documents plaintiff intends to rely upon at trial in this matter.

Dated:     New York, New York
           October 8   , 2013

                                   HOFFMANN & ASSOCIATES

                          By:  _____

                                   Andrew S. Hoffmann, Esq.
                                   *Attorneys for Defendants Jean-Yves Haouzi,*
                                   *Franck Maucort, Jessica Comperiati, Little*
                                   *Rest Twelve, Inc., Sheldon Skip Taylor, Esq.*
                                   *and Law Officers of Sheldon Skip Taylor*
                                   450 Seventh Avenue, Suite 1400
                                   New York, New York 10123
                                   Tel.: (212) 679-0400

TO:   **HICHAM AZKOUR**
      93 Pitt Street, Apt 3B
      New York, NY 10002

# EXHIBIT F

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
HICHAM AZKOUR

                              Plaintiffs,                    Index No.  11-civ-5780

        -against-                                            NOTICE OF DEPOSITION

JEAN-YVES HAOUZI, FRANCK MAUCORT,
JESSICA COMPERIATI, LITTLE REST
TWELVE, INC., SHELDON SKIP TAYLOR, ESQ.
LAW OFFICES OF SHELDON SKIP TAYLOR

                              Defendants.
-----------------------------------------------------------------X

S I R S:

        **PLEASE TAKE NOTICE** that pursuant to Rule 30 of the Federal Rules of Civil

Procedure, the deposition upon oral examination of plaintiff Hicham Azkour will be taken at

the courthouse located at 500 Pearl Street, New York, New York 10007-1312, Room 120 on

November 26, 2013, beginning at 10:30 a.m. in the forenoon of that day and continuing

thereafter from day to day until completion.


Dated: New York New York
        October  8 , 2013

                                          Yours, etc.


                                          HOFFMANN & ASSOCIATES

                                   By:    _____
                                          Andrew S. Hoffmann, Esq.
                                          *Attorneys for Defendants Jean-Yves Haouzi,*
                                          *Franck Maucort, Jessica Comperiati, Little Rest*
                                          *Twelve, Inc., Sheldon Skip Taylor, Esq. and Law*
                                          *Offices of Sheldon Skip Tayler*
                                          450 Seventh Avenue, Suite 1400
                                          New York, New York 10123
                                          Tel (212) 679-0400
                                          Fax (212) 679-1080

# EXHIBIT G



Hicham Azkour <hicham.azkour@gmail.com>

---

## Azkour v. Haouzi, et. al Index No. 11-cv-5780 (RJS)(KNF)
1 message

---

**Andrew Hoffmann** <ashlegal@aol.com>                              Thu, Oct 17, 2013 at 6:00 PM
To: hicham.azkour@gmail.com

Dear Mr. Azkour,

Pursuant to Magistrate Judge Fox's Order of today (attached for your convenience), please provide me with your
input on the relevant portions of the questionnaire  so that I may submit it to the Court.

Thank you.

**Andrew S. Hoffmann, Esq.**
Hoffmann & Associates
450 Seventh Avenue, Suite 1400
New York, New York 10123
212 679-0400 (phone)
212 679-1080 (fax)
917 232-1609 (cell)
ashlegal@aol.com

---



📄 **Document 130.pdf**
   299K