# UNITED STATES DISTRICT COURT

### FOR THE

## SOUTHERN DISTRICT OF NEW YORK

---

**HICHAM AZKOUR,**

*Plaintiff,*

*v.*

**JEAN-YVES HAOUZI, *ET AL.*,**

*Defendants.*

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: MAR 2 8 2014

**Civil Action No. 11-CV-5780 (RJS)(KNF)**

---

## PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO HIS MOTION TO COMPEL

---

HICHAM AZKOUR, pro se
93 Pitt Street, Apt. 3B
New York, New York 10002

Email: hicham.azkour@gmail.com

On March 13, 2014, HICHAM AZKOUR, ("Plaintiff"), pro se, submitted a memorandum of law in support of his motions to (1) compel the defendants ("Defendants") to produce documents and (2) to determine the sufficiency of answers and/or objections in Defendants' answer to Plaintiff's requests for admission. *See* Docket Entries Nos. 155 and 156.

Plaintiff filed the motions respectively pursuant to Rule 37(a) and Rule 36(a)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), as authorized by this Court's Order at Docket Entry No. 151, to seek an Order compelling an answer, designation, production, or inspection, *see* Fed. R. Civ. P. 37(a)(3)(B), and compelling a non-evasive, full disclosure, answer, or response to Plaintiff's requests by Defendants as mandated by Fed. R. Civ. P. 26.

On March 24, 2014, Defendants submitted a declaration (*"Hoffmann Dec."*) in opposition to Plaintiff's motions. In this declaration, Defendants did not articulate any acceptable reason as to why they should be exonerated from producing all the documents requested by Plaintiff and answering truthfully, in a no evasive manner, his requests for admission. Instead, Defendant clearly communicated to his Court that (1) they cannot and will not produce any additional document and (2) they will not answer Plaintiff's requests for admission. *See Hoffmann Dec.* at 3-6. Moreover, Defendants contend that Plaintiff filed the aforementioned motion in bad faith. *Id.* at 3. Furthermore, counsel to Defendants made some insinuations as to Plaintiff's alleged "improper behavior" and acts of harassing "innocent people."[1] *Id.* at 5.

Plaintiff reiterates and reasserts the arguments articulated in his memorandum, Docket Entry No. 156, that Defendants, as employers, have not heretofore substantially justified their

---

[1] These insinuations are extremely timid as they come from a person who calls Plaintiff in an open court a "Koran-quoting lunatic" and an "anti-Semite."

failure to provide Plaintiff with discovery material related to his employment. Pursuant to 42 U.S.C. § 2000e–8; 29 C.F.R. Part 1602 (relating to Title VII recordkeeping requirements); *see Byrnie v. Town of Cromwell*, 243 F.3d 93, 107-12 (2d Cir.2001), Defendants are under the obligation to preserve employment records, especially when they became aware that Plaintiff twice complained to the EEOC regarding Defendants' violations of Title VII of the Civil Rights Act of 1964 and the American with Disabilities Act of 2008 ("ADA"). As stated in said memorandum of law, on April 23, 2010, Defendants received a Notice of Right to Sue from the EEOC informing them that Plaintiff had filed EEOC Charge No. 520-2010-01158. *See* Docket Entry No. 120. However, before receiving such notice, on or about April 23, 2010, Defendants were completely aware, as shown by the suspension letter dated February 9, 2010, and which was provided to Plaintiff by Defendants' counsel, that they might be subjected to an investigation pursuant to 42 U.S.C. § 2000e–9 and, therefore, all hearings and investigations conducted by the EEOC or its duly authorized agents or agencies, the provisions of 29 U.S.C. § 211 shall also apply. *See also* 29 C.F.R. §§ 1602.12 – 1601-13. Furthermore, defendant Little Rest Twelve, Inc. had knowledge that Plaintiff, on or about May 19, 2010, filed a complaint in this District alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq. See Azkour v. Little Rest Twelve, Inc.*, 10-cv-4132(RJS)(KNF) ("FLSA Action").

Moreover, "The obligation to preserve evidence of this nature occurs when a party has notice or knowledge or should have known that the evidence may be relevant in future litigation." *Allstate Ins. Co. ex rel. Lothridge v. Gonyo*, 07-CV-1011, 2009 WL 962698, at *8 (N.D.N.Y. Apr. 8, 2009) (Treece, M.J.) (citing *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001)); *accord, Kronisch v. United States*, 150 F.3d 112, 126-127 (2d Cir.1998). Failure to preserve and produce records may expose the liable and disobeying party to sanctions if the party moving for sanctions demonstrate that: (a) the opposing party had an obligation to make timely

3

disclosure of the requested materials; (b) the opposing party acted with a "culpable state of mind;" and (c) the missing evidence is "relevant" to the moving party's claim or defense. *In re Sept. 11th Liab. Ins. Coverage Cases*, 243 F.R.D. 114, 125 (S.D.N.Y. 2007) (quoting *Residential Funding Corp. v. DeGeorge Financial Corp.,* 306 F.3d 99, 107 (2d Cir.2002). If sanctions are sought based upon a party's destruction, or "spoliation," of evidence, an identical legal framework applies, except that the first required showing is that the opposing party had an obligation to "preserve [the missing evidence] at the time it was destroyed." *Residential Funding*, 306 F.3d at 107.

As demonstrated in his memorandum of law at Docket Entry No. 156, Plaintiff already proved the three elements governing the Rule 37 sanctions. Not only did Plaintiff prove that he met the three prongs of such a standard, but the Court has now also become fully aware of Defendants' counsels' acts of deliberate and malicious deception. Indeed, the transcript of a conference held on October 31, 2013, reflects that counsel to Defendants was insisting on going through the entire discovery process and opposed any motion on the pleadings. Mr. Hoffmann, in his usual acts of valor, was even talking about a jury trial[2]. *See* Docket Entries Nos. 157 and 158. Therefore, Plaintiff respectfully requests that this Court consider one of the most drastic sanctions listed in Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii), that is default judgment as to Defendants' liability. Failure to disclose or comply with a discovery order should be deemed as a default.

