The Hon. Kevin N. Fox, U.S.M.J.  
Thurgood Marshall  
United States Courthouse,  
Room 228  
40 Foley Square  
New York, NY 10007  

HICHAM AZKOUR  
93 Pitt Street,  
Apt. No. 3B  
New York, NY 10002  

Email: hicham.azkour@gmail.com

May 14, 2014

**Via ECF**

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/14/2014
```

Re:   *Azkour v. Haouzi, et al.,* 11-cv-5780 (RJS)(KNF)

Dear Judge Fox:

On March 25, 2014, counsel to the defendants ("Defendants") filed a declaration, *see* Docket Entry No. 160, in opposition to Plaintiff motion to compel. *See* Docket Entries Nos. 155 and 156. In this declaration at ¶ 6, Defendants' counsel declares under the penalty of perjury:

> In sum, defendants have provided plaintiffs with the documents and information available to them. *I am now advised that defendant Little Rest Twelve, Inc. has sold Ajna Bar restaurant and has ceased doing business.* Thus, there is no opportunity to even attempt to search for additional documents, none of which have any relevance to the single and very narrow cause of action sustained by the Court in this case (emphasis added).

Based upon the evidence attached hereto as EXHIBIT A, EXHIBIT B, EXHIBIT C, and EXHIBIT D, it is clear that Defendants and their counsel[1] were not truthful to this Court.

---

[1] We pray this Court to enjoining counsel to Defendants from engaging in his habitually harassing and patently frivolous requests for sanctions. Counsel may again request sanctions because Plaintiff is now reporting a fact to the Court. This Court is reminded that Defendant's counsel submitted to the Honorable Richard J. Sullivan, U.S.D.J., in the FLSA Action, that Plaintiff should be sanctioned because he had moved this Court in the instant matter to strike evidence, which Plaintiff believes it illegitimately obtained by counsel as he has been contending, in the present action and the FLSA Action, that Plaintiff is allegedly mentally ill.

1

As supported by EXHIBIT A, Mr. Joseph Gil[2], the former Financial Controller of defendant Little Rest Twelve, Inc. and currently Defendants' consultant in accounting and documents retention, *see* EXHIBIT B and EXHIBIT C, there is no doubt that Mr. Gil is the custodian of the all the documents Plaintiff requested to be produced by Defendants in the course of the discovery phase.

In the aforementioned declaration, Defendants and their counsel were not straightforward and willfully omitted to inform this Court that Mr. Gil met several times with Plaintiff regarding the latter's complaints about his wages and, hence, he is aware of the relevant facts alleged in this action. The Court may note Mr. Gil's signature in the letter dated January 15, 2010. See EXHIBIT A.

Moreover, Defendants deny that that they did not discriminate against Plaintiff by unlawfully withholding his wages. Yet, EXHIBIT D, which a release indicates that, in consideration of $10,107.69 and other good and valuable consideration received, Mr. Gil discharged defendant Little Rest Twelve, Inc. of all liability as to his unlawfully withheld wages.

Upon information and belief, Plaintiff is the only employee whose wages have been heretofore unlawfully retained in a blatant act of discrimination and retaliation.

For the reasons set forth above, we pray this Court to Order Defendants and their counsel to show cause as to why the Court should not sanction them and enter a default judgment in the present matter.

Respectfully submitted,

HICHAM AZKOUR, pro se

---

[2] Mr. Andrew S. Hoffmann's is Mr. Gil's attorney as indicated by the evidence attached hereto.

2

# EXHIBIT A

## Little Rest Twelve, Inc.
(Licensed Operator of Ajna Bar New York City)

**Date:** 1/15/2010

**Employee:** Hicham Azkour

Dear Hicham Azkour,

On Wednesday January 13, 2010 Joseph Gil and I met with you to discuss your concern in regards to your pay and tips. You stated that you spoke to the Maître D about a discrepancy with the hours you worked. I would like to apologize on behalf of the company for overlooking your concern.   The payroll department was not aware of the issue. Now that we are aware we will work to resolve it immediately. Please provide us with the proper documentation such as employee clock out slips and paystubs. The payroll department will research and correct if necessary any discrepancies within a week.

Any HR or payroll discrepancy should be addressed to the HR department as soon as possible.

Any shift starting at 4 gets a half hour deducted as a break . If you decide not to participate in family meal one must report that to the Maître D and the payroll department so that no deductions will made.

Employee Signature

_____

-Or-

Employee was asked to sign this written warning on 1/15/2010 but declined to sign.

HR Director

_____
1/15/2010

Financial Controller

_____
1/15/2010

Date

_____

17 Little West 12th Street - New York, NY 10014 - Tel. +1 212 647 7315 Fax +1 212 647 7799

# EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------x

LITTLE REST TWELVE, INC., and IMEDINVEST,

                      Plaintiffs,

        -against-

RAYMOND VISAN, GEORGE V. RESTAURATION,
S.A., CREATIVE DESIGN FOR RESTAURANTS
AND BARS LTD., JEAN-YVES HAOUZI, ET AL.,

                    Defendants.

-------------------------------------------------------------------x

Index No. 600676/2007

**AFFIDAVIT OF
JOSEPH GIL**

Hon. Bernard J. Fried

**STATE OF NEW YORK** )
                  )     **ss.:**
**COUNTY OF NEW YORK** )

      JOSEPH GIL, being duly sworn, deposes and says:

      1.     I am over the age of 18 years and was employed by Little Rest Twelve, Inc.

("LR12"), first doing business as Buddha Bar and later as Ajna Bar from May 2006 until March

31, 2010.   My position was Financial Controller and my responsibilities included the

maintenance of the financial books and records of LR12.   In the course of my responsibilities, I

became familiar with the management and operations of LR12.   Except as stated upon

information and belief, I have personal knowledge of the facts and circumstances set forth

herein.

      2.     On March 31, 2010, I learned that by unanimous consent of the shareholders and

vote of the board of directors, I had been removed from my position as Financial Controller.   On

that day, Mr. Martin Russo presented me with shareholder and board resolutions terminating my

employment.   True copies of those resolutions are annexed hereto as Exhibit "A."

3.      On March 31, 2010, I was permitted to collect my personal belongings before leaving the premises. At no time was I threatened and I did not observe any weapons. I had occasion to speak with Mr. Russo and local police officers. During those conversations, I believe the words "court order" may have been uttered, but I am unsure as to whether or not Mr. Russo misrepresented to the police that he had such an order. I did witness Mr. Russo display the shareholder and board resolutions contained in Exhibit A to the police. After consultation with the police, I was asked to leave the premises and did so peaceably. At no time during the day on March 31, 2010 did I witness any violence.

4.      When I first started working for LR12, I was charged with the task of reconciling the company's books and accounting for loans made to it by Grosvenor Trading House Ltd. ("GTHL"). I conducted my work by coordinating with David Lam of London International Bank ("LIB") which I understood to be controlling GTHL at the time. David Ashfield (the Chief Financial Officer of LIB) also came to visit LR12 and worked with me to reconcile the books. During one of his visits, Mr. Ashfield showed me copies of LR12 stock certificates in the names of Jean-Yves Haouzi (150,000 shares) and GTHL (850,000 shares). At or about that time, I understood that the law firm of Patton Boggs was serving as the transfer agent for LR12 shares and, to my knowledge, no other transfer agent was ever appointed. True and complete copies of such certificates are annexed hereto as Exhibit "B." I have recently inspected the originals of the certificates and recognize the signatures on these documents to belong to Jean-Yves Haouzi and Nina Zajic. These stock certificates are in the only form that I observed while employed for nearly 4 years by LR12. At no time did I ever see a stock certificate indicating ownership of LR12 shares by ImedInvest Partners.

5.      During the course of my employment by LR12, I understood that the shares of the company were owned 85% by GTHL and 15% by Mr. Haouzi.  At one point in time, I met with Mr. Haouzi and he explained to me that he originally had borrowed $75,000 to purchase 7.5% of LR12, but later purchased additional shares representing 7.5% of LR12 from a man named Laurent Ben-Attar by assuming Mr. Ben-Attar's $75,000 obligation.  In conducting my reconciliation of monies deposited with LR12, I identified deposits of $850,000, $75,000 and $75,000 received by LR12 in bank statements (2004) which represented payment for the 1,000,000 shares issued by LR12.  True copies of those statements are annexed hereto as Exhibit "C."  (It should be noted that the $850,000 was originally paid by Sakia Limited incorporated to acquire 850,000 shares of LR12 which, I was informed, subsequently sold those shares to GTHL).

6.      The documents contained in Exhibits B and C were kept in the ordinary course of business at LR12.  The documents contained in Exhibit B were maintained in a file kept by Nina Zajic in her desk.  In addition, Ms. Zajic kept, among others, the following documents in the file:

   a.   The New York certificate of incorporation for LR12 dated March 23, 2004;

   b.   The written action of the directors of LR12 from 2004;

   c.   The bylaws of LR12;

   d.   The voided stock certificate for 75,000 shares in favor of Jean-Yves Haouzi dated July 12, 2004; and

   e.   The voided stock certificate for 850,000 shares in favor of Sakia Limited Incorporated dated July 12, 2004.

True and complete copies of the above-referenced documents are annexed hereto as Exhibit "D."

7.      During my employment with LR12, these documents were kept in Ms. Zajic's desk and never were maintained in a safe.  It should be noted that until 2009, LR12 maintained two safes – one in the third floor office and another in the basement.  In or about November 2009, LR12 ceased using the third-floor office and moved the safe to the basement.  Thereafter, both safes resided in the basement office.  Neither safe was used to maintain or protect the corporate documents demonstrating ownership or management of LR12.  In addition, neither safe was used to house documents relating to ImedInvest Partners or its investments.  The small safe was used to secure money.  The larger safe held various different items at different times, but primarily housed documents relating to building permits and fire safety plans.

8.      On March 31, 2010, I secured the small safe before leaving the premises.  At that time, it is my belief that there was approximately $30,000 in cash held in two bags and some envelopes and a $10,000 certified check in favor of LR12.

9.      During my employment by LR12, I understood David Kay to be assisting in promoting LR12's lounge business.  He did not have a title.  To my knowledge, he was neither a director nor an officer.  He also did not have an employment contract for $225,000 a year in salary.  Rather, he was paid $62,500 a year.  Part of my responsibility as Financial Controller was to deal with the loans made to LR12 and I had an opportunity to review the loan documentation in connection with that job function.  At no time did I observe a personal guarantee by David Kay of any loan made to LR12.

10.      During my employment by LR12, I understood Nina Kay to be the Chief Operating Officer and later the Chief Executive Officer of LR12.  To my knowledge, she was not a director.  She also did not have an employment contract for $225,000 a year in salary.  Rather, she was initially paid $10,000 a month and that amount was later increased to $15,000 a month

for a short while, but her salary was later reduced to $120,000 a year. Part of my responsibility as Financial Controller was to deal with the loans made to LR12 and I had an opportunity to review the loan documentation in connection with that job function. At no time did I observe a personal guarantee by Nina Zajic of any loan made to LR12.

11.     During my employment at LR12, and even after Mr. Haouzi ceased being employed by LR12, the company continued to register licenses and permits in his name because he is an owner. Such licenses included the liquor licenses for the premises. The permits included Place of Assembly permits. True and complete copies of the Place of Assembly permits in Mr. Haouzi's name for the years 2007 – 2010 are annexed hereto as Exhibit "E." In the ordinary course of business, these documents were both displayed on the premises of LR12 and kept in a binder referred to as the "bible."

12.     As mentioned previously, a large part of my job was to keep track of the amounts owed to GTHL. I understood that GTHL was LR12's parent and had assumed Sakia's loans. As part of administrating that function, I required LIB to FedEx copies of the original loan documents to me. At different times, I would be instructed to make wire transfers to GTHL. Each time LR12 would make a payment, I would communicate with Daniel Lam regarding what amounts would be applied to the principal and interest. Recently, I reviewed documents which were kept in the ordinary course of business at LR12 and can authenticate each of the following:

   a.   A two-page fax from me to Daniel Lam containing a deed of assignment of a $6.085 million loan to GTHL by Sakia, signed by Nina Zajic on behalf of LR12;

   b.   A five-page fax from me to Daniel Lam containing 4 loan notes in favor of GTHL signed by Nina Zajic on behalf of LR12;

  c. A funds transfer notification from Signature Bank dated November 7, 2006 evidencing the transfer of $500,000 from LR12 to GTHL;

  d. An email chain dated January 2, 2007 regarding adjustments to LR12's books for the year end 2006;

  e. A series of six wire transfer authorizations to GTHL signed by Nina Zajic totaling $950,000.

Annexed hereto as Exhibit "F" are true and complete copies of the above-referenced documents.

13. At times Nina Zajic would transfer large sums of money to entities other than GTHL. On two occasions, Ms. Zajic wired money to M.E. Seltser P.C., an entity which I am informed and believed belongs to Emanuel Zeltser. The first wire was for $203,191. When I requested documentation to support the expenditure, I was eventually provided with an invoice that purported to originate from ImedInvest Partners. I am unaware of any services provided by ImedInvest Partners but was instructed by LR12's accountant to categorize the debit as legal and marketing expenses. The second wire was for $593,772. Despite repeated requests, no documentation supporting the expenditure was provided to me. In addition, to my knowledge Mr. Zeltser did not provide legal services sufficient to justify a $600,000 fee. He certainly did not provide an invoice for such amount. Annexed hereto as Exhibit "G" are true and complete copies of the wire transfer requests signed by Nina Zajic and the ImedInvest Partners invoice.

14. On another occasion, two weeks after the death of Arkady Badri Patarkatsishvili, Nina Zajic transferred $310,000 to JWL Entertainment Group ("JWL"). I am unaware of any services provided by JWL, but was instructed by the company's accountant to categorize the expenditure as "professional fees." Annexed hereto as Exhibit "H" is a true and complete copy of the wire transfer request signed by Nina Zajic.

15.     Until the first quarter of 2009, LR12 conducted all business using the trade name "Buddha Bar." Its letterhead until that time was printed with the Buddha Bar name and a watermark in the shape of a Buddha. In February 2009, LR12 standardized its letterhead and was using a Microsoft word generated address block under the words "Little Rest Twelve, Inc." Annexed hereto as Exhibit "I" are true samples of the letterhead used by LR12 in January, February and March 2010.

16.     During my four years of employment with LR12, I never dealt with or even heard the name of Olga Timofeyeva. She was not the chairman and president of LR12. I also never dealt with or even heard the name Theodore Kretschmer, Nastia Loginoff or the Areal Group. At no time as Financial Controller was I made aware of any loan (especially a $12 million loan) from Areal Group to LR12. No such loan existed. As discussed above, the loan documents clearly reflected an indebtedness to GTHL.

17.     I recently was shown certain documents produced in this litigation by the lawyers of record for LR12 who also purport to represent ImedInvest Partners. I had never seen these documents before and they were not kept in the ordinary course of LR12's business. Upon information and belief, these documents are not authentic. The documents I reviewed are as follows:

     a.  Stock certificate for 2,000,000 LR12 shares in favor of ImedInvest Partners dated March 24, 2004;

     b.  Officer employment agreement dated January 7, 2008 between LR12 and David Kay;

     c.  Officer employment agreement dated January 7, 2008 between LR12 and Nina Zajic;

d.  Share register dated December 31, 2009 reflecting the transfer of 1 share of LR12, Inc. to Grosvenor Trading House Ltd in trust for ImedInvest Partners;

e.  Three letters dated April 1, 2007, January 7, 2007, and January 7, 2007 purporting to retain Mound Cotton Wollan & Greengrass and Davidoff Malito & Hutcher;

f.  Certified resolutions of the organizational meeting of shareholders of Little Rest Twelve, Inc. dated March 11, 2004;

g.  Pledge agreement between Areal Group and LR12 for investment of $12 million dated March 24, 2004;

h.  The minutes an resolutions of the annual meeting of the board of directors of LR12, Inc. dated January 6, 2010;

i.  Bylaws of LR12 as allegedly amended on January 6, 2010.

Annexed hereto as Exhibit "J" are the true and complete copies of the above-referenced documents.

JOSEPH GIL

Sworn to before me this
13th day of September, 2010

Notary Public

JOHN DAVID MARKLEY
Notary Public - State of New York
No. 01MA6227009
Qualified in New York County
My Commission Expires Aug. 23, 2014

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**
**COMMERCIAL DIVISION**
--------------------------------------------------------------------x
**LITTLE REST TWELVE, INC.,**

                                    **Index No. 650209/2010**

                 **Plaintiff,**

                           **STIPULATION OF**
       **-against-**                      **DISCONTINUANCE WITH**
                           **PREJUDICE**

**NINA ZAJIC, JOSEPH KAY, JOSEPH GILL and**
**THOMAS GIGLIO,**

                 **Defendants.**
--------------------------------------------------------------------x

        IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned, attorneys for Plaintiff and Defendant, Joseph Gil ("Gil"), whereas no party hereto is an infant, incompetent person for whom a committee has been appointed, or conservatee and no person not a party has an interest in the subject matter of the action, the above entitled action is discontinued with prejudice and without costs, to either party as against the other. This Stipulation shall be contingent upon the fulfillment of Gil of his obligations set forth in that certain Settlement Agreement, a copy of which is attached hereto as Exhibit A (the "Settlement Agreement"), specifically any breach of the truthfulness representations relating to the Gil Affidavit made by Gil in Section 1(a) of the Settlement Agreement. Should Gil breach his obligations pursuant to the Settlement Agreement, this Stipulation shall be considered null and void. Facsimile or electronic signature hereon shall be deemed an original, and signatures may be in counterparts. This stipulation may be filed without further notice with the Clerk of the Court.

1

Dated: September 13, 2010
        New York, New York

**Hoffmann & Associates**
Attorneys for Defendant
Joseph Gil

By:  Andrew S. Hoffmann, Esq.
450 Seventh Avenue, Suite 1400
New York, New York 10123
Telephone:  (212) 679-0400
Facsimile:  (212) 679-1080

**Gusrae, Kaplan, Bruno &
Nusbaum PLLC**
Attorneys for Plaintiff

By:  Marlen Kruzhkov, Esq.
120 Wall Street
New York, New York 10005
Telephone:  (212) 269-1400
Facsimile:  (212) 809-5449

2

Dated: September 13, 2010
       New York, New York

**Hoffmann & Associates**
Attorneys for Defendant
Joseph Gil


By: Andrew S. Hoffmann, Esq.
450 Seventh Avenue, Suite 1400
New York, New York 10123
Telephone:  (212) 679-0400
Facsimile:  (212) 679-1080

**Gusrae, Kaplan, Bruno & Nusbaum PLLC**
Attorneys for Plaintiff


By:  Marlen Kruzhkov, Esq.
120 Wall Street
New York, New York 10005
Telephone:  (212) 269-1400
Facsimile:  (212) 809-5449

2

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**
**COMMERCIAL DIVISION**
-----------------------------------------------------------------------x
**LITTLE REST TWELVE, INC., and IMENDINVEST,**

**Index No.  600676/2007**

**Plaintiffs,**

        **-against-**

**STIPULATION OF**
**DISCONTINUANCE WITH**
**PREJUDICE**

**RAYMOND VISAN, GEORGE V. RESTAURATION,**
**S.A., CREATIVE DESIGN FOR RESTAURANTS**
**AND BARS LTD., JEAN-YVES HAOUZI, ET AL.,**

**Defendants.**
-----------------------------------------------------------------------x

IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned,

attorneys for Defendant/Third-Party Plaintiff, Jean-Yves Haouzi, and Third-Party Defendant,

Joseph Gil ("Gil"), whereas no party hereto is an infant, incompetent person for whom a

committee has been appointed, or conservatee and no person not a party has an interest in the

subject matter of the action, the above entitled action is discontinued with prejudice and without

costs, to either party as against the other.  This Stipulation shall be contingent upon the

fulfillment of Gil of his obligations set forth in that certain Settlement Agreement, a copy of

which is attached hereto as Exhibit A (the "Settlement Agreement"), specifically any breach of

the truthfulness representations relating to the Gil Affidavit made by Gil in Section 1(a) of the

Settlement Agreement.  Should Gil breach his obligations pursuant to the Settlement Agreement,

this Stipulation shall be considered null and void.  Facsimile or electronic signature hereon shall

1

be deemed an original, and signatures may be in counterparts.  This stipulation may be filed

without further notice with the Clerk of the Court.

Dated: September 13, 2010
      New York, New York

**Hoffmann & Associates**
Attorney for Third-Party
Defendant Joseph Gil

_____
By:  Andrew S. Hoffmann, Esq.
450 Seventh Avenue, Suite 1400
New York, New York 10123
Telephone:  (212) 679-0400
Facsimile:  (212) 679-1080

**Law Offices of**
**Alexander Perchekly, P.C.**
Attorneys for Defendant/Third-Party
Plaintiff Jean-Yves Haouzi

_____
By:  Alexander Perchekly, Esq.
747 Third Avenue, 37th Floor
New York, New York 10017
Telephone:  (516) 280-3508
Facsimile:  (212) 981-0522

2

be deemed an original, and signatures may be in counterparts.  This stipulation may be filed

without further notice with the Clerk of the Court.

Dated: September 13, 2010
      New York, New York

**Hoffmann & Associates**
Attorney for Third-Party
Defendant Joseph Gil

_____
By:  Andrew S. Hoffmann, Esq.
450 Seventh Avenue, Suite 1400
New York, New York 10123
Telephone:  (212) 679-0400
Facsimile:  (212) 679-1080

**Law Offices of**
**Alexander Perchekly, P.C.**
Attorneys for Defendant/Third-Party
Plaintiff Jean-Yves Haouzi

_____
By:  Alexander Perchekly, Esq.
747 Third Avenue, 37th Floor
New York, New York 10017
Telephone:  (516) 280-3508
Facsimile:  (212) 981-0522

2

# EXHIBIT C

## CONSULTING AGREEMENT

This Consulting Agreement (the "Agreement"), is made and entered into as of this 13th day of September 2010, by and between Little Rest Twelve, Inc. ("LR12"), a New York corporation, doing business as Ajna Bar, located for notice purposes at 25 Little West 12th Street, New York, New York 10014, and Joseph Gil ("Consultant"), an individual residing for notice purposes at 300 Winston Drive, Apt. 2422, Cliffside Park, New Jersey 07010. The aforesaid shall be referred to hereinafter as "Party" or, collectively, as the Parties."

**WHEREAS**, LR12 is desirous of engaging Consultant and Consultant is desirous of being engaged by LR12 to assist LR12 on matters relating to accounting, bookkeeping and document retention of LR12 and any other matters that LR12 may reasonably request, with a specific focus upon the time period during which Consultant was employed by LR12; and

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the Parties, it is agreed by and between LR12 and Consultant as follows:

**1.** Consultant shall be retained by LR12 as a consultant on matters relating to accounting, bookkeeping and document retention of LR12 and any other matters that LR12 may reasonably request, with a specific focus upon the time period during which Consultant was employed by LR12. In exchange for his services as a consultant, Consultant shall be paid One Hundred Fifty Dollars and 00/100 per hour ($150.00/hour).

**2.** Consultant shall present to LR12 a monthly bill setting forth i) the time spent by Consultant working with LR12; and ii) a description of the services provided by Consultant to LR12. LR12 shall pay such bill within thirty (30) days of presentment of such bill by Consultant.

**3.** Any and all changes to this or any subsequent Agreement must be in writing and initialed and signed by all Parties to be valid.

**4.** All Parties promise not to discuss or disclose the terms of this Agreement, including the amount or nature of the consideration provided under this Agreement, or any information provided as a part of this Agreement to any person other than a Party's attorney or financial advisor, provided that those to whom a Party may make such disclosure agrees to keep said information confidential and not disclose it to others. Both Parties agree not to make any critical, derogatory, or untruthful statement about each other and/or to each other's past, present or future clients, competitors, employees, employers, prospective employers or any other person (including, but not limited to, the press or other media).

**5.** Each person executing this Agreement represents and warrants that such person has the full right and authority to execute this Agreement and to enter into all the terms and conditions contained herein.

**6.** The Parties agree that this Agreement and any disputes arising from this Agreement will be subject to arbitration before the AAA in accordance with the applicable law of the State of New York. This Agreement and each and every term hereof shall be construed in



accordance with the laws of the State of New York without giving reference to its law relating to choice of law.

**7.** LR12 reserves the right to terminate this Agreement in its sole discretion at any time if any part of this Agreement is breached by Gil or if Gil breaches that certain Settlement Agreement between LR12 and Gil (the "Settlement Agreement"), specifically any breach of the truthfulness representations relating to the Gil Affidavit made by Gil in Section 1(a) of the Settlement Agreement.. Either of the Parties may terminate this Agreement without cause upon fourteen (14) days notice with such notice to be provided in accordance with Section 19 of this Agreement.

**8.** In the event that any Party breaches any provision of this Agreement, such Party shall be liable for reasonable attorneys' fees incurred in connection with the non-breaching Party's commencement of a lawsuit or other measure to enforce the terms of this Agreement but only if the non-breaching Party shall be the prevailing party in any such lawsuit or other measure to enforce the terms of this Agreement.

**9.** The terms of this Agreement are, and shall be, binding upon the Parties, their affiliates, agents, attorneys, successors, representatives and assigns, and upon all other persons and entities claiming an interest in the subject matter hereof through the Parties.

**10.** This Agreement constitutes the entire Agreement of the Parties with respect to the subject matter hereof. There are no other Agreements of any nature among or between the Parties hereto and there are no representations relied upon by any Party in entering this Agreement that are not stated herein.

**11.** No waiver of any term, provision or condition of this Agreement, whether by conduct or otherwise, in any one or more instances, shall be deemed to be or construed as a further or continuing waiver of such term, provision or condition of this Agreement, and no amendment or waiver of any provision of this Agreement shall be effective unless in writing signed by all Parties.

**12.** All Parties acknowledge that, should any Party breach any provision of the Agreement, monetary damages will be insufficient to compensate the non-breaching Party. Accordingly, the Parties agree that the non-breaching Party shall be entitled (without prejudice to any other right or remedy to which it may be entitled) to an appropriate decree of specific performance, or an injunction restraining any violation of this provision or other equitable remedies to enforce this provision (without establishing the likelihood of irreparable injury or posting bond or other security), and the breaching Party waives in any action or proceeding brought to enforce this provision the defense that there exists an adequate remedy at law.

**13.** Each Party shall have been deemed to have participated equally in drafting of this Agreement and any ambiguity in this Agreement shall not be construed against any purported author thereof.

**14.** This Agreement may be executed in any number of counterparts, including facsimile counterparts, all of which together shall constitute one Agreement.

2



**15.** The Agreement shall be effective upon execution.

**16.** (a) During the course of performance of this Agreement, LR12 may disclose to Consultant certain confidential information as defined in paragraph (b) below. Consultant shall hold LR12's Confidential Information in confidence and shall use its best efforts to protect it. Consultant shall not disclose LR12's Confidential Information to any third party, and shall use it for the sole purpose of performing his duties under this Agreement. At the conclusion of this Agreement, Consultant shall either return LR12's Confidential Information in his possession (including all copies) or shall, at LR12's direction, destroy LR12's Confidential Information (including all copies) and certify its destruction to LR12. Unless written consent is otherwise granted by LR12, Confidential Information shall be restricted to Consultant. Consultant shall use the same degree of care with the Confidential Information as he employs with his own Confidential Information but in all events Consultant shall use at least a reasonable degree of care and shall be liable for any unauthorized disclosures of Confidential Information by him. Consultant acknowledges that a violation of this Section 16 by Consultant may result in the termination of this Agreement pursuant to Section 7.

(b)   "Confidential Information" shall mean all information and documentation of LR12, whether disclosed to or accessed by the other party in connection with this Agreement, including (1) all information related to LR12's customers, pricing, rates, employees, operations, technology, facilities, markets, products, capabilities, systems, procedures, security practices, research, development, business affairs and finances, ideas, concepts, inventions, designs, business methodologies, improvements, trade secrets, copyrightable subject matter, patents and other intellectual property and proprietary information, (2) any information or data developed by reference to LR12's information or data and (3) the terms of this Agreement.

(c)   The term "Confidential Information" shall not include any information which: (a) is in the public domain at the time of disclosure or enters the public domain following disclosure through no fault of the Consultant, (b) the Consultant can demonstrate as already in his lawful possession prior to disclosure hereunder and not subject to an existing agreement of confidence between the Parties or is subsequently disclosed to the Consultant with no obligation of confidentiality by a third party having the right to disclose it or (c) is independently developed by the Consultant without reference to LR12's Confidential Information.

(d)   Consultant may disclose LR12's Confidential Information if required by, and in accordance with, the order of any competent court or government agency, provided that prior to disclosure the Consultant shall inform LR12 of such order.

(e)   Consultant agrees that his obligations provided in this Section 16 are necessary and reasonable in order to protect LR12 and its business, and the Consultant expressly agrees that monetary damages would be inadequate to compensate LR12 for any breach by the Consultant of its covenants and agreements set forth in this Section 16. Accordingly, the Consultant agrees and acknowledges that any such violation or threatened violation will cause irreparable injury to LR12 and that, in addition to any other remedies that may be available, in law, in equity or otherwise, LR12 shall be entitled to obtain injunctive relief

3



against the threatened breach of this Section 16 or the continuation of any such breach by the Consultant, without the necessity of proving actual damages.

(f)     The provisions of this Section 16 shall survive the termination of this Agreement.

**17.** The relationship of LR12 and Consultant under this Agreement is that of an independent contractor and such relationship shall continue throughout the term of this Agreement and any extension or renewal thereof. Nothing contained in this Agreement shall be construed to constitute Consultant as a partner, joint venture, officer, employee, legal representative or agent of LR12 nor shall Consultant incur any obligations or indebtedness, expressed or implied, on behalf of LR12  All persons employed by Consultant shall be considered solely Consultant's employees, and Consultant shall comply and be solely responsible for payment of his own and all of his employee's unemployment, social security and other payroll taxes, including contributions from Consultant when required by law.  LR12 shall have no control over Consultant's directors', officers, employees or agents, including the terms and conditions of their employment, nor over Consultant's methods of doing business except as may be set forth herein.

**18.** Each of the Parties executing this Agreement represents and warrants that it:

(a)     has had the opportunity to consider the terms and provisions of this Agreement;

(b)     has been advised to consult, and has consulted, with an attorney of its own choosing prior to executing this Agreement;

(c)     has carefully read this Agreement in its entirety and fully understands the significance and legal consequences of all of its terms and provisions; and

(d)     is signing this Agreement voluntarily and of its own free will and assents to all the terms and conditions contained herein.

**19.** All notices, consents, instructions and other communications required or permitted under this Agreement (collectively, "Notice") shall be effective only if given in writing and shall be considered to have been duly given when (i) delivered by hand, (ii) sent by telecopier (with receipt confirmed), provided that a copy is mailed (on the same date) by first class mail or a reputable express delivery service, or (iii) received by the addressee, if sent by Express Mail, Federal Express or other reputable express delivery service (receipt requested), or by certified  mail, return receipt requested, postage prepaid.  Notice shall be sent in each case to the appropriate addresses or telecopier numbers set forth below (or to such other addresses and telecopier numbers as a Party may from time to time designate as to itself by notice similarly given to the other parties in accordance herewith, which shall not be deemed given until received by the addressee).  Notice shall be given:

(1)     to LR12 at:

Little Rest Twelve, Inc. d/b/a AJNA Bar
25 Little West 12th Street

4



New York, New York 10014

with a copy to:

Marlen Kruzkhov, Esq.
Gusrae, Kaplan, Bruno & Nusbaum PLLC
120 Wall Street, 11th Floor
New York, NY 10016
Telecopier:  (212) 809-5449

(2)    to Consultant at:

Joseph Gil
300 Winston Drive, Apt. 2422
Cliffside Park, New Jersey 07010

with a copy to:

Andrew S. Hoffmann, Esq.
Hoffmann & Associates
450 Seventh Avenue, Suite 1400
New York, New York 10123
Telecopier:  (212) 679-1080

Signed and Dated:

**LITTLE REST TWELVE, INC.
D/B/A AJNA BAR**

By: _____          _____ 9-13-10'
Name: Jean-Yves Haouzi                Name: Joseph Gil
Title:  COO

Date:  September 13, 2010             Date:  September 13, 2010

5

New York, New York 10014

with a copy to:

Marlen Kruzkhov, Esq.
Gusrae, Kaplan, Bruno & Nusbaum PLLC
120 Wall Street, 11th Floor
New York, NY 10016
Telecopier: (212) 809-5449

(2)     to Consultant at:

Joseph Gil
300 Winston Drive, Apt. 2422
Cliffside Park, New Jersey 07010

with a copy to:

Andrew S. Hoffmann, Esq.
Hoffmann & Associates
450 Seventh Avenue, Suite 1400
New York, New York 10123
Telecopier: (212) 679-1080

Signed and Dated:

**LITTLE REST TWELVE, INC.
D/B/A AJNA BAR**

By:
Name: Jean-Yves Haouzi                          Name: Joseph Gil
Title: COO

Date: September 13, 2010                         Date: September 13, 2010

5

# EXHIBIT D

## To all to whom these Presents shall come or may Concern, Know That

JOSEPH GIL

as RELEASOR,

in consideration of the sum of Ten Thousand One Hundred Seven Dollars and 69/100 ($10,107.69) and other good and valuable consideration

received from    LITTLE REST TWELVE, INC.

as RELEASEE,

receipt whereof is hereby acknowledged, releases and discharges

LITTLE REST TWELVE, INC.

the RELEASEE, RELEASEE'S respective parents, divisions, subsidiaries, affiliates, officers, directors, employees, agents, insurers, attorneys, heirs, executors, administrators, successors and assigns from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, in law, admiralty or equity, which against the RELEASEE, the RELEASOR, RELEASOR'S heirs, executors, administrators, successors and assigns ever had, now have or hereafter can, shall or may, have for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of this RELEASE, and particularly, without limiting the generality of the foregoing, all claims which were asserted or which could have been asserted in the actions filed in the Supreme Court of the State of New York, County of New York, entitled i) Little Rest Twelve, Inc. v. Nina Zajic, et al., Index No. 650209/2010; and ii) Little Rest Twelve, Inc. v. Raymond Visan, et al., Index No. 600676/2007.

The words "RELEASOR" and "RELEASEE" include all releasors and all releasees under this RELEASE.

This RELEASE may not be changed orally.

**In Witness Whereof**, the RELEASOR has hereunto set RELEASOR'S hand and seal the 13th day of September, 2010.

## In Presence Of

_____ L.S.

JOHN DAVID MARKLEY
Notary Public - State of New York
No. 01MA6227009
Qualified in New York County
My Commission Expires Aug. 23, 2014

State of New York,   County of New York   ss.:

On the 13th day of September, 2010, before me, the undersigned, personally came JOSEPH GIL, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her their/ signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument

To all to whom these Presents shall come or may Concern,
Know That

Marlen Kruzhkov
Notary Public, State of New York
Reg.#02KR6126813
Qualified in New York County
My Commission Expires on May 16, 20/2.

LITTLE REST TWELVE, INC.

A corporation organized under the laws of the State of New York

as RELEASOR,

in consideration of the sum of One Dollar and 00/100 ($1.00) and other good and valuable consideration

received from   JOSEPH GIL

as RELEASEE,

receipt whereof is hereby acknowledged, releases and discharges

JOSEPH GIL

the RELEASEE, RELEASEE'S respective agents, insurers, attorneys, heirs, executors, administrators, successors and assigns from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, in law, admiralty or equity, which against the RELEASEE, the RELEASOR, RELEASOR'S heirs, executors, administrators, successors and assigns ever had, now have or hereafter can, shall or may, have for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of this RELEASE, and particularly, without limiting the generality of the foregoing, all claims which were asserted or which could have been asserted in the actions filed in the Supreme Court of the State of New York, County of New York, entitled i) Little Rest Twelve, Inc. v. Nina Zajic, et al., Index No. 650209/2010; and ii) Little Rest Twelve, Inc. v. Raymond Visan, et al., Index No. 600676/2007.

The words "RELEASOR" and "RELEASEE" include all releasors and all releasees under this RELEASE.

This RELEASE may not be changed orally.

**In Witness Whereof**, the RELEASOR has caused this RELEASE to be executed by its duly authorized officers and its corporate seal to be hereunto affixed on 13th day of September, 2010.

**In Presence Of**

LITTLE REST TWELVE, INC.

By: JEAN-YVES HAOUZI, COO

State of New York,   County of New York   ss.:

On 13th day of September, 2010, before me, the undersigned, personally came JEAN-YVES HAOUZI, to me known, who, by me duly sworn, did depose and say that deponent resides at 89 Fifth Avenue, Suite 1003, New York, New York 10003, that deponent is the COO of LITTLE REST TWELVE, INC., the corporation described in, and which executed the foregoing RELEASE, that deponent knows the seal of the corporation, that the seal affixed to the RELEASE is the corporate seal, that it was affixed by order of the board of directors of the corporation, and that deponent signed deponent's name by its order.

**To all to whom these Presents shall come or may Concern,**

**Know That**

JEAN-YVES HAOUZI

Marlen Kruzhkov
Notary Public, State of New York
Reg.#02KR6126813
Qualified in New York County
My Commission Expires on May 16, 201_

as RELEASOR,

in consideration of the sum of One Dollar and 00/100 ($1.00) and other good and valuable consideration

received from   JOSEPH GIL,

as RELEASEE,

receipt whereof is hereby acknowledged, releases and discharges

JOSEPH GIL

the RELEASEE, RELEASEE'S respective agents, insurers, attorneys, heirs, executors, administrators, successors and assigns from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, in law, admiralty or equity, which against the RELEASEE, the RELEASOR, RELEASOR'S heirs, executors, administrators, successors and assigns ever had, now have or hereafter can, shall or may, have for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of this RELEASE, and particularly, without limiting the generality of the foregoing, all claims which were asserted or which could have been asserted in the actions filed in the Supreme Court of the State of New York, County of New York, entitled i) Little Rest Twelve, Inc. v. Nina Zajic, et al., Index No. 650209/2010; and ii) Little Rest Twelve, Inc. v. Raymond Visan, et al., Index No. 600676/2007.

The words "RELEASOR" and "RELEASEE" include all releasors and all releasees under this RELEASE.

This RELEASE may not be changed orally.

**In Witness Whereof**, the RELEASOR has hereunto set RELEASOR'S hand and seal the 13th day of September, 2010.

**In Presence Of**

_____ L.S.

State of New York,   County of New York  ss.:

On the 13th day of September, 2010, before me, the undersigned, personally came JEAN-YVES HAOUZI, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her their/ signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument

Reg.#02KR
Qualified in New York County
My Commission Expires on May 16, 20___

## To all to whom these Presents shall come or may Concern, Know That

JOSEPH GIL

as RELEASOR,

in consideration of the sum of One Dollar and 00/100 ($1.00) and other good and valuable consideration

received from   JEAN-YVES HAOUZI,

as RELEASEE,

receipt whereof is hereby acknowledged, releases and discharges

JEAN-YVES HAOUZI

the RELEASEE, RELEASEE'S respective agents, insurers, attorneys, heirs, executors, administrators, successors and assigns from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, in law, admiralty or equity, which against the RELEASEE, the RELEASOR, RELEASOR'S heirs, executors, administrators, successors and assigns ever had, now have or hereafter can, shall or may, have for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of this RELEASE, and particularly, without limiting the generality of the foregoing, all claims which were asserted or which could have been asserted in the actions filed in the Supreme Court of the State of New York, County of New York, entitled i) Little Rest Twelve, Inc. v. Nina Zajic, et al., Index No. 650209/2010; and ii) Little Rest Twelve, Inc. v. Raymond Visan, et al., Index No. 600676/2007.

The words "RELEASOR" and "RELEASEE" include all releasors and all releasees under this RELEASE.

This RELEASE may not be changed orally.

**In Witness Whereof**, the RELEASOR has hereunto set RELEASOR'S hand and seal the 13th day of September, 2010.

### In Presence Of

_____ L.S.

State of New York,   County of New York   ss.:

JOHN DAVID MARKLEY
Notary Public - State of New York
No. 01MA6227009
Qualified in New York County
My Commission Expires Aug. 23, 2014

On the 13th day of September, 2010, before me, the undersigned, personally came JOSEPH GIL, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her their/ signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument