UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

HICHAM AZKOUR,

               Plaintiff,

     -against-

JEAN-YVES HAOUZI, FRANCK MACOURT,
JESSICA COMPERIATI , LITTLE REST
TWELVE, INC., SHELDON SKIP TAYLOR
ESQ., LAW OFFICES OF SHELDON SKIP
TAYLOR,
             Defendants.
-------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/24/15
```

**REPORT AND RECOMMENDATION**

11 Civ. 5780 (RJS)(KNF)

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE RICHARD J. SULLIVAN, UNITED STATES DISTRICT JUDGE

     Plaintiff Hicham Azkour ("Azkour"), proceeding pro se, brings this action against

defendants Jean Yves Haouzi ("Haouzi"), Franck Macourt ("Macourt"), Jessica Comperiati

("Comperiati") and Little Rest Twelve, Inc. ("LRT) alleging a violation of 42 U.S.C. § 1981.

Before the Court is the defendants' motion for summary judgment, pursuant to Federal Rule of

Civil Procedure 56.   The plaintiff opposes the motion.

## BACKGROUND

     LRT operated a restaurant and bar in Manhattan known as Ajna Bar.  The plaintiff

worked for LRT from October 10, 2009, until February 14, 2010.[1]  Azkour performed the work

---

[1]After his employment with LRT ended, the plaintiff commenced a civil action against it,
(continued...)

1

of a busboy and runner.  On or about March 30, 2010, the defendants in this action became the

new owners and managers of Ajna Bar.  As set forth in his third-amended complaint, Azkour

alleges that, on or about April 1, 2010, he visited Ajna Bar and met with Macourt, the new

general manager, and requested a meeting with defendant Haouzi, allegedly LRT's new owner,

and also requested, inter alia, that he be "reinstated so that the unlawful acts of discrimination

and retaliation by the former managers can be remedied."  Azkour alleges further that Macourt

advised him that "LRT and its new management would not be able to address his claims because

they are not liable for the wrongs done by the former managers."  Azkour alleges further that,

during his conversation with Macourt, the latter "casually asked Plaintiff about the origin of his

name [and] Plaintiff, unsuspicious, naturally replied that he was born in Morocco."  Azkour

claims that when he insisted on meeting with Haouzi, Macourt, accompanied by armed security

personnel, directed Azkour to "leave the premises or he would press criminal charges against

[him]."  According to Azkour, "Macourt, in French, stated to Plaintiff that defendant Haouzi

does not want to see any Arabs in his restaurant."  Azkour claims that he then asked Macourt for

"a reference letter proving his employment with [LRT] from October 10, 2009 to February 14,

2010," but Macourt directed a security guard to remove Azkour from the premises and he left the

restaurant.

        The third-amended complaint alleges that "[t]o this day, Defendants have unlawfully

---

        [1](...continued)
in this court, pursuant to, inter alia, the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §
201 et seq.  See Azkour v. Little Rest Twelve, Inc., No. 10-CV-4132.  On February 1, 2015, the
court, inter alia, entered judgment in the plaintiff's favor in the amount of $20,128.32.

refused to provide Plaintiff with a reference letter and have . . . discriminated against Plaintiff by giving negative professional reference[s] to employers seeking to inquire about Plaintiff's employment with defendant [LRT]."

In support of their motion for summary judgment, the defendants submitted a: (i) Local Civil Rule 56.1(a) Statement of Material Facts ("Rule 56.1 Statement"); (ii) memorandum of law; (iii) memorandum of law in reply; and (iv) declaration by their counsel, Andrew S. Hoffman, Esq. Annexed to counsel's declaration, as an exhibit, is a copy of the transcript of the plaintiff's deposition dated November 26, 2013.[2] In opposing the defendants' motion, the plaintiff submitted a: (1) Response to Defendants' Rule 56.1 Statement ("Response to Rule 56.1 Statement"); (2) memorandum of law; and (3) declaration by the plaintiff made "upon personal knowledge and under the penalty of perjury, pursuant to 28 U.S.C. § 1746," with accompanying exhibits, including the declaration of Cha'mesh Omer Mualimmak ("Mualimmak"), an acquaintance of Azkour's, the affidavit of Zouheir Nezili ("Nezili"), an employee of LRT for the period June 2006 to April 2010, and a copy of the transcript of the plaintiff's deposition.

In their Rule 56.1 Statement, the defendants state that: "3. Plaintiff concedes that following the termination of his employment at Ajna Bar on February 8, 2010 he never 'formally' applied for a job or filled out an application for employment at Ajna Bar."

The plaintiff disputes this point. As set forth in his Response to Rule 56.1 Statement, the plaintiff objects that "[w]hen he met defendant Macourt on April 1, 2010, Plaintiff expressly,

---

[2]According to the plaintiff, the "deposition proceeding took place on November 26, 2013 as Ordered during the Initial Pretrial Conference on October 31, 2013. However, the transcript erroneously states that said proceeding took place on November 26, 2012."

verbally requested to fill out an employment application so that he may be reinstated and/or

rehired.  Plaintiff's meeting with defendant Macourt was strictly for business purposes.

Consequently, any request made by Plaintiff at that time was formal."

      In support of their Rule 56.1 Statement, the defendants make citation to the plaintiff's

deposition testimony, as follows:

> Q.    Did you ever reapply - after you left Ajna Bar on March – I'm
> sorry – February 8, 2010, did you ever reapply for a position there?
>
> A.    Yes.  I went to see Franck Macourt.  I talked to him, you know, in
> French, and I explained to him that I want to get my job back.  But
> he was very sarcastic and he engaged in, in  - engaged in -
>
> Q.    Did you ever actually apply for a position with Ajna Bar after
> February 8, 20 -
>
> A.    Yes.  I was there and I asked him to . . . fill out an application to be
> rehired.
>
> Q.    So when was that?  When did you reapply?
>
> A.    April 1st, I think.
>
> Q.    Did you ever apply at any other time?
>
> A.    No.  The . . . he didn't want me to be there anymore.  He said that
> there were security guards, you know, and he talked to them and
> he told him that I have to leave.  I was - I was completely
> intimidated.
>
> Q.    Did you - so did you ever fill out an application?
>
> A.    No.  He didn't want to give me an application.  He didn't want to, I
> mean, investigate my claims.  He didn't want to talk to me at all.

With respect to Azkour's request for a reference letter, the defendants state in their Rule 56.1 Statement: (a) "6. Plaintiff concedes that he never made a written request for a 'letter of reference' from Ajna Bar prior to the commencement of the instant action;" (b) "7. Plaintiff concedes that he cannot identify a single potential employer that he sought a position with following his termination by Ajna [B]ar who asked him to provide a 'letter of reference' from Ajna [B]ar;" and © "8. Plaintiff concedes that he cannot identify a single potential employer that he sought a position with following his termination by Ajna [B]ar who refused to consider him for employment or to hire him because he could not provide a 'letter of reference' from Ajna Bar."

In his Response to Rule 56.1 Statement, Azkour objects to, and denies the truth of, each statement and contends each is "irrelevant and immaterial" to the matter of whether the defendants discriminated against him on the basis of race. The cited portions of the plaintiff's deposition concerning this claim are as follows:

> Q.   Did you – now, with respect to your claim that you were denied a letter of reference, did you ever make a formal request to get a letter of reference?
>
> A.   Yes, through . . . my lawyer, Mr. Stein.
>
> * * *
>
> Q.   When was the first time that you ever made a request to Ajna Bar for a letter of reference?
>
> A.   When I talked to Mr. Macourt, because he said –
>
> Q.   And when was that?
>
> A.   That was around April 1st.

Q.     Was that the same conversation where you asked to be released?

A.     That was the same conversation, yes, because when refused, when he refused to let me see Mr. Haouzi, [I] said, you know, at least, please, if you don't want to give me my money, please give me just [a] reference so I can look for another job.  He said, I don't want to talk to you, I don't want to see any Arabs here.  This is the way he talked in French, you know.  He said, "Je veu plu a le re de vu" – I'm not going to, but this is what he said. "I don't want to see any Arabs here, please don't come back."

* * *

Q.     Did you ever make a written request to Ajna Bar seeking a letter of reference?

A.     Former management or new management?

Q.     The people that you're suing in this lawsuit.

A.     Yes. In the letter. In the complaint.

Q.     Before the time you filed the complaint, did you ever do that?

A.     No.  I spoke with Mr. Macourt.

* * *

Q.     Please tell me those employers that asked you for a letter of reference. Can you identify them?

A.     There are so many of them that I can't remember which one.

Q.     Well, as you sit here today, can you tell me one.

A.     One?

Q.     Can you tell–I'd like a list of all of the employers that asked you for a letter of reference.

A.     I can give you the list. I have the list at home.

Q.     I'm asking you if you can recall any.

6

> A.    No, I don't.
>
> * * *
>
> Q.    Can you identify any employer that said that they wouldn't hire
>        you, or couldn't hire you because you don't have a letter of
>        reference?
>
> A.    I don't recall specifically the name of the employer, but I know for
>        a fact that I've been refused employment because I wasn't able to
>        produce a reference letter, because those people asked me to
>        produce a reference letter, and I couldn't.
>
> Q.    Did any employer tell you that they couldn't hire you because you
>        don't have a reference letter?
>
> A.    Many of them, yes.
>
> Q.    How many employers told you that?
>
> A.    At least – most, most of them.  You know, I would say 75 percent.
>
> Q.    Can you tell me a single employer that told you that.
>
> A.    I told you, I don't recall the names.
>
> Q.    What kind of employer was it?
>
> A.    Restaurant.

In his declaration submitted in opposition to the instant motion, the plaintiff avers that,

when the defendants took control of Ajna Bar, "I requested that they reinstate me . . . [and]

specifically requested from defendant . . . Macourt, the new General Manager of Ajna Bar, that

they provide me with a reference letter." The declaration states: "I also requested an

employment application from defendant . . . Macourt so that I may reapply for any vacant waiter

position.  He denied my request and bluntly refused to discuss any possibility for me to reapply

7

or be reinstated/rehired." In his declaration, Azkour states further: "while declining to consider my renewed application for employment, defendant . . . Macourt engaged in unprofessional conduct by overtly making racist remarks."

Referring to the Nezili affidavit, the plaintiff also avers: "As reflected by the sworn testimony of . . . Nezili . . . Defendants' acts of discrimination and retaliation are not isolated, sporadic acts. They constitute a pattern of violations. Defendants have been acting with malice and with reckless indifference to their employees' federally protected rights."

The Nezili affidavit, which is dated October 6, 2010, states, in pertinent part, as follows:

> I am a United States Citizen of Moroccan national origin . . . . I began working for [LRT] as a food runner on or about June 1, 2006. During my employment with [LRT] I have not been, on several occasions, paid overtime compensation and regular wages . . . . On or about April 1, 2010, [LRT] under its new French management terminated my employment without a valid business reason. . . . All ex-employees of Moroccan national origin - without exception - were summarily terminated by the current French management of [LRT] without good cause. As replacement to these Moroccan ex-employees, [LRT] hired less qualified, less experienced employees of a different national origin. . . . I believe that this unlawful act of terminating employees of Moroccan national origin is motivated by racial animus, rather than any business reason.[3]

On December 20, 2013, in connection with the plaintiff's related FLSA action, LRT wrote to the court and the plaintiff and offered to provide the plaintiff with a letter of reference. See Azkour v. Little Rest Twelve, Inc., No. 10-CV-4132, Doc. No. 183. LRT's letter was written in response to the plaintiff's motion for preliminary injunctive

---

[3]As the plaintiff notes in his declaration, the Nezili affidavit is attached as an exhibit to the third-amended complaint, where it is mentioned in connection with, inter alia, claims of intentional discrimination made pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.

relief, which sought an order requiring the defendants to provide such a letter to the plaintiff.  The letter was offered by the defendants "on the condition that it be without prejudice to defendant's [sic] defenses in this case; that its decision to provide Mr. Azkour with such a letter at this time will not be admissible in this case and that it would not constitute any kind of admission by defendant [sic] that it wrongfully failed to provide plaintiff with such a letter or that it was under any legal obligation to do so."  Id. The plaintiff refused the offer of the letter.  In his Response to Rule 56.1 Statement concerning the offer of the letter, he contends that the defendants' "statement proves that Defendants did engage in a discriminatory practice of refusing to provide Plaintiff with a reference letter *without prior conditions*." (Emphasis in original).

With respect to the plaintiff's allegation that the defendants gave him a negative reference, the defendants state in their Rule 56.1 Statement that "11. Plaintiff concedes that he cannot identify a single potential employer that he sought a position with following his termination by Ajna [B]ar to whom defendants purportedly gave a negative reference about him."  The plaintiff, in response, states that he "objects to and denies the truth of this statement on the ground that it is irrelevant and immaterial to proving Defendant's [sic] discriminatory . . . practice of providing negative information about Plaintiff to the prospective employer he declined to name for appropriate reasons."

As noted above, the plaintiff provided to the Court the declaration of Mualimmak; in that document, Mualimmak states that he has known the plaintiff since January 2012, that he knew Azkour "has been looking for employment because he has been using my

cell phone to call employers" and that "[t]o this day, ... Azkour has not been able to find employment." Mualimmak declares further: "I personally referred . . . Azkour to a few employers who own small businesses in Brooklyn.  One of these prospective employers called . . . Azkour's former employer [LRT] to check his professional reference. However, to this employer's utmost surprise, LRT informed him that Azkour never worked for them. I felt embarrassed when this employer, who is also a friend of mine, called me and requested that I do not refer to him any 'troublemakers.'"

With respect to the plaintiff's charge that he was given negative references by the defendants, they point to the following deposition testimony:

Q.   Are you alleging that the defendants in this case gave negative reports about you to prospective employers?

A.   Yes.

Q.   What employers did the defendants in this action give you a negative reference about?

A.   That was a . . . Williamsb[u]rg, there's a restaurant there, a small restaurant . . . .

Q.   What is the name of the restaurant in Williamsb[u]rg?

A.   I don't know exactly, but I remember Williamsb[u]rg . . . . He gave me, he gave me . . . directions. I went straight there, you know.

Q.   What is the address of the restaurant?

A.   I have, I have no idea. I can't remember.

* * *

Q.      Do you still have the directions?

A.      No, I don't. I threw them away. I live in a shelter. You know that.

Q.      Do you have a telephone number?

A.      No.

* * *

Q.      Sir, did you or did you not ever speak to the owner of the

        restaurant in Williamsb[u]rg about the negative reference that he

        received about you from Ajna Bar?

A.      No. That's Omer [Mualimmak] who told me that. . . . I have no

        knowledge what happened till I was told by Omer that the owner

        contacted him and told him that the reference, he . . . received

        negative references from . . . Ajna Bar.

Q.      So you never heard anything from the restaurant owner yourself?

A.      Direct, no. No.

The plaintiff filed his third-amended complaint on February 2, 2012, alleging, inter alia,

discrimination on the basis of race under 42 U.S.C. § 1981.[4]  According to the plaintiff, the

defendants discriminated against him by "interfering with his right to enforce his employment

---

[4]By an order dated August 1, 2013, your Honor, in adopting the Report and
Recommendation of the undersigned, denied a motion to dismiss the plaintiff's claim of
discrimination under § 1981, but dismissed all other claims set forth in the third-amended
complaint.

11

contract" and to enter into new employment contracts "on account of his race (Arab)." The defendants filed their answer on October 7, 2013.[5]

**_Defendants' Contentions_**

The defendants contend that they are entitled to summary judgment because the plaintiff cannot establish that a genuine issue of material fact exists in connection with their alleged discriminatory intent respecting: (1) their refusal to hire him; (2) their refusal to provide him with a letter of reference; and (3) their provision of alleged negative references about him to prospective employers. In addition, the plaintiff "has produced no admissible evidence from which a fact finder could infer that defendants engaged in any actual discriminatory acts against him."

According to the defendants, the plaintiff "conceded," during his deposition, that he has no admissible evidence to support his allegations. Thus, they contend that Azkour's claim that the defendants refused to hire him because of his Arab race is subject to dismissal because he "lacks evidence to establish that he applied for employment at Ajna Bar or that defendants refused to hire him because of his Arab race." Additionally, they assert that his claim that he was denied a letter of reference is unsupported because he "cannot establish that he made a proper request to defendants that Ajna Bar provide him with a letter of reference [and] concedes that he never made such a request in writing or even through counsel." Moreover, according to

---

[5]On October 11, 2013, the defendants re-filed their answer and annexed to it the affidavit of Kristal Mallookis, the owner of a restaurant service staffing company in New York City. The affidavit appears to have been prepared for submission in support of the defendants' motion for summary judgment in the related FLSA action.

12

the defendants, it is "undisputed that plaintiff's inability to produce a letter of reference from Ajna Bar had no impact at all on his ability to secure new employment - which is of course the specific legal predicate supporting his attempt to set forth a claim under Section 1981."

Further, according to the defendants, no evidence exists that would support Azkour's claim that they gave negative references about him to prospective employers because "his deposition testimony establishes that he has no evidence at all to support this claim."

***Plaintiff's Contentions***

The plaintiff contends that the defendants' motion for summary judgment should be denied because they "did not satisfy their burden of proof" by demonstrating the absence of a genuine issue of material fact in this case. The plaintiff notes that the defendants rely entirely on statements he made during his November 26, 2013 deposition and that those statements repeat the claims set forth in his third-amended complaint. The plaintiff contends that his deposition testimony does not establish that no genuine issue of material fact exists concerning his claim(s) of discrimination and that, to the contrary, a genuine issue of material fact does exist because the statements he made during his deposition: (1) support his allegation that the defendants discriminated against him by, among other things, refusing to rehire him; and (2) undermine the defendants' counter position.

According to the plaintiff, "defendant [Macourt], without good cause, denied Plaintiff the right to enforce an employment contract and to enter into new employment contracts [and] [c]onsidering the racial animus and the bigotry characterizing defendant [Macourt's] statements . . . one has no difficulty concluding that Defendants' denial constitutes an intentional

13

discriminatory act."

The plaintiff contends further that the defendants "intentionally discriminated against him by providing a negative reference to a prospective employer." According to the plaintiff, Mualimmak's testimony, as set forth in his declaration, "reveals that he has direct knowledge as he spoke via telephone with the prospective employer, who is also a friend of his, and learned from him that he rescinded his offer of employment to Plaintiff because Defendants provided him with a negative reference." The plaintiff notes that the defendants present no admissible evidence contradicting Mualimmak's testimony.

## DISCUSSION

### _Legal Standard_

A motion for summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (citation and internal quotation marks omitted); see Fed R. Civ. P. 56(c)(1).

If the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, "the nonmoving party must set out specific facts showing a genuine issue for trial using affidavits or otherwise, and cannot rely on the mere allegations or denials

14

contained in the pleadings." Whitehurst v. 230 Fifth, Inc., 998 F. Supp.2d 233, 244 (S.D.N.Y.

2014) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S. Ct. 2505 (1986)

(internal quotation marks omitted).  At the same time, "[a]ll reasonable inferences must be

construed in the nonmoving party's favor, and if 'there is any evidence in the record from any

source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the

moving party simply cannot obtain a summary judgment.'" Hill v. Curcione, 657 F.3d 116, 124

(2d Cir. 2011) (quoting R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 59 (2d Cir. 1997)).

"In cases involving allegations of employment discrimination, the court must exercise an

extra measure of caution in determining whether to grant summary judgment because direct

evidence of discriminatory intent is rare and such intent often must be inferred from

circumstantial evidence." Varughese v. Mount Sinai Medical Center, No. 12 Civ. 8812, 2015

WL 1499618, at *3 (S.D.N.Y. Mar. 27, 2015) (quoting Schiano v. Quality Payroll Sys., Inc.,

445 F.3d 597, 603 (2d Cir. 2006)) (internal quotation marks omitted).  "In considering [a]

defendant's summary judgment motion, the court liberally construes all submissions by a pro se

plaintiff and 'interpret[s] [them] to raise the strongest arguments that they suggest.'" Id. at *4

(quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)).

To establish a claim under § 1981, a plaintiff must show:  "(1) that she is a member of a

racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) that

the discrimination concerned one or more of the activities enumerated in § 1981." Lauture v.

International Business Machines Corp., 216 F.3d 258, 261 (2d Cir. 2000).  A person who is

"subjected to intentional discrimination [limiting his opportunities to make and enforce

employment contracts,] based on the fact that he was born an Arab," may assert a § 1981 claim. St. Francis College v. Al-Khazraji, 481 U.S. 604, 613, 107 S. Ct. 2022, 2028 (1987).

"A plaintiff's efforts to establish the second element of a § 1981 claim are subject to the same burden-shifting analysis as intentional discrimination claims brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq." Whitehurst, 998 F. Supp.2d at 244 (quoting  Brioch v. Inc. Vill. of Southampton, 462 Fed. Appx. 39, 42 (2d Cir. 2012)) (internal quotation marks omitted).

> Once the plaintiff has presented a prima facie case of discrimination, the defendant has the burden of producing, through the introduction of admissible evidence, reasons for its actions which, *if believed by the trier of fact*, would support a finding that unlawful discrimination was not the cause of the employment action.  After the defendant has articulated such nondiscriminatory reasons, the plaintiff has an opportunity to show that the reason was merely a pretext for discrimination.

Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 38 (2d Cir. 1994) (citations omitted) (emphasis in original).  "The burden of proof that must be met to permit an employment-discrimination plaintiff to survive a summary judgment motion at the prima facie stage is *de minimis*." Id. at 37 (citation omitted).

"A plaintiff can prove intentional discrimination through either direct or circumstantial evidence." Whitehurst, 998 F. Supp.2d at 244 (citation omitted).  "Circumstances contributing to a permissible inference of discriminatory intent may include . . . the employer's criticism of the plaintiff's performance in ethnically degrading terms, or its invidious comments about others in the employee's protected group, or the more favorable treatment of employees not in the protected group.  Chambers, 43 F.3d at 37 (citations omitted).

*Application of Legal Standard*

The defendants have moved for dismissal of the plaintiff's claim of intentional discrimination under § 1981 on the grounds that (I) no genuine issue of material fact exists with respect to, inter alia, the plaintiff's contention that he was denied reinstatement at Ajna Bar because of his race; and (ii) the evidence developed during the pretrial discovery phase of the action supports awarding the defendants judgment as a matter of law.

1.      Refusal to Hire

Discrete acts of discrimination in the employment context include "termination, failure to promote, denial of transfer, or refusal to hire." Acheampong v. New York City Health & Hospitals Corp., No. 11 CV 9205, 2015 WL 1333242, at *7 n.9 (S.D.N.Y. Mar. 25, 2015).  With respect to the claim that the defendants refused to hire him because of his race, the plaintiff points to admissible evidence of racial discrimination.  In his third-amended complaint, the plaintiff alleges that, during his April 1, 2010 meeting with defendant Macourt, he asked to see defendant Haouzi so that he could be reinstated to his previous position at Ajna Bar.  Azkour alleges that Macourt made a derogatory, racially-charged remark and threatened to have him removed from the premises by security personnel.  Specifically, according to Azkour, Macourt stated that defendant Haouzi "does not want to see any Arabs in his restaurant."

In support of his claim, the plaintiff avers, through his declaration in opposition to the instant motion, that when the defendants took control of Ajna Bar, he "requested an employment application from defendant . . . Macourt so that I may reapply for any vacant waiter position.  He denied my request and bluntly refused to discuss any possibility for me to reapply or be

reinstated/rehired." Azkour avers that "while declining to consider my renewed application for employment, defendant . . . Macourt engaged in . . . unprofessional conduct by overtly making racist remarks."

The Nezili affidavit also supports Azkour's claim that the defendants refused to hire him because of his race. Although prepared in connection with a claim involving the denial of, <u>inter alia</u>, overtime compensation and regular wages, the Nezili affidavit also contains admissible evidence supporting the plaintiff's allegation of a discriminatory attitude, on the defendants' part, toward others in the plaintiff's protected group, <u>i.e.</u>, those of Moroccan national origin. The affidavit also attests to a more favorable treatment of those not in the plaintiff's protected group and the affiant's assertion that the defendants' "act of terminating employees of Moroccan national origin is motivated by racial animus, rather than by any business reason."

The defendants have not provided any evidence that would establish the absence of a genuine issue of material fact with respect to the plaintiff's contention that they were motivated by an impermissible discriminatory intent, when they refused to rehire him or provide him with a letter of reference. Lacking such evidence, the defendants fall back on the notion that the plaintiff could not have been denied reinstatement to a position at Ajna Bar, on any ground, because he did not make a "proper" or "formal" or written application for employment. The defendants provide no evidence that Ajna Bar had such a thing as a "proper" or "formal" employment application or employment application procedure or that the plaintiff was apprised of the requirements of such a procedure and failed to satisfy them. In any case, as the plaintiff points out in his response to the defendants' Rule 56.1 Statement, "[w]hen he met defendant

Macourt on April 1, 2010, [he] expressly, verbally requested to fill out an employment application so that he may be reinstated [and as his] meeting with defendant Macourt was strictly for business purposes . . . any request made by Plaintiff at that time was formal."

Moreover, Azkour's deposition testimony reveals that any attempt he may have made to prepare or submit a "proper" or written employment application was blocked by Macourt's directive to security personnel to escort Azkour from the premises:

> Q.    Did you ever reapply - after you left Ajna Bar on March – I'm sorry – February 8, 2010, did you ever reapply for a position there?
>
> A.    Yes.  I went to see . . . Macourt.  I talked to him, you know, in French, and I explained to him that I want to get my job back.  But he was very sarcastic and he engaged in, in  - engaged in -
>
> Q.    Did you ever actually apply for a position with Ajna Bar after February 8, 20 -
>
> A.    Yes.  I was there and I asked him to . . . fill out an application to be rehired.
>
> * * *
>
> Q.    Did you ever apply at any other time?
>
> A.    No.  The . . . he didn't want me to be there anymore.  He said that there were security guards, you know, and he talked to them and he told them that I have to leave.  I was - I was completely intimidated.
>
> Q.    Did you - so did you ever fill out an application?
>
> A.    No.  He didn't want to give me an application.  He didn't want to, I mean, investigate my claims. He did not want to talk to me at all.

For the reasons set forth above, the Court concludes that there exists a genuine issue of material fact concerning whether the plaintiff was denied reinstatement at Ajna Bar because of his race.  Therefore, granting the defendants' motion for summary judgment with respect to the

plaintiff's claim of intentional discrimination under § 1981 is not warranted.

2.      Letter of Reference

The defendants also seek dismissal of the plaintiff's discrimination claim premised on the allegations that they were motivated by racial animus when they refused to provide him with a letter of reference and gave a negative reference about him to a prospective employer. "When an employee claims that an employer's negative reference letter, or failure to provide a letter, amounts to an adverse action, there are 'no bright-line rules,' and courts must 'pore over each case to determine whether the challenged employment action reaches the level of adverse.'" Costantin v. New York City Fire Dept., No. 06 Civ. 04631, 2009 WL 3053851, at *13 (Sept. 22, 2009) (quoting Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 178-79 (2d Cir. 2005). In this case, it is reasonable to construe both the defendants' failure to provide a letter of reference and their allegedly negative reference(s) concerning the plaintiff as adverse actions insofar as these actions, if taken, would have operated to limit or interfere with the plaintiff's opportunities to make and enforce employment contracts, in violation of § 1981.

The plaintiff contends that Macourt's refusal to provide him with a letter of reference on the occasion of their April 1, 2010 meeting was motivated by racial animus and that the defendants continued to discriminate against him in this manner following that meeting. The circumstances under which Macourt initially failed or refused to provide the plaintiff with a letter of reference are the same as those in which the defendants refused to reinstate the plaintiff to his former position. The plaintiff's declaration contains admissible evidence supporting his allegation of racial discrimination with respect to this aspect of his claim. Additionally, as noted

20

above, the plaintiff's deposition testimony also provides admissible evidence of discrimination:

> Q. When was the first time that you ever made a request to Ajna Bar for a letter of reference?
>
> A. When I talked to Mr. Macourt, because he said –
>
> Q. And when was that?
>
> A. That was around April 1st.
>
> Q. Was that the same conversation where you asked to be released?
>
> A. That was the same conversation, yes, because when refused, when he refused to let me see Mr. Haouzi, [I] said, you know, at least, please, if you don't want to give me my money, please give me just [a] reference so I can look for another job. He said, I don't want to talk to you, I don't want to see any Arabs here. This is the way he talked in French, you know. He said, "Je veu plu a le re de vu" – I'm not going to, but this is what he said. "I don't want to see any Arabs here, please don't come back.

Through their Rule 56.1 Statement, the defendants again rely on the theory that, because the plaintiff never made a written request for a letter of reference from Ajna Bar, the defendants' refusal to provide him with such a letter cannot have been motivated by racial animus. As discussed above, the defendants have provided no evidence that their business practices included a requirement that a request for a letter of reference be made in writing or that such a requirement was conveyed to the plaintiff. Furthermore, contrary to the defendants' contention, the plaintiff is not obligated, in establishing the existence of a genuine issue of material fact with respect to the defendants' motivation in refusing to provide him with a letter of reference, to identify each prospective employer who refused him employment based on his inability to

produce such a letter.[6]

By contrast, Azkour has not provided admissible evidence, either through his deposition testimony or the testimony provided through the Mualimmak declaration, that the defendants discriminated against him by giving a negative reference about him to a prospective employer(s). However, inasmuch as Azkour has established that a genuine issue of material fact exists with respect to his claim that the defendants' refusal to provide him with a letter of reference was motivated by racial animus, granting the defendants judgment, as a matter of law, on this aspect of their motion, is not warranted.

## RECOMMENDATION

For the reasons set forth above, I recommend that your Honor deny the defendants' motion for summary judgment, Docket Entry No. 190, with respect to the plaintiff's claims of intentional discrimination under § 1981.

---

[6]As noted above, the defendants subsequently offered to provide the plaintiff with a letter of reference in the context of the related FLSA action "on the condition that it be without prejudice to defendant's [sic] defenses in this case; that its decision to provide Mr. Azkour with such a letter at this time will not be admissible in this case and that it would not constitute any kind of admission by defendant [sic] that it wrongfully failed to provide plaintiff with such a letter or that it was under any legal obligation to do so." See Azkour v. Little Rest Twelve, Inc., No. 10-CV-4132, Doc. No. 183.  The plaintiff refused the offer on the ground that the defendants' failure to offer such a letter "without prior conditions" constituted a discriminatory act.

It is clear that the defendants, in offering to provide the plaintiff with a letter of reference, did not ask the plaintiff to relinquish any of his legal rights or claims.  See id., Doc. No. 187.  Additionally, it would appear that, three years later, in the context of litigation, the defendants had altered their position with respect to whether to provide the plaintiff with a letter of reference.  Nevertheless, under the circumstances, the defendants' subsequent offer of a letter of reference is not evidence of the absence of a genuine issue of material fact with respect to whether their refusal to provide such a letter in the first instance was racially motivated.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties shall have fourteen (14) days from service of this Report to file written

objections.  See also Fed. R. Civ. P. 6.  Such objections, and any responses to objections, shall be

filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable

Richard J. Sullivan, 40 Centre Street, Room 2104, New York, New York, 10007, and to the

chambers of the undersigned, 40 Centre Street, Room 425, New York, New York, 10007.  Any

requests for an extension of time for filing objections must be directed to Judge Sullivan.

***Failure to file objections within fourteen (14) days will result in a waiver of objections and***

***will preclude appellate review.***  See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985);

Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

Dated: New York, New York
      July 23, 2015

Copy mailed to:

Hicham Azkour

Respectfully submitted,

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

*azkour15.rr*

23