Rule 37 of the Federal Rules of Civil Procedure permits a court to impose a "wide range of sanctions for . . . discovery abuses." *Mali v. Federal Ins. Co.*, 720 F.3d 387, 392 (2d Cir. 2013). These include, but are not limited to: "orders deeming certain facts established; permitting an

---

[2] Talking about jury trials without being able to produce a simple document such as an employee's employment application corroborates the fact that we are in an *all-hat-but-no-cattle* situation.

4

adverse inference instruction; striking pleadings; prohibiting the 'disobedient' party from making specific claims or introducing certain matters into evidence; dismissing a claim or the entire action or granting default judgment against the disobedient party; or entering an order of contempt." *Linde v. Arab Bank, PLC*, 269 F.R.D. 186, 195 (E.D.N.Y. 2010) (citing *Residential Funding*, 306 F.3d at 101).

If the Court determines that sanctions are not necessary, it should then reconsider Plaintiff's request for a judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). The Court should now take notice that the Hon. Richard J. Sullivan, U.S.D. J., determined in an Order dated March 26, 2014, FLSA Action Docket Entry No. 187[3], that Defendants have unlawfully been withholding Plaintiff's back pay and, thus, have been intentionally discriminating against him as alleged in his Third Amended Complaint ("TAC"). This Court is reminded that Defendants entered into an agreement with the U.S. Department of Labor after a partial investigation, *see* investigation report at Docket Entry No. 16, and paid all employees, who are of a different protected class from Plaintiff's. This Court is also reminded that the Hon. Sullivan, in an Order dated August 1, 2013, adopted this Court's Report & Recommendation at Docket Entry No. 105; *see also Azkour v. Haouzi*, No. 11 Civ. 5780 (RJS) (KNF), 2013 U.S. Dist. LEXIS 91415 (S.D.N.Y., June 28, 2013). In footnote No. 3 of his Order, Docket Entry No. 112, the Hon. Sullivan states that "[in any event, the Court also notes that allegations in the TAC support a plausible inference that Defendants interfered with Plaintiff's efforts to *enforce* his prior employment contract by unlawfully denying his request for full back pay on the basis of his race. (*See* TAC ¶¶ 48-53.)"

---

[3] This Order is attached hereto.

*See Azkour v. Haouzi*, No. 11 Civ. 5780 (RJS) (KNF), 2013 U.S. Dist. LEXIS 109008 at * 8, (S.D.N.Y., Aug. 1, 2013).[4]

Based upon the Hon. Sullivan's conclusions in the aforementioned Orders, Plaintiff's allegations in the TAC, and Plaintiff's pleadings at Docket Entries Nos. 92, 97, and 98, this Court may *sua sponte* determine that Defendants intentionally discriminated and retaliated against Plaintiff in violation of 42 U.S. § 1981[5].

**WHEREFORE**, Plaintiff respectfully requests that this Court:

1. Sanction Defendants by a default judgment pursuant to Fed. R. Civ. P. 37(b)(2)(A)(vi); or

2. Issue a judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c), as requested by Plaintiff in his pleadings at Docket Entries Nos. 92, 97, and 98.

---

[4] A Copy of this opinion is attached hereto.

[5] Defendants also discriminated against Plaintiff on account of his perceived disability in violation of the ADA, as amended in 2008. Now, as this Court may read in the Hon. Sullivan's Order at FLSA Action Docket Entry No. 187, Plaintiff is denied his back pay and front pay because, allegedly, as a mentally ill individual, he is not able to work. This assumption is biased, is a blind act of stereotyping, and reflects an act of sheer bigotry. It also defeats the purpose of legislation such the ADA. When such assumption becomes a determination by a federal judge, an idea to which he seems to adhere, it raises some serious questions as to the motivations of such bias.

Respectfully submitted on this 28th day of March, 2014


By:    _____

        HICHAM AZKOUR, pro se

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────┐
│ USDS SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #: _____           │
│ DATE FILED: 3-26-14              │
└─────────────────────────────────┘
```

HICHAM AZKOUR,

                              Plaintiff,

        -v-                                    No. 10 Civ. 4132 (RJS) (KNF)
                                                          ORDER
LITTLE REST TWELVE,

                              Defendant.

RICHARD J. SULLIVAN, District Judge:

        On March 27, 2012, the Court fully adopted the Report and Recommendation (Doc. No. 91 (the "Report")) of the Honorable Kevin Nathaniel Fox, Magistrate Judge, recommending that the Court enter partial summary judgment in favor of Plaintiff against Little Rest Twelve, Inc. ("Defendant") on Plaintiff's Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") wage and hour claims, NYLL spread-of-hours claim, FLSA and NYLL retaliation claims, and FLSA and NYLL liquidated damages claims. (Doc. No. 98.) Now before the Court are (1) the parties' cross-motions for summary judgment as to damages on Plaintiff's claims (Doc. Nos. 162, 164); (2) Plaintiff's request to voluntarily dismiss his unjust enrichment claim (Doc. No. 162; Doc. No. 137 at 50–51); and (3) Plaintiff's motion for a preliminary injunction requiring Defendant to provide Plaintiff with a post-employment reference letter (Doc. No. 181). For the reasons set forth below, the Court grants in part and denies in part the parties' summary judgment motions, grants Plaintiff's request to voluntarily dismiss his unjust enrichment claim, and denies Plaintiff's motion for a preliminary injunction.

I. SUMMARY JUDGMENT MOTIONS

A. Legal Standard

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is "no genuine dispute as to any material fact" where (1) the parties agree on all facts (that is, there are no disputed facts); (2) the parties disagree on some or all facts, but a reasonable fact-finder could never accept the nonmoving party's version of the facts (that is, there are no genuinely disputed facts), *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); or (3) the parties disagree on some or all facts, but even on the nonmoving party's version of the facts, the moving party would win as a matter of law (that is, none of the factual disputes are material), *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A moving party is "entitled to judgment as a matter of law" on an issue if (1) it bears the burden of proof on the issue and the undisputed facts meet that burden; or (2) the nonmoving party bears the burden of proof on the issue and the moving party "'show[s]' – that is, point[s] out . . . – that there is an absence of evidence to support the nonmoving party's [position]," *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

B. Discussion

Both parties seek summary judgment on Plaintiff's entitlement to damages on his (1) wage and hour claims; (2) retained tips claim; and (3) retaliation claims. (Doc. No. 162 ("Pl. Mem.") at 12–15; Doc. No. 168 ("Def. Mem.") at 1–3.) The Court addresses each of these issues in turn.

1. Wage and Hour Claims

Both parties agree that Plaintiff is entitled to $4,353.75 in actual damages on his wage and hour claims. (Pl. Mem. at 12; Def. Mem. at 1.) They disagree, however, on the amount of liquidated damages available on these claims. Plaintiff seeks 100% federal liquidated damages

2

and 25% state liquidated damages (Pl. Mem. at 12), while Defendant argues that Plaintiff should be allowed only 100% federal liquidated damages because Plaintiff's lawyer – when Plaintiff was represented – sought only federal liquidated damages in previous filings to the Court (Doc. No. 174 ("Def. Opp'n") at 2–3).

The Court has previously held that Plaintiff is entitled to liquidated damages under both state and federal law. (Report at 16.) Moreover, even though Plaintiff's past counsel sought only federal liquidated damages, Plaintiff is now seeking the federal and state liquidated damages to which he is entitled, and Defendant does not show how its ability to respond to Plaintiff's arguments is prejudiced by this change in position. Plaintiff may therefore recover an additional 125% of his actual damages (that is, $5,442.19) in liquidated damages. *See Zheng v. Liberty Apparel Co., Inc.*, No. 99 Civ. 9033 (RJS), 2009 WL 1383488, at *1 (S.D.N.Y. May 18, 2009). Accordingly, the Court awards Plaintiff $9,795.94 in damages on his wage and hour claims.

### 2. Retained Tips

Both parties agree that Plaintiff is entitled to $5,421.47 in actual damages on his retained tips claim. (Pl. Mem. at 12; Def. Mem. at 2.) Again, however, they disagree on the amount of liquidated damages available on this claim. Plaintiff seeks 100% federal liquidated damages and 25% state liquidated damages, while Defendant argues that Plaintiff should be allowed only 25% state liquidated damages. (Def. Opp'n at 3.)

Plaintiff's retained tips claim was brought under state law alone. (Doc. No. 63 (the "First Amended Complaint" or "FAC") ¶¶ 51–56; Doc. No. 103 at 4.) Plaintiff may therefore recover only an additional 25% of his actual damages (that is, $1,355.37) in liquidated damages. Accordingly, the Court awards Plaintiff $6,776.84 in damages on his retained tips claim.[1]

---

[1] Neither party provided any facts to support any damages for Plaintiff's New York spread-of-hours claim. In fact, it does not appear that Plaintiff has addressed that claim in over two years.

3

### 3. Retaliation

Plaintiff seeks back pay (payment of wages from the time he left Defendant's employ to now) and front pay (payment of wages going forward) as compensatory damages for Defendant's retaliation, as well as punitive damages. (Pl. Mem. at 12, 13.)  Defendant, however, challenges Plaintiff's entitlement to any of these remedies.  (Def. Mem. at 2–9.)  As explained below, the Court denies both parties' motions for summary judgment on back pay and punitive damages and determines that Plaintiff is not entitled to front pay.

#### a.  Back Pay

"The purpose of back pay is to completely redress the economic injury the plaintiff has suffered as a result of [retaliation]." *Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 145 (2d Cir. 1993) (internal quotation marks omitted). As a result, back pay is not available to remedy injuries that were not a result of retaliation. Defendant argues that Plaintiff's injury – his unemployment since he stopped working for Defendant – was not caused by Defendant's retaliation because Plaintiff (1) voluntarily resigned; (2) is sufficiently mentally ill such that Defendant is not responsible for his continued unemployment; and (3) did not mitigate his damages. The Court addresses each argument in turn.

---

Accordingly, the Court finds that Plaintiff has abandoned his spread-of-hours claim. *See Anti-Monopoly, Inc. v. Hasbro, Inc.*, 958 F. Supp. 895, 907 n.11 (S.D.N.Y. 1997), *aff'd*, 130 F.3d 1101 (2d Cir. 1997) ("[U]nder New York state law, the failure to provide argument on a point at issue constitutes abandonment of the issue.").

4

### i. Voluntary Resignation and Constructive Termination

It is undisputed that Plaintiff resigned from his job with Defendant. (*See* Report at 7, 14;
*see also* Doc. No. 81 Ex. B (Plaintiff's letter of resignation).)  Where an employee has resigned,
"[t]he prevailing view of the appellate courts that have addressed the issue is that in order for an
employee to recover back pay for lost wages beyond the date of his employment, the evidence
must establish that the employer constructively discharged the employee." *Tse v. UBS Fin. Servs.,
Inc.*, 568 F. Supp. 2d 274, 300 (S.D.N.Y. 2008) (citing cases) (internal quotation marks omitted);
*see also Brady v. Wal-Mart Stores, Inc.*, No. 03 Civ. 3843 (JO), 2005 WL 1521407, at *6
(E.D.N.Y. June 21, 2005) ("A plaintiff who voluntarily resigns and is not subjected to constructive
discharge generally cannot recover back pay.").  "An employee is constructively discharged when
his employer, rather than discharging him directly, intentionally creates a work atmosphere so
intolerable that he is forced to quit involuntarily. . . . [W]orking conditions are intolerable when,
viewed as a whole, they are so difficult or unpleasant that a reasonable person in the employee's
shoes would have felt compelled to resign." *Terry v. Ashcroft*, 336 F.3d 128, 151–52 (2d Cir.
2003) (citations and internal quotation marks omitted).   The Plaintiff bears the burden of
establishing the constructive discharge, *Gruberg v. Bd. of Educ. of Sewanhaka Cent. High Sch.
Dist.*, 3 F. Supp. 2d 280, 284 (E.D.N.Y. 1998), and the "burden is not an easy one to carry,"
*Nicholls v. Philips Semiconductor Mfg.*, 760 F. Supp. 2d 407, 416 (S.D.N.Y. 2011) (internal
quotation marks omitted).

Here, Plaintiff has met his burden of establishing a constructive discharge.  Before Plaintiff
resigned, Defendant (1) reduced his hours from fifty hours a week to five hours a week (Doc. No.
169 ("Pl. 56.1") ¶ 2; Decl. of Hicham Azkour, dated Oct. 3, 2012, Doc. No. 135 ("Azkour Oct.
2012 Decl."), ¶ 21); (2) threatened to call the police and charge Plaintiff with trespassing if Plaintiff
came to work (Pl. 56.1 ¶ 2; Decl. of Hicham Azkour, dated Aug. 24, 2011, Doc. No. 75 Ex. A

("Azkour Aug. 2011 Decl."), ¶ 37); and (3) suspended him from work (Pl. 56.1 ¶ 2; *id.* Ex. A (letter informing Plaintiff he had been suspended, with pay, for two weeks)). Under these combined circumstances, none of which Defendant disputes, any reasonable person would have felt compelled to quit. Indeed, the cutting of hours by 90% – and thus his weekly wages by 90% – alone would likely be sufficient. Accordingly, the Court finds no merit in Defendant's argument that Plaintiff is not entitled to back pay because he voluntarily resigned.

### ii. Plaintiff's Mental Illness

A plaintiff is not entitled to "back pay for a period when [he] would have been unable, due to an intervening disability, to continue employment." *Thornley v. Penton Pub., Inc.*, 104 F.3d 26, 31 (2d Cir. 1997) (citing *Salpaugh*, 4 F.2d at 145). There is no requirement that this disability meet the legal standard for disability under the Americans with Disabilities Act or the Social Security Act. Instead, the disability need only be serious enough that the disability is sufficiently a cause of his unemployment such that the unemployment is no longer truly "a result of" the retaliation. *Id.*; *see also Morley v. Ciba-Geigy Corp.*, 122 F.3d 1056, 1997 WL 570789, at *2 (2d Cir. 1997) (unpublished table decision) ("Because the plaintiff was not able to work during the time period in question, and is today still unable to work due to disability, she has not suffered any harm as a result of the defendant's alleged discrimination for which she can be compensated.").

Here, it is undisputed that Plaintiff suffers from severe mental illness. (*See* Doc. No. 167 ("Def. 56.1") ¶ 7; Pl. 56.1 ¶ 7[2]; Azkour Oct. 2012 Decl. ¶ 26 (declaration by Plaintiff discussing

---

[2] In his Local Rule 56.1 statement, Plaintiff acknowledges his mental illness but blames Defendant for causing the illness and argues that Defendant should therefore be liable for any harm caused by the mental illness. In addition to the dubious science behind this assertion, such consequential damages stretch beyond the relief FLSA is meant to provide. *Cf. United States v. Burke*, 504 U.S. 229, 239 (1992) (noting that although Title VII provides for "restoring victims, through backpay awards and injunctive relief, to the wage and employment positions they would have occupied absent the unlawful discrimination, . . . [n]othing in its remedial scheme purports to recompense a

his own "severe mental illnesses"); *id.* Ex. A-10 (letter submitted by Plaintiff, from his psychotherapist, discussing his treatment for "Major Depression Disorder and Post Traumatic Stress Disorder").) In addition, although many people are able to balance mental illness and steady employment, Plaintiff has stated that his mental health struggles have impaired his ability to find work. (Decl. of Hicham Azkour, dated June 1, 2012, Doc. No. 104 ("Azkour June 2012 Decl."), ¶ 28 ("According to my psychiatrist and psychotherapist, this serious mental impairment will last long before I may be able to recover completely, which, constitutes another impediment in finding or maintaining any suitable employment. It is unclear when I will be able to find and maintain suitable employment in the future . . . .").) As such, Defendant is not responsible for Plaintiff's unemployment for any period after Plaintiff's mental illness began to greatly limit his employment prospects.

Neither party indicates when Plaintiff first became sufficiently ill that he could not work. In 2009, Plaintiff was healthy enough that he was hired by Defendant. By September 7, 2011, however, Plaintiff's illness had become serious enough that he moved into a homeless shelter for mentally ill adults. (*See* Azkour Oct. 2012 Decl. Ex. A-8 (letter submitted by Plaintiff stating that he has been a resident at the mental health shelter since September 7, 2011); Azkour June 2012 Decl. Ex. B (additional letter submitted by Plaintiff listing September 7, 2011 as his move-in date to the mental health shelter); *see also* Azkour Oct. 2012 Decl. Ex. A-4 ¶ 12 (declaration of one of

---

. . . plaintiff for any of the other traditional harms associated with personal injury, such as . . . consequential damages"), *superseded by statute on other grounds*, Small Business Job Protection Act of 1996, Pub. L. No. 104-188, § 1605, 110 Stat. 1838; *EEOC v. Joint Apprenticeship Comm. of Joint Indus. Bd. of Elec. Indus.*, 186 F.3d 110, 124 (2d Cir. 1999) ("[A] back pay remedy must be sufficiently tailored to expunge only the actual, and not merely speculative, consequences of the [retaliation]."); *see also Barsoumian v. Univ. at Buffalo*, No. 06 Civ. 831 (WMS), 2013 WL 3821540, at *5 (W.D.N.Y. July 23, 2013) (holding that consequential damages are not available as part of back pay).

Plaintiff's friends, submitted by Plaintiff, noting that Plaintiff "has been mentally deteriorating since" the friend first met him in approximately October 2011).) Neither party addresses Plaintiff's health between those dates or the course of his decline. Accordingly, the Court determines that the date when Plaintiff became too ill to work – and thus the date cutting off back pay – is disputed and must be resolved at trial. Nevertheless, as it is undisputed that by September 7, 2011 Plaintiff was already severely mentally ill, the Court finds that no reasonable fact-finder could find Defendant responsible for Plaintiff's unemployment after that date and Defendant is therefore entitled to judgment on the issue of back pay after September 7, 2011.

### iii. Mitigation

A plaintiff seeking back pay has a duty to mitigate damages by actively seeking new employment. *See Dailey v. Societe Generale*, 108 F.3d 451, 455 (2d Cir. 1997) (discussing the duty to mitigate under Title VII). Nevertheless, "[w]hile it is the plaintiff's duty to mitigate, it is the defendant who has the evidentiary burden of demonstrating at trial that a plaintiff has failed to satisfy this duty." *Id.* at 456. A defendant meets this burden either "by establishing (1) that suitable work existed, and (2) that the employee did not make reasonable efforts to obtain it," *Broadnax v. City of New Haven*, 415 F.3d 265, 268 (2d Cir. 2005), such as by showing that the employee was offered a job but refused to take it; or by establishing "that the employee made no reasonable efforts to seek [suitable] employment," *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 54 (2d Cir. 1998), such as by showing that the employee never looked for work.

Here, Defendant has submitted affidavits from two people who work in the restaurant industry stating that there are many jobs available to those willing to look, and that Plaintiff therefore must not have reasonably sought work. (*See* Doc. Nos. 165, 166.) Plaintiff, on the other hand, states that he has diligently searched for work and has interviewed with prospective

8

employers, but that none have been willing to hire him. (*See* Azkour Oct. 2012 Decl. ¶¶ 22–24;
26; *id.* Ex. A-4 (declaration by one of Plaintiff's friends, stating that employers have called the
friend seeking references for Plaintiff).) Accordingly, the Court determines that a factual dispute
exists as to whether Plaintiff has mitigated his damages and denies both parties summary judgment
on this issue.

### b. Front Pay

"Front pay is awarded in the sound discretion of the district court." *Reed v. A.W. Lawrence
& Co., Inc.*, 95 F.3d 1170, 1182 (2d Cir. 1996). Because the undisputed facts show that Defendant
is not responsible for Plaintiff's unemployment after September 7, 2011, Defendant is not liable
for paying Plaintiff going forward. Moreover, it is unclear if the restaurant where Plaintiff worked
still exists (*see* Doc. No. 184 (brief submitted by Plaintiff, dated December 26, 2013, stating that
the restaurant where Plaintiff worked closed "almost a year ago"), and if it does not, Plaintiff would
certainly not be entitled to continue receiving wages. *See Sandlin v. Corporate Interiors Inc.*, 972
F.2d 1212, 1215 (10th Cir. 1992). Accordingly, the Court grants Defendant summary judgment
on the issue of front pay.

### c. Punitive Damages

The Second Circuit has not yet addressed whether punitive damages are available for FLSA
retaliation claims, *Sines v. Serv. Corp. Int'l*, No. 03 Civ. 5465 (SC), 2006 WL 3247663, at *2
(S.D.N.Y. Nov. 8, 2006), and other circuits are split on the issue, *compare Travis v. Gary Cmty.
Mental Health Ctr., Inc.*, 921 F.2d 108, 112 (7th Cir. 1990) (holding that punitive damages are
available for FLSA retaliation claims), *with Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928, 933

(11th Cir. 2000) (holding that punitive damages are not available for FLSA retaliation claims).[3] Here, the Court is persuaded by the reasoning in Judge Pollack's decision in *Marrow v. Allstate Security & Investigative Services, Inc.*, 167 F. Supp. 2d 838 (E.D. Pa. 2001), and finds that punitive damages are available. The appropriate amount of punitive damages, however, can only be determined by a fact-finder. Accordingly, the Court denies both parties' motions for summary judgment on punitive damages.

## II. DISMISSAL OF PLAINTIFF'S UNJUST ENRICHMENT CLAIM

A plaintiff's request to voluntarily dismiss a claim without prejudice should be granted absent a showing that dismissal would prejudice other parties. *See D'Alto v. Dahon Calif., Inc.*, 100 F.3d 281, 283 (2d Cir. 1996). Here, Defendant has not opposed dismissal of Plaintiff's unjust enrichment claim, which neither party has addressed or attempted to litigate since the filing of the FAC. Accordingly, the Court dismisses the unjust enrichment claim.

## III. PRELIMINARY INJUNCTION

Plaintiff seeks a preliminary injunction requiring Defendant to provide Plaintiff with a post-employment reference letter. As set forth below, the Court determines that issuing such an injunction would not be equitable.

### A. Legal Standard

"Generally, a party seeking a preliminary injunction must demonstrate that it will suffer irreparable harm absent injunctive relief and either (1) that it is likely to succeed on the merits of the action, or (2) that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, provided that the balance of hardships tips decidedly in favor of the

---

[3] Under NYLL, liquidated damages serve as punitive damages, *Gurung v. Malhotra*, 851 F. Supp. 2d 583, 593 (S.D.N.Y. 2012), and as such, punitive damages beyond liquidated damages are not available under NYLL.

moving party." *Mullins v. City of New York*, 626 F.3d 47, 52–53 (2d Cir. 2010); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest."). In addition, because "a preliminary injunction is an extraordinary remedy" that a court must issue before hearing the actual merits of the case, a court should grant a preliminary injunction only when the plaintiff makes "a clear showing" that a preliminary injunction is appropriate. *Winter*, 555 U.S. at 22, 24.

### B. Discussion

Notwithstanding any of the other factors, Plaintiff cannot establish irreparable injury. On December 20, 2013, after Plaintiff had submitted his motion for a preliminary injunction, Defendant wrote to the Court and Plaintiff and offered to provide Plaintiff with the letter he seeks on the condition that the offer was without prejudice to Defendant's claim that it had no legal obligation to provide a letter. (Doc. No. 183.) Defendant did not ask Plaintiff to relinquish any of his legal rights or claims. (*Id.*) Nevertheless, Plaintiff angrily refused this offer. (Doc. Nos. 184, 186.)

That refusal undercuts Plaintiff's claim that he is likely to suffer irreparable injury absent receipt of a reference letter by clearly revealing that Plaintiff is more interested in antagonizing Defendant and continuing this litigation than in actually receiving a letter. Similar to the doctrine that a plaintiff's delay in bringing suit or seeking an injunction warrants denial of a preliminary injunction, *see Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995), Plaintiff's conduct here "undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury," *id.* (internal quotation marks omitted). Accordingly, Plaintiff's motion for a preliminary injunction is denied.

11

## IV. CONCLUSION

Accordingly, IT IS HEREBY ORDERED THAT both Plaintiff's and Defendant's motions for summary judgment are granted in part and denied in part. Plaintiff is granted $9,795.94 on his wage and hour claims and $6,776.84 on his retained tips claim, for a total of $16,572.78. Defendant is granted summary judgment on Plaintiff's back pay claims for the period after September 7, 2011 and on Plaintiff's front pay claims. IT IS FURTHER ORDERED THAT Plaintiff's unjust enrichment claim is dismissed. IT IS FURTHER ORDERED THAT Plaintiff's motion for a preliminary injunction is DENIED. IT IS FURTHER ORDERED THAT the parties shall appear on April 17, 2014 at 2:00 p.m. for a conference to address next steps in this matter relating to Plaintiff's claims for back pay between February 14, 2010 and September 7, 2011 and punitive damages. The Clerk of the Court is respectfully directed to terminate the motions pending at docket numbers 162 and 164.

SO ORDERED.

Dated:      March 26, 2014
            New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

12

<u>A copy of this Order has been e-mailed to:</u>

Hicham Azkour
hicham.azkour@gmail.com

3 of 18 DOCUMENTS

**HICHAM AZKOUR, Plaintiff, -v- JEAN-YVES HAOUZI, et al, Defendants.**

**No. 11 Civ. 5780 (RJS) (KNF)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

**2013 U.S. Dist. LEXIS 109008**

**August 1, 2013, Decided**
**August 1, 2013, Filed**

**SUBSEQUENT HISTORY:** Request denied by Azkour v. Haouzi, 2013 U.S. Dist. LEXIS 147484 (S.D.N.Y., Oct. 7, 2013)

**PRIOR HISTORY:** Azkour v. Haouzi, 2013 U.S. Dist. LEXIS 91415 (S.D.N.Y., June 28, 2013)

**CORE TERMS:** notice, retaliation, voluntary dismissal, recommendation, protected activity, permission, civil rights, employment relationship, partial, Employment Act, causes of action, national origin, intentional infliction of emotional distress, clear error, written request, employment contract, de novo, summary judgment, weight of authority, interpreting, disability, conspiracy, defamation, conclusory, terminated, interfered, unlawfully, recommend, terminate, tangible

**COUNSEL:** [*1] Hicham Azkour, Plaintiff, Pro se.

For Defendants: Andrew Sal Hoffmann, Wiseman & Hoffmann, New York, NY.

**JUDGES:** RICHARD J. SULLIVAN, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** RICHARD J. SULLIVAN

**OPINION**

**ORDER ADOPTING REPORT AND RECOMMENDATION**

RICHARD J. SULLIVAN, District Judge:

Hicham Azkour ("Plaintiff"), proceeding *pro se*, brings this action against Jean-Yves Haouzi, Jessica Comperiati, Frank Maucourt, and Little Rest Twelve, Inc. (the "LRT Defendants"); and Sheldon Skip Taylor and the Law Offices of Sheldon Skip Taylor (the "Taylor Defendants" and, with the LRT Defendants, "Defendants"), alleging, *inter alia*, violations of 42 U.S.C. § 1981 and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111, *et seq*. Now before the Court is the Report and Recommendation (the "Report") of the Honorable Kevin Nathaniel Fox, Magistrate Judge, recommending that the Court grant in part and deny in part Defendants' motion to dismiss Plaintiff's ADA and § 1981 claims. For the reasons set forth below, the Court adopts the Report but gives effect to the notice of voluntary partial dismissal filed by Plaintiff on November 5, 2012.

2013 U.S. Dist. LEXIS 109008, *1

## I. BACKGROUND

After initiating this action on August 8, 2011 (Doc. No. 2), Plaintiff filed his  [*2] Third Amended Complaint ("TAC") on February 2, 2012 (Doc. No. 40).[1] The TAC alleges fourteen causes of action against Defendants for discrimination on the basis of race, national origin, disability, and age; retaliation; conspiring to violate Plaintiff's civil rights; negligent failure to prevent such a conspiracy; defamation; and intentional infliction of emotional distress. On November 5, 2012, Plaintiff filed a notice of voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1), dismissing all claims against the Taylor Defendants and purporting to dismiss some but not all claims against the LRT Defendants. (Doc. No. 92.) On December 3, 2012, Defendants moved to dismiss the TAC. (Doc. No. 95.) On December 7, 2012, Plaintiff filed a document styled as an "Opposition to Defendants' Motion to Dismiss & Plaintiff's Memorandum of Law in Support of His Motion for Judgment on the Pleadings as to Defendants' Liability & Monetary Damages."[2] (Doc. No. 98.) Defendants did not file a reply.

---

1 In the intervening time, the Court referred this action to Judge Fox. (Doc. No. 9.)

2 Plaintiff has not in fact filed a motion for judgment on the pleadings, which would in any event be improper  [*3] given that the pleadings are not yet closed in this matter, see Fed. R. Civ. P. 12(c), and that Plaintiff did not secure Judge Fox's permission to file such a motion, as Judge Fox had ordered (see Report at 4 n.2). Accordingly, the Court will consider Plaintiff's filing only as an opposition to Defendants' motion to dismiss.

---

Judge Fox issued the Report on June 28, 2013. (Doc. No. 105.) In the Report, Judge Fox recommends that the Court (1) grant Defendants' motion to dismiss Plaintiff's claims of discrimination under the ADA and retaliation under both the ADA and § 1981, and (2) deny Defendants' motion with respect to Plaintiff's claim for race and national origin discrimination under § 1981. In addition, Judge Fox made clear that he refused to give effect to Plaintiff's Rule 41(a) notice of voluntary dismissal because that filing violated his prior order barring the parties from filing any motions without first making a written request for permission to do so. Acknowledging that Defendants evidently relied upon Plaintiff's Rule 41(a) notice in drafting their motion, which addressed only those claims that Plaintiff did not purport to voluntarily dismiss, Judge Fox observed that Defendants'  [*4] motion was only a partial motion to dismiss.

On July 2, 2013, Defendants filed objections to Judge Fox's Report. (Doc. No. 106.) They argue that because Rule 41(a)(1) permits a plaintiff to "dismiss an action *without a court order*," Fed. R. Civ. P. 41(a)(1)(A) (emphasis added), Judge Fox should not have treated Plaintiff's voluntary dismissal pursuant to Rule 41(a)(1) as a *motion* for which he had to obtain permission prior to filing. In addition, Defendants contend that it was incorrect of Judge Fox to find that Plaintiff had adequately stated a § 1981 discrimination claim because, at the time the alleged discrimination occurred, Plaintiff had no active employment relationship with Defendants,

On July 19, 2013, Plaintiff filed his objections to the Report. (Doc. No. 111.) Although the bulk of Plaintiff's submission is actually dedicated to defending the Report against Defendants' objections, Plaintiff takes issue with the Report's recommendation that the Court dismiss his retaliation claims. Plaintiff argues, in conclusory fashion, that inasmuch as Judge Fox found that Defendants' refusal to provide Plaintiff with a letter of reference supported a claim of discrimination, he should have  [*5] found that it supported claims of retaliation as well.

## II. LEGAL STANDARD

A court may accept, reject, or modify, in whole or in part, the findings or recommendations made by a magistrate judge. Fed. R. Civ. P. 72(b); *Grassia v. Scully*, 892 F.2d 16, 19 (2d Cir. 1989). A court may accept those portions of a magistrate's report to which no specific, written objection is made, as long as the factual and legal bases supporting the findings are not clearly erroneous. *See Greene v. WCI Holdings Corp.*, 956 F. Supp. 509, 513 (S.D.N.Y. 1997) (citing Fed. R. Civ. P. 72(b) and *Thomas v. Arn*, 474 U.S. 140, 149, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985)). To the extent that

a party makes specific objections to a magistrate's findings, the court must undertake a de novo review of the plaintiff's objections. *See* 28 U.S.C. § 636(b)(1); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). *Pro se* filings are read liberally and interpreted "to raise the strongest arguments that they suggest." *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (internal quotation marks omitted). However, where objections are "conclusory or general," or where the plaintiff "simply reiterates his original arguments," the report should be reviewed only **[*6]** for clear error. *Walker v. Vaughan*, 216 F. Supp. 2d 290, 292 (S.D.N.Y. 2002) (quoting *Barratt v. Joie*, No. 96 Civ. 0324 (LTS) (THK), 2002 U.S. Dist. LEXIS 3453, 2002 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002) (citations omitted)); *accord Cartagena v. Connelly*, No. 06 Civ. 2047 (LTS) (GWG), 2008 U.S. Dist. LEXIS 41073, 2008 WL 2169659, at * 1 (S.D.N.Y. May 23, 2008).

## III. DISCUSSION

### A. § 1981 Discrimination

Defendants argue that Plaintiff cannot bring a claim for discrimination pursuant to 42 U.S.C. § 1981 because, at the time of the alleged discrimination, he no longer worked for Defendants. It is well-established, however, that anti-discrimination statutes protect former as well as current employees from "discrimination related to or arising out of an employment relationship." *Pantchenko v. C. B. Dolge Co.*, 581 F.2d 1052, 1055 (2d Cir. 1978) (interpreting Title VII of the Civil Rights Act of 1964); *see also Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997) (holding that because terminated employees "have tangible *future* employment objectives, they may state a claim for retaliation under the Age Discrimination in Employment Act, "even though they are no longer employed by the defendant company, if, for example, the company . . **[*7]** . wrongfully refuses to write a recommendation to prospective employers"). Nothing about 42 U.S.C. § 1981 suggests its protections apply any differently. The statute protects the equal right "to *make* and enforce contracts." 42 U.S.C. § 1981 (emphasis added). Defendants would have the Court read the term "make" out of the statute by holding that § 1981 applies only to *existing* employment relationships -- where the issue is not making a contract but rather enforcing it. The Court declines to do so. Plaintiff's allegations that Defendants interfered with his right to make a new employment contract by unlawfully denying him a reference letter and by giving prospective employers negative reports therefore are sufficient to state a claim for discrimination under § 1981.[3] *Cf. Wanamaker*, 108 F.3d 462, 466 (recognizing that a terminated employee "may have tangible *future* employment objectives" that are entitled to protection against discrimination). Accordingly, having reviewed Defendants' objection under the de novo standard, the Court finds that Judge Fox was correct to recommend that Defendants' motion to dismiss this claim be denied.

3 In any event, the Court also notes that allegations in **[*8]** the TAC support a plausible inference that Defendants interfered with Plaintiff's efforts to *enforce* his prior employment contract by unlawfully denying his request for full backpay on the basis of his race. (*See* TAC ¶¶ 48-53.)

### B. Retaliation

Plaintiff objects to the Report's recommendation that the Court dismiss his claims for retaliation under both § 1981 and the ADA. To establish a *prima facie* case of retaliation under either statute, a plaintiff must show (1) that he participated in protected activity; (2) that the defendant knew of the protected activity; (3) that defendant undertook an adverse employment action against the plaintiff; and (4) a causal connection between the protected activity and the adverse employment action. *See Weixel v. Bd. of Educ.*, 287 F.3d 138, 148 (2d Cir. 2002); *Callahan v. Consol. Edison Co. N.Y., Inc.*, 187 F. Supp. 2d 132, 138 (S.D.N.Y. 2002). In this case, Judge Fox found that, although Plaintiff clearly engaged in protected activity by filing a charge with the U.S. Equal Employment Opportunity Commission ("EEOC"), the TAC contained no allegation "that would support a finding that the defendants in the instant action of knew of the EEOC charge(s)." (Report **[*9]** at 14.)

Plaintiff's objections fail to identify any allegations or legal arguments that undermine Judge Fox's analysis. Plaintiff simply asserts that Defendants' refusal to give him a reference letter constitutes an act of retaliation. That is a legal conclusion and does not demonstrate, in any way, how Plaintiff's claims of retaliation were sufficiently pled. Accordingly, the Court reviews the Report for clear error and, finding none, adopts the Report's recommendation that Plaintiff's claims of retaliation under § 1981 and the ADA must be dismissed.

### C. Voluntary Dismissal

The parties devote considerable space in their respective objections to arguing over Judge Fox's handling of the notice of voluntary dismissal Plaintiff filed on November 5, 2012. In brief, Defendants argue that, given the posture of the case, the notice was effective and Judge Fox should not have disregarded it. Plaintiff counters that since Federal Rule of Civil Procedure 41(a)(1)(A) only permits a plaintiff to voluntarily dismiss an "action" without a court order, his notice, which dismissed certain claims but not the entire action, was ineffective. The Court reviews these objections under the *de novo* standard.

Rule 41(a)(1)(A) **[*10]** states that "a plaintiff may dismiss an action without a court order by filing . . . a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment." Fed. R. Civ. P. 41(a)(1)(A). In *Harvey Aluminum, Inc. v. American Cyanamid Co.*, the Second Circuit observed that Rule 41 "provides for the voluntary dismissal of an 'action' not a 'claim,'" and interpreted the word "action" to "denote[] the entire controversy, whereas 'claim' refers to what has traditionally been termed 'cause of action.'" 203 F.2d 105, 108 (2d Cir. 1953). In the decades since *Harvey Aluminum*, however, the weight of authority has shifted away from that decision. *See* Wright & Miller, Fed. Practice & Proc. Civ. § 2362 (3d ed.). Indeed, the Second Circuit has acknowledged that *Harvey Aluminum* "has been criticized in light of the weight of authority" and has suggested that courts may treat *Harvey Aluminum* as mere dicta. *Wakefield v. N. Telecom, Inc.*, 769 F.2d 109, 114 n.4 (2d Cir. 1985) (observing that "[i]t is not clear that the rule laid down in *Harvey Aluminum* was necessary to the result"); *see also Thorp v. Scarne*, 599 F.2d 1169, 1175 (2d Cir. 1979) (noting that *Harvey* **[*11]** *Aluminum* "has not been well received" and that "subsequent cases have almost uniformly either distinguished *Harvey Aluminum*, limiting the case to its particular factual setting, or forthrightly rejected it as poorly reasoned"). Thus, in keeping with the Second Circuit's exhortation that *Harvey Aluminum* be "limited to its 'extreme' facts," *Johnson Chem. Co., Inc. v. Home Care Prods., Inc.*, 823 F.2d 28, 30 (2d Cir. 1987), *abrogated on other grounds by Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 110 S. Ct. 2447, 110 L. Ed. 2d 359 (1990), the Court joins other courts in this Circuit in interpreting Rule 41(a)(1)(A) as permitting the withdrawal of individual claims. *See, e.g., Frank v. Trilegiant Corp.*, No. 10 Civ. 5211 (DRH), 2012 U.S. Dist. LEXIS 8246, 2012 WL 214100, at *3 (E.D.N.Y. Jan. 24, 2012); *Blaize-Sampeur v. McDowell*, No. 05 Civ. 4275 (JFB), 2007 U.S. Dist. LEXIS 47408, 2007 WL 1958909, at *2-3 (E.D.N.Y. June 29, 2007) (collecting cases); *Mut. Benefit Life Ins. Co. in Rehabilitation v. Carol Mgmt. Corp.*, No. 93 Civ. 7991 (LAP), 1994 U.S. Dist. LEXIS 14574, 1994 WL 570154, at *1 (S.D.N.Y. Oct. 13, 1994) (noting that *Harvey Aluminum* "is no longer persuasive authority" as to the meaning of Rule 41). Accordingly, the Court finds that Plaintiff's notice of partial voluntary dismissal is consistent **[*12]** with Rule 41(a)(1)(A).

Judge Fox nevertheless refused to give effect to Plaintiff's notice for a reason entirely unrelated to any purported distinction between actions and claims: he found that Plaintiff had failed to comply with his order "direct[ing] the parties not to file any motions, without first making a written request to the Court for permission to do so." (Report at 4 n.2.) The clear implication of Judge Fox's ruling is that a Rule 41(a)(1)(A) notice of voluntary dismissal is a type of motion. Courts have considerable discretion over how to manage the process of filing motions; the same is not true, however, with respect to Rule 41(a)(1)(A) notices of voluntary dismissal. The rule's plain language specifically authorizes a plaintiff to voluntarily dismiss the action "*without a court order*" where, as here, the defendant has not answered or moved for summary judgment. Fed. R. Civ. P. 41(a)(1)(A) (emphasis added); *see also Thorp*, 599 F.2d at 1171 n.1 ("The law is settled that the filing of a notice of dismissal under Rule 41(a)(1)(A) automatically terminates the lawsuit. No action by the court is necessary to effectuate the dismissal."). Judge Fox's ruling effectively circumvents **[*13]** Rule 41(a)(1)(A) by requiring Plaintiff to obtain a court order to voluntarily dismiss the action. Because a court cannot forbid what the law allows, Plaintiff's notice of voluntary dismissal was valid and was effective as soon as it was

filed.

## IV. CONCLUSION

For the foregoing reasons, the Court adopts the Report's recommendation that it grant in part and deny in part Defendants' motion to dismiss. Specifically, Defendants' motion is GRANTED as to Plaintiff's claims of discrimination under the ADA and retaliation under the ADA and § 1981, but DENIED as to Plaintiff's claim of discrimination under § 1981. The Court, however, holds that it was error to disregard Plaintiff's notice of voluntarily dismissal. Accordingly, the Court finds that the following claims are dismissed without prejudice; all claims against the Taylor Defendants, as well as the claims against the LRT Defendants for violations of Title VII of the Civil Rights Act and the Age Discrimination in Employment Act; conspiracy to violate Plaintiff's civil rights; defamation; intentional infliction of emotional distress; and violations of the New York State Human Rights Law. The Clerk of the Court is respectfully directed to  [*14] close the motion pending at Doc. No. 95 and to terminate the Taylor Defendants as parties to this action.

With respect to Plaintiff's surviving claim of discrimination under 42 U.S.C. § 1981, IT IS HEREBY ORDERED THAT the parties shall contact Judge Fox by August 21, 2013 for the purpose of setting a schedule for discovery.

SO ORDERED.

DATED: August 1, 2013

New York, New York

/s/ Richard J. Sullivan

RICHARD J. SULLIVAN

UNITED STATES DISTRICT JUDGE