UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HICHAM AZKOUR,

                            Plaintiff,

        -v-                                                        No. 11-cv-5780 (RJS)
                                                                   <u>OPINION &amp; ORDER</u>

JEAN-YVES HAOUZI, *et al.*,

                            Defendants.

---

<u>RICHARD J. SULLIVAN</u>, District Judge:

        Plaintiff Hicham Azkour ("Plaintiff" or "Azkour"), proceeding *pro se*, brings this action

against Defendants Jean-Yves Haouzi ("Haouzi"), Franck Macourt ("Macourt"), Jessica

Comperiati ("Comperiati"), and Little Rest Twelve, Inc. ("LRT"), alleging that Defendants

unlawfully discriminated against him on the basis of his Arab ancestry in violation of 42 U.S.C. §

1981 ("Section 1981").  (Doc. No. 40.)

        Now before the Court is the Report and Recommendation of the Honorable Kevin

Nathaniel Fox, United States Magistrate Judge, recommending that the Court deny Defendants'

motion for summary judgment.  (Doc. No. 200 ("Report").)  For the reasons set forth below, the

Court partially adopts and partially rejects the Report.

I. BACKGROUND

A.  Facts

        LRT operated a restaurant and bar in Manhattan known as Ajna Bar, where Azkour worked

as a busboy between October 10, 2009 and February 14, 2010.  (Doc. No. 128 ¶ 28.)[1]  On March

---

[1] The facts are drawn from Defendants' Local Civil Rule 56.1 Statement (Doc. No. 193 ("Def. 56.1 Stmt.")), Plaintiff's
Counterstatement (Doc. No. 196 ("Opp'n 56.1")), the declarations submitted in support of and in opposition to the

30, 2010, Haouzi became a shareholder of LRT, and Macourt became general manager of the restaurant. (Doc. No. 128 ¶ 30; Doc. No. 195 ¶¶ 8–9.) Azkour alleges that shortly thereafter, "[a]ll ex-employees of Moroccan national origin – without exception – were summarily terminated by" LRT "without good cause" and were replaced by "less qualified, less experienced employees of a different national origin." (Doc. No. 195-3 at 32–33.) In support of this allegation, Azkour attaches the affidavit of Zouheir Nezili, a man of Moroccan origin who worked at the Ajna Bar from June 1, 2006 until April 1, 2010. (*Id.* at 32.)

On April 1, 2010 at approximately 4:00 p.m., Azkour visited the Ajna Bar for the purpose of reapplying for a job there. (Opp'n 56.1 ¶ 4; Doc. No. 195-1 at 22, 37.) Upon his arrival, Macourt overheard Azkour speaking Arabic with a waiter named Rashid. (Doc. No. 195-2 at 4–5.) Azkour asserts that he thereafter: (1) informed Macourt that he was Moroccan, (2) asked Macourt for the opportunity to reapply for a job at Ajna Bar, and (3) requested a letter of reference confirming he had once worked for Ajna Bar that he could use in connection with other job applications. (Doc. No. 195-2 at 4–5, 10.) Azkour acknowledges that he "was very, very, very persistent" in demanding that he be rehired or receive a letter of reference. (*Id.* at 4.) Azkour testified at his deposition that Macourt responded by becoming "irascible," informing Azkour that he did not "want to see any Arabs here," and instructing him not to "come back." (*Id.* at 5–6.) Azkour also testified that Macourt refused to provide him with a letter of reference. (*Id.* at 58:6–7.)

---

motion, and the exhibits attached thereto (Doc. Nos. 191, 195). Unless otherwise noted, where only one party's 56.1 Statement or Counterstatement is cited, the other party does not dispute the fact asserted, has offered no admissible evidence to refute that fact, or merely objects to inferences drawn from that fact. The Court has also considered Defendants' memorandum of law in support of their motion (Doc. No. 192 ("Mem.")), Plaintiff's opposition brief (Doc. No. 197 ("Opp'n")), Defendants' reply (Doc. No. 198 ("Reply")), Plaintiff's objections to the Report (Doc. Nos. 203, 206), and Defendants' objections to the Report (Doc. No. 204, 205).

B.  Procedural History

1.  The FLSA Action

On May 19, 2010, Azkour brought suit against LRT and certain of its former officers alleging violations of the Fair Labor Standards Act and the New York Labor Law, including failure to pay minimum wage and overtime during his brief employment at the Ajna Bar between October 2009 and February 2010, as well as retaliatory termination.  (Doc. No. 10-cv-4132 (RJS), Doc. No. 1 (the "FLSA Action").)  After Azkour obtained partial summary judgment against LRT on his FLSA retaliation claim, the Court held a trial on damages on July 21 and July 22, 2014 to determine principally whether Azkour's unemployment between February 14, 2010 and the date of trial had been proximately caused by Defendant's unlawful retaliatory termination.  Although Azkour argued that he was entitled to back pay for the entire period, LRT argued that Azkour's prolonged period of unemployment was proximately caused by:  (1) Azkour's inability to work due to his acknowledged mental illness, and/or (2) his failure to reasonably attempt to find comparable work.  (No. 10-cv-4132 (RJS), Doc. No. 295 at 231:24–232:5.)  The jury also considered whether Azkour was entitled to punitive damages.

On July 22, 2014, the jury reached a verdict in which it concluded that LRT proximately caused 12 weeks of Azkour's unemployment – in other words, the jury found that Azkour was only entitled to back pay for the period between February 14, 2010 and May 9, 2010.  (No. 10-cv-4132 (RJS), Doc. No. 279.)   The jury also awarded Azkour $50,000 in punitive damages.  On February 12, 2015, the Court issued a post-trial decision, which denied Azkour's motion for judgment as a matter of law on the issue of back pay, granted Defendants' motion for judgment as a matter of law on the issue of punitive damages, and resolved all other remaining post-trial issues in the FLSA Action.  *Azkour v. Little Rest Twelve*, No. 10-cv-4132 (RJS), 2015 WL 631377, at *1

3

(S.D.N.Y. Feb. 12, 2015).  Azkour thereafter appealed the Court's ruling, which was affirmed by the Second Circuit in its entirety on April 14, 2016.  *Azkour v. Little Rest Twelve*, 645 F. App'x 98 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 390, *reh'g denied*, 137 S. Ct. 716 (2017).

On August 9, 2016, March 9, 2017, and March 17, 2017, Azkour submitted letters requesting vacatur of the judgments in the FLSA Action under Rule 60 of the Federal Rules of Civil Procedure.  (No. 10-cv-4132 (RJS), Doc. Nos. 349, 351, 352.)  On April 28, 2017, the Court denied the vacatur motion.  *Azkour v. Little Rest Twelve*, No. 10-cv-4132 (RJS), 2017 WL 1609125, at *9 (S.D.N.Y. Apr. 28, 2017).  On May 26, 2017, Azkour submitted a declaration and brief in support of his motion for reconsideration of its denial of his vacatur motion, which the Court denied the same day.  (No. 10-cv-4132 (RJS), Doc. Nos. 356, 357, 358.)  Azkour thereafter filed a notice of appeal of the denial of his vacatur motion to the Second Circuit on June 29, 2017 (Doc. No. 359), even though the Court denied Azkour *in forma pauperis* status for the purpose of appeal because any appeal would "lack[] an arguable basis in law or fact," *Azkour*, 2017 WL 1609125, at *9 (citing *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995)).

## 2.  The Civil Rights Action

On August 8, 2011, while the FLSA Action was proceeding, Azkour filed the instant suit against LRT and its new management – Haouzi, Macourt, and Comperiati – for employment discrimination in violation of Section 1981.  (Doc. No. 2 (the "Civil Rights Action").)  The Civil Rights Action is predicated on a different legal theory from the FLSA Action.  Specifically, Azkour avers that the managers who took control of LRT on March 30, 2010 – Haouzi, Macourt, and Comperiati – failed to rehire him, declined to provide a letter of reference, and provided negative references about him to prospective employers because of his Arab ancestry.  (Doc. No. 40 ¶¶ 6, 58–59.)  Critically, however, Azkour sought the same remedy against LRT in both cases – that is,

back pay for the period following Defendants' alleged adverse employment actions.  (Doc. No. 40 ¶¶ 26, 48.)[2]

On December 3, 2014, following the close of discovery, Defendants submitted a motion for summary judgment, along with a brief, declaration in support of their motion, and a Local Civil Rule 56.1 Statement.  (Doc. Nos. 190, 191, 192, 193.)  On December 11, 2014, Azkour filed a declaration in response to Defendant's motion, a "response to Defendants' Rule 56.1 Statement," and an opposition brief.  (Doc Nos. 195, 196, 197.)  On December 18, 2014, Defendants filed a reply.  (Doc. No. 198.)  On July 24, 2015, Judge Fox, to whom the Court referred the motion for a report and recommendation, filed the instant Report, in which he recommended that the Court deny Defendants' motion for summary judgment.  (Doc. No. 200.)  On September 8, 2015, both parties submitted objections to the Report.  (Doc. Nos. 203, 204.)  On September 8, 2015, Defendants filed a letter responding to Plaintiff's objections, and on September 11, 2015, Azkour filed a letter responding to Defendants' objections.  (Doc. Nos. 205, 206.)  Since that time, Azkour has barraged this Court with "numerous" submissions containing "offensive statements, personal insults, and threats directed at, and clearly intended to harass and intimidate, Defendants, their counsel, and even the Court."  (Doc. No. 217 at 11; *see also* Doc. Nos. 206, 210, 213, 215, 223; No. 10-cv-4132 (RJS), Doc. Nos. 349, 351, 352.)  These submissions have undoubtedly prolonged this litigation and prompted the Court to issue orders in this case and the FLSA case admonishing Plaintiff and setting conditions on when and how he may make Court filings.  (Doc. No. 217; *see also* No. 10-cv-4132 (RJS), Doc. Nos. 355, 358.)

---

[2] Although Azkour also brought claims for discrimination based on disability and age, retaliation, conspiracy, defamation, and intentional infliction of emotional distress (Doc. No. 40), the Court dismissed these claims for failure to state a claim upon which relief could be granted, *see Azkour v. Haouzi*, No. 11-cv-5780 (RJS) (KNF), 2013 WL 3972462, at *1 (S.D.N.Y. Aug. 1, 2013).

II.  LEGAL STANDARD

A.  Summary Judgment

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  There is "no genuine dispute as to any material fact" where (1) the parties agree on all facts (that is, there are no disputed facts); (2) the parties disagree on some or all facts, but a reasonable fact-finder could never accept the nonmoving party's version of the facts (that is, there are no genuinely disputed facts), *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); or (3) the parties disagree on some or all facts, but even on the nonmoving party's version of the facts, the moving party would win as a matter of law (that is, none of the factual disputes are material), *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a fact is genuinely disputed, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments."  *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996).  Nevertheless, to show a genuine dispute, the nonmoving party must provide "hard evidence," *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (internal quotation marks omitted).  "Conclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998), as well as the existence of a mere "scintilla of evidence in support of the [nonmoving party's] position," *Anderson*, 477 U.S. at 252, are insufficient to create a genuinely disputed fact.  A moving party is "entitled to judgment as a matter of law" on an issue

6

if (1) it bears the burden of proof on the issue and the undisputed facts meet that burden; or (2) the nonmoving party bears the burden of proof on the issue and the moving party "'show[s]'– that is, point[s] out . . . – that there is an absence of evidence [in the record] to support the nonmoving party's [position]." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

The Court must construe a *pro se* party's submissions "liberally and interpret[] [them] 'to raise the strongest arguments that they suggest.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). Even so, "[a] *pro se* plaintiff . . . cannot defeat a motion for summary judgment by simply relying on the allegations of his complaint; he must present admissible evidence from which a reasonable jury could find in his favor." *Belpasso v. Port Auth. of N.Y. & N.J.*, 400 F. App'x 600, 601 (2d Cir. 2010) (citing *Champion v. Artuz*, 76 F.3d 483, 485 (2d Cir. 1996)).

B. Review of a Magistrate Judge's Report and Recommendation

A district court may accept, reject, or modify, in whole or in part, the findings or recommendations made by a magistrate judge. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Grassia v. Scully*, 892 F.2d 16, 19 (2d Cir. 1989). If a party "properly objects to – that is, raises objections that are clearly aimed at particular findings in – the magistrate judge's report, the district court reviews those findings *de novo*." *Faucette v. Comm'r of Soc. Sec.*, No. 13-cv-4851 (RJS) (HBP), 2015 WL 5773565, at *2 (S.D.N.Y. Sept. 30, 2015) (citations omitted); *see also Maguire v. Mawn*, No. 02-cv-2164 (RJH) (MHD), 2004 WL 1124673, at *2 (S.D.N.Y. May 19, 2004) ("[T]he court is required to make a *de novo* determination of those portions of a report to which objection is made, . . . by reviewing 'the [r]eport, the record, applicable legal authorities," and the parties' 'objections and replies.'" (quoting *Badhan v. Lab. Corp. of Am.*, 234 F. Supp. 2d 313, 316 (S.D.N.Y. 2002))).

Conversely, a court may accept those portions of a report to which no specific, written objection is made, as long as the factual and legal bases supporting the findings are not clearly erroneous. *See Greene v. WCI Holdings Corp.*, 956 F. Supp. 509, 513 (S.D.N.Y. 1997) (citing Fed. R. Civ. P. 72(b) and *Thomas v. Arn*, 474 U.S. 140, 149 (1985)). Similarly, "if the objections are improper" – including "because they are conclusory, general, or simply rehash or reiterate the original briefs to the magistrate judge" – that "will not suffice to invoke *de novo* review . . . , and the district court will review the magistrate's report only for clear error." *Faucette*, 2015 WL 5773565, at *2 (citations omitted). Furthermore, "a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not." *Fisher v. O'Brien*, No. 09-cv-42 (CBA) (LB), 2010 WL 1286365, at *1 (E.D.N.Y. Mar. 30, 2010) (quoting *Sci. Components Corp. v. Sirenza Microdevices, Inc.*, No. 03-cv-1851 (NGG) (RML), 2006 WL 2524187, at *2 (E.D.N.Y. Aug. 30, 2006)). A magistrate judge's decision is clearly erroneous only if the district court is "left with the definite and firm conviction that a mistake has been committed." *SEC v. Cobalt Multifamily Investors I, Inc.*, 542 F. Supp. 2d 277, 279 (S.D.N.Y. 2008) (quoting *Chen v. Bd. of Immigration Appeals*, 435 F.3d 141, 145–46 (2d Cir. 2006)).

## III.  Discussion

Here, Azkour's only remaining cause of action is his claim for racial discrimination. Under Section 1981, "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Thus, Section 1981 "outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment." *Patterson v. Cty. of Oneida*, 375 F.3d 206,

224 (2d Cir. 2004).  It is well settled that discrimination "based on the fact that" a person "was born an Arab" is cognizable under Section 1981. *St. Francis Coll. v. Al–Khazraji,* 481 U.S. 604, 613 (1987) (concluding that "Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics" under Section 1981); *Vill. of Freeport v. Barrella*, 814 F.3d 594, 607 (2d Cir. 2016) (noting that, for purposes of Section 1981, "'race' encompasses ethnicity").  And while "Section 1981 prohibits discrimination on the basis of race but not on the basis of national origin," *Barrella*, 814 F.3d at 606, evidence of national origin discrimination may nonetheless be probative of racial discrimination under certain circumstances, *see Deravin v. Kerik*, 335 F.3d 195, 201 & n.5 (2d Cir. 2003) ("[R]ace and national origin discrimination may present identical factual issues when a victim is 'born in a nation whose primary stock is one's own ethnic group.'") (citation omitted).

As set forth earlier, Azkour brings his Section 1981 claim against LRT, Haouzi, Macourt, and Comperiati alleging that Defendants discriminated against him based on his Arab ancestry by: (1) failing to rehire him, (2) refusing to provide a letter of reference for him for use in other employment applications, and (3) providing negative references regarding Azkour to prospective employers.  (*See* Doc. No. 40.)  Both parties have submitted objections to the Report.  Azkour insists that Judge Fox erred in not recommending that he be granted summary judgment.  (Doc. No. 203.)  In his supplemental letter, Azkour also argues that Defendants failed to comply with Local Civil Rule 56.2.  (Doc. No. 206.)  For their part, Defendants assert that Judge Fox: (1) failed to address Defendants' argument that there was no evidence to support a finding of individual liability against Haouzi and Comperiati (Doc. No. 204 at 13); (2) misapplied the relevant legal standard by failing to grant summary judgment to Defendants on their negative-reference claim

(*id.* at 12); and (3) as a general matter, erred in not granting Defendants summary judgment (*id.* at 9–12).  The Court considers each of these objections to the Report in turn.

### A.  Azkour's Objections

The Court first turns to Azkour's contention that Judge Fox erred in not recommending summary judgment in *his* favor.  (Doc. No. 203.)  In raising this objection, Azkour appears to argue that he in fact brought a motion for summary judgment before Judge Fox.  (*See, e.g.*, Doc. No. 203 at 5 (faulting Judge Fox for not addressing his "request for summary judgment"); *see also id.* at 2 (insisting that Judge Fox erred in "fail[ing] to construe and interpret Plaintiff's submissions, despite their clarity, as an explicit request for summary judgment . . . .").  However, the record is clear that Azkour never submitted a notice of a motion for summary judgment, nor did he ever submit a statement under Local Civil Rule 56.1(a) setting forth "the material facts as to which" he "contend[ed] there [was] no genuine issue to be tried."   Rather, Azkour submitted:  (1) a declaration in "*response* to Defendants' motion for summary judgment," (2) a statement of *disputed* issues of fact pursuant to Local Civil Rule 56.1(b), and (3) a memorandum in "*response* to Defendants' motion for summary judgment."  (Doc. Nos. 195, 196, 197 (emphasis added).)  It is true, as Azkour notes, that Judge Fox was required to construe Azkour's submissions "liberally" and to "interpret them to raise the strongest arguments that they suggest."  *Burgos*, 14 F.3d at 790. It is also true that on the last page of his response brief, Azkour did assert that the Court should "[g]rant summary judgment in [his] favor."  (Opp'n 28.)  But it is also well settled that Plaintiff's *pro se* status "does not exempt [him] from compliance with relevant rules of procedural and substantive law."  *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (citation omitted).  And while "a court may grant summary judgment in favor of a non-moving party" when (1) "there are no genuine issues of material fact," (2) "the law is on the side of the nonmoving party," and (3) "the

moving party had an adequate opportunity to come forward with all of its evidence," *Skyline Steel, LLC v. PilePro, LLC*, 101 F. Supp. 3d 394, 406 (S.D.N.Y. 2015) (citation and internal quotation marks omitted), there was no reason for Judge Fox to do so here, since, as set forth in greater detail in the next section, there clearly are genuine disputes of fact as to whether LRT and Macourt illegally discriminated against Azkour on account of his Arab ancestry.

Azkour also asserts that he was not served with a notice under Local Civil Rule 56.2, as is required whenever a represented party moves for summary judgment against a *pro se* party.  (Doc. No. 206 at 2.)   "Local Civil Rule 56.2 requires the represented party to serve the *pro se* litigant with a form notice regarding the procedure for opposing summary judgment."  *James v. Brown*, No. 14-cv-1767 (GHW), 2016 WL 3945688, at *3 n.5 (S.D.N.Y. July 19, 2016) (quoting *Hinds v. Chexsystem Consumer Relations*, No. 14-cv-0342 (JS) (AYS), 2015 WL 5794256, at *1 (E.D.N.Y. Sept. 30, 2015)).   "The Rule 56.2 notice generally explains the summary judgment process and warns a *pro se* litigant that dismissal of the complaint may result in the event of a failure to respond to the motion on time by filing sworn affidavits and/or other documents as required by Rule 56(c) of the Federal Rules of Civil Procedure and by Local Civil Rule 56.1."  *Id.*  The purpose of Local Civil Rule 56.2 is to ensure that *pro se* parties are aware of the need to present admissible evidence at the summary judgment stage, since "it is not obvious to a layman that a motion for summary judgment supported by affidavits requires a response supported by similar affidavits in order to preserve factual disputes for trial."  *Sawyer v. Am. Fed'n of Gov't Emps., AFL-CIO*, 180 F.3d 31, 34 (2d Cir. 1999).

A defendant's failure to provide a notice under Local Civil Rule 56.2 "can be grounds for denial of a motion for summary judgment," but it is not dispositive.  *See, e.g.*, *Jones v. Hirschfeld*, No. 01-cv-7585 (PKL), 2003 WL 21415323, at *4 (S.D.N.Y. June 19, 2003).  Rather, when a

represented party fails to provide proper notice under Local Civil Rule 56.2, the Second Circuit has instructed courts to consider "whether from all of the circumstances, including the papers filed by the *pro se* litigant, it is reasonably apparent that the litigant understood the nature of the adversary's summary judgment motion and the consequences of not properly opposing it." *Sawyer*, 180 F.3d at 35 (excusing represented defendant's non-compliance with Rule 56.2 where plaintiff's submissions indicated that "he understood his burden to produce evidence opposing the motion for summary judgment"); *accord Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 621 (2d Cir. 1999) (district court may reach merits of summary judgment motion brought against *pro se* party "where the record . . . makes clear that the litigant understood the nature and consequences of summary judgment").  For example, the Second Circuit affirmed a district court's decision to reach the merits of a summary judgment motion where, notwithstanding the represented defendant's failure to provide a Rule 56.2 notice, the *pro se* plaintiff "submitted a statement of disputed facts" pursuant to Local Civil Rule 56.1(b) and "over 300 pages of exhibits." *Chepak v. N.Y. City Health & Hosps. Corp.*, 643 F. App'x 62, 63 (2d Cir. 2016); *see also, e.g.*, *Pena v. Recore*, No. 95-cv-5307 (FB), 2001 WL 262986, at *3 (E.D.N.Y. Mar. 14, 2001), *aff'd*, 110 F. App'x 189 (2d Cir. 2004) (addressing merits of summary judgment motion, notwithstanding the fact that "defendants did not strictly comply with Rule 56.2," in light of *pro se* plaintiff's submission of exhibits, a supporting affidavit, and a Local Civil Rule 56.1 statement).

Here, there is no evidence on the docket – such as an affidavit of service – reflecting that Defendants ever provided a proper Rule 56.2 notice to Azkour.  Nonetheless, as Azkour's submissions make clear, he was well aware of the consequences of failing to respond to Defendants' motion with admissible evidence.  Indeed, Azkour submitted a statement of disputed facts under Local Civil Rule 56.1(b) (Doc. No. 196) and included a declaration to which he

attached his own affidavit, his deposition testimony, the declaration of Cha'mesh Omer Maulimmak, and the affidavit of Zouheir Nezili (Doc. No. 195).  In fact, Azkour attached more exhibits in support of his opposition to the summary judgment motion than Defendants did in support of their own motion.  Defendants, in fact, submitted a single exhibit, which merely contained excerpts from Azkour's deposition testimony to their declaration.  (Doc. No. 191.)  In addition, Azkour's brief accurately restates the governing standard under Rule 56 and cites relevant Supreme Court precedent.  (Opp'n 3–4 (citing *Celotex Corp.,* 477 U.S. at 322; *Anderson*, 477 U.S. at 250; and *Adickes*, 398 U.S. at 157).)  Accordingly, the Court is satisfied that, notwithstanding Defendants' apparent failure to comply with Local Civil Rule 56.2, Azkour "understood his burden to produce evidence opposing the motion for summary judgment." *Sawyer*, 180 F.3d at 35.  Thus, the Court reaches the merits of Defendants' summary judgment motion.

## B.  Defendants' Objections

### 1.  Haouzi's and Comperiati's Individual Liability

The Court next turns to Defendants' objections.  As Defendants note, correctly, Judge Fox failed to separately address the sufficiency of the evidence against Haouzi and Comperiati, even though Defendants argued in their brief that Azkour had not proffered any evidence supporting individual liability against these two Defendants under Section 1981.  (Doc. No. 204 at 13; *see also* Mem. 11, Reply 5.)  The Court finds that this objection is "sufficiently specific" to warrant *de novo* review.  *N. Shore-Long Island Jewish Health Care Sys., Inc. v. MultiPlan, Inc.*, 953 F. Supp. 2d 419, 425 n.6 (E.D.N.Y. 2013) (considering objection to report and recommendation *de novo* where objecting party had not "simply duplicat[ed] arguments already disposed of in the R&R," but "rather . . . directly target[ed]" the report and recommendation's "grounds" for its

conclusion, thereby articulating "why this [c]ourt should not accept" the magistrate judge's "ultimate conclusion").

In order to hold Haouzi or Comperiati liable under Section 1981, Azkour must show "some affirmative link to causally connect the actor with the discriminatory action." *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000). This is because "individual liability exists [under Section 1981] only where a defendant 'actually participate[d] in the conduct giving rise to a discrimination claim.'" *Nieblas-Love v. N.Y. City Hous. Auth.*, 165 F. Supp. 3d 51, 75–76 (S.D.N.Y. 2016) (quoting *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004)). Personal involvement can be established under Section 1981 by showing that a defendant: (1) "participated directly" in the unlawful discriminatory act; (2) "failed to remedy the wrong" after having been "informed of the violation"; (3) "created a policy or custom" under which the unlawful discriminatory practices occurred, "or allowed the continuance of such a policy or custom"; (4) "was grossly negligent in supervising subordinates who committed the wrongful acts"; or (5) "exhibited deliberate indifference . . . by failing to act on information indicating that" unlawful discrimination was "occurring." *Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir. 2015) (internal citation omitted).

Here, Azkour admits that he had neither met nor spoken with either Haouzi or Comperiati prior to bringing suit against them in 2011. (Opp'n 56.1 ¶ 2.) Furthermore, Azkour has failed to point to any evidence that either Haouzi or Comperiati was ever involved with or had any knowledge of the decisions not to rehire Azkour or provide him with a reference; in fact, Azkour fails to even *mention* either Haouzi or Comperiati in his Rule 56.1 opposition statement. *See Patterson*, 375 F.3d at 229 (granting summary judgment in favor of Section 1981 defendants where, as here, plaintiff pointed to "no evidence" of defendants' "personal involvement in, or even

14

knowledge of, the alleged" unlawful discriminatory conduct); *see also Monahan v. N.Y. City Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000) (noting that a court "is not required to consider what the parties fail to point out" in their Rule 56.1 statements). And even assuming, as Azkour avers, that Haouzi is a 15% shareholder of Ajna Bar (Doc. No. 40 ¶ 5), it is also well settled that the mere fact that a defendant owns shares in a corporate employer is insufficient to establish liability under Section 1981, *see Whidbee*, 223 F.3d at 75.

It is true that Azkour has introduced testimony from LRT employee Zouheir Nezili that other employees of Moroccan origin were terminated and were replaced by "less qualified, less experienced employees of a different national origin" around April 1, 2010. (Doc. No. 195-3 at 33.) But Azkour has not pointed to any evidence that either Haouzi or Comperiati had any involvement in the creation of such policy or was negligent in supervising subordinates who engaged in unlawful employment discrimination. Accordingly, the Court concludes that Judge Fox erred and that summary judgment should be granted in Haouzi's and Comperiati's favor.

## 2. Negative-Reference Claim

The Court next turns to Defendants' objection regarding Judge Fox's treatment of Azkour's negative-reference claim. As Judge Fox himself acknowledged, Azkour "has not provided admissible evidence" that Defendants "discriminated against him by giving a negative reference about him to a prospective employer(s)." (Report 22.) Defendants contend that Judge Fox plainly misapplied the appropriate standard under Rule 56 in declining to recommend summary judgment on this aspect of Azkour's Section 1981 cause of action.

The Court agrees. It is true that "a former employer's . . . circulation of negative references to a plaintiff's potential future employer," if motivated by an unlawful discriminatory purpose, may give rise to liability under Section 1981 under certain circumstances. *Corbett v. Napolitano*,

15

897 F. Supp. 2d 96, 112 (E.D.N.Y. 2012) (citing *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 178–79 (2d Cir. 2005) and *Pantchenko v. C.B. Dolge Co.*, 581 F.2d 1052, 1055 (2d Cir. 1978)).  Nonetheless, the law is equally clear that a nonmoving party must provide "hard evidence" at summary judgment, *D'Amico*, 132 F.3d at 149, "from which a reasonable inference in [his] favor may be drawn," *Binder & Binder*, 481 F.3d at 148 (internal quotation marks omitted), and plaintiffs "cannot defeat summary judgment by relying on allegations in their pleadings," *Murphy v. Lajaunie*, No. 13-cv-6503 (RJS), 2016 WL 1192689, at *6 (S.D.N.Y. Mar. 22, 2016) (citing *Gottlieb v. Cty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996)).  Since – as Judge Fox himself noted – Azkour failed to cite any admissible evidence to support an inference that Defendants provided a negative reference about him to prospective employers, it is obvious that summary judgment should have been granted in Defendants' favor on this aspect of Azkour's Section 1981 claim.[3] Therefore, the Court grants summary judgment to Defendants on the negative-reference claim.

### 3.  Failure-to-Hire and Letter-of-Reference Claims

Next, the Court considers Defendants' argument that Judge Fox erred in not granting the remaining Defendants – Macourt and LRT – summary judgment on Plaintiff's claims that Defendants failed to rehire him or provide him with a letter of reference.  (Doc. No. 204 at 9–12.) In this portion of their objections, Defendants simply rehash arguments that they made in their opening brief (*see* Doc. Nos. 192, 198), which Judge Fox already considered and addressed in his Report (*see* Doc. No. 200).  Accordingly, the Court reviews this objection for clear error.  *See Kalderon v. Finkelstein*, No. 08-cv-9440 (RJS), 2010 WL 3359473, at *2 (S.D.N.Y. Aug. 25, 2010) (applying clear error review where party's "objection merely reiterates an argument that [it] has already made and that the Report thoroughly addresses"), *aff'd*, 495 F. App'x 103 (2d Cir.

---

[3] While Defendants' objection is sufficiently specific to warrant *de novo* review, *see MultiPlan, Inc.*, 953 F. Supp. 2d at 425, the Court notes that it would reach the same result under clear error review as well.

2012); *accord Stevens v. Griffin*, No. 13-cv-5170 (RJS), 2016 WL 3670825, at *2 (S.D.N.Y. July 5, 2016); *DiPilato v. 7-Eleven, Inc.*, 662 F. Supp. 2d 333, 339 (S.D.N.Y. 2009).

As noted above, Section 1981 "prohibits discrimination based on race in the making and enforcement of contracts," including employment contracts. *Anderson*, 156 F.3d at 170; *see also Tolbert v. Smith*, 790 F.3d 427, 436 (2d Cir. 2015) ("Refusing to award a contract or a material employment benefit for a discriminatory reason violates [Section 1981]."). "To establish a claim for unlawful race discrimination under Section 1981," the plaintiff "must show: (1) that [he] is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) that the discrimination concerned one or more of the activities enumerated in § 1981." *Lauture v. Int'l Bus. Machines Corp.*, 216 F.3d 258, 261 (2d Cir. 2000).

Here, Judge Fox correctly concluded that Azkour provided sufficient evidence of his membership in a "racial minority" within the meaning of Section 1981 – namely, he is of Arab descent – to satisfy the first element. *See St. Francis Coll.,* 481 U.S. at 613. Judge Fox also correctly found that Azkour presented enough facts to meet the third element, since refusal to rehire and to provide a letter of reference are cognizable adverse employment actions under Section 1981. *See, e.g.*, *Yetman v. Capital Dist. Transp. Auth.*, 669 F. App'x 594, 595 (2d Cir. 2016) (noting that decision not to rehire may constitute adverse employment action); *Costantin v. N.Y. City Fire Dep't*, No. 06-cv-4631 (GBD) (THK), 2009 WL 3053851, at *13 (S.D.N.Y. Sept. 22, 2009) (noting that an employer's "failure to provide" a reference letter may "amount[] to an adverse action").

With respect to the second element, Judge Fox also found that there was a genuine dispute as to whether Defendants intentionally discriminated against Azkour on the basis of his Arab ancestry. Judge Fox relied primarily on Azkour's testimony that – after Macourt, the general

manager of the Ajna Bar, heard him speaking Arabic – Macourt refused his requests for reinstatement and for a letter of reference and instead informed Azkour that he did not "want to see any Arabs here."  (Doc. No. 195-2 at 5.)  In addition, Judge Fox relied on the testimony of Zouheir Nezili, a former LRT employee who attested that that "[a]ll ex-employees of Moroccan national origin – without exception – were summarily terminated by" LRT "without good cause" around April 1, 2010, the same day Azkour's employment application was allegedly rejected, and were replaced by "less qualified, less experienced employees of a different national origin."  (Doc. No. 195-3 at 33.)

To survive summary judgment on the second element, a plaintiff must present either (1) "direct evidence of discrimination" or (2) indirect evidence of discrimination that satisfies the three-step burden-shifting approach articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973).  *See Ruiz v. Cty. of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010).  Although Judge Fox appears to have relied on the *McDonnell Douglas* test, the Court is persuaded that Macourt's alleged statements actually constitute direct evidence of discrimination, which on this record is sufficient to defeat summary judgment.  *See Bookman v. Merrill Lynch*, No. 02-cv-1108 (RJS), 2009 WL 1360673, at *12 n.6, 13 (S.D.N.Y. May 14, 2009) (explaining that a remark "directly reflects a discriminatory attitude" where "the speaker is preoccupied with a [protected] classification in a setting where a focus on other issues would ordinarily be expected," or where the speaker "(1) makes a reference to a [protected] class *and* (2) provides some indication that membership in such a class is disapproved of" (citation omitted)).  Furthermore, even though Macourt's statement alone would justify denial of summary judgment on Azkour's Section 1981 claim, Nezili's testimony also supports denial of summary judgment.  Although, as noted earlier, "Section 1981 prohibits discrimination on the basis of race but not on

18

the basis of national origin," *Barrella*, 814 F.3d at 606, this evidence is nonetheless relevant to Azkour's claim of racial discrimination, since Morocco's population predominantly descends from Arab and/or Berber ancestry, *see Kerik*, 335 F.3d at 201 n.5 (explaining that even though "race and national origin discrimination are not identical, 'national origin discrimination could be used [by a jury], together with other evidence, to arrive at a conclusion vis-a-vis race discrimination'" (citation omitted)); *see also* CIA, the World Facebook: Morocco, *available at* https://perma.cc/47M4-U332 (last visited July 15, 2017) (noting that 99% of Moroccans are "Arab-Berber"); *Morocco Constitution*, June 17, 2011, *available at* https://perma.cc/N8TW-WTEF (last visited July 15, 2017) (recognizing that Morocco's "national identity . . . is forged by the convergence of its Arab-Islamist, Berber [amazighe] and Saharan-Hassanic [saharo-hassanie] components").

Of course, Defendants contend that their refusal to rehire or write letters of reference for Azkour was prompted not by discrimination, but rather as a result of Azkour's unruly behavior. (*See* Doc. No. 204 (asserting that Macourt decided "to chase away an unknown pest demanding money")).) Indeed, it is well settled that "confrontational and unprofessional behavior" is a legitimate, non-discriminatory reason not to hire, *see Hartley v. Rubio*, 785 F. Supp. 2d 165, 179 (S.D.N.Y. 2011), and Azkour concedes in his testimony that he "was very, very, very persistent" in demanding that he be rehired (Doc. No. 195-2 at 4). Furthermore, although Judge Fox did not consider the record of the July 2014 trial in the FLSA Case, the Court notes that "the voluminous evidence" introduced in that case regarding "Defendant's mental illness and highly unstable behavior" might also support a factfinder's conclusion that Azkour was rebuffed not because of his Arab ancestry but because of his unruly conduct. (*See* No. 10-cv-4132 (RJS), Doc. No. 355 at 11; *see also id.* at 2–4, 9–10.) But given the competing facts and inferences that could be drawn

on this summary judgment record, it is clear that the ultimate question of whether LRT and Macourt illegally discriminated against Azkour by refusing to rehire him and provide a letter of reference is one for the jury.

In their objections to the Report, Defendants nevertheless urge the Court to disregard Azkour's self-serving deposition testimony and "to consider the policy implications of finding that plaintiff's testimony establishes a genuine factual issue concerning a claim that defendants failed to hire him." (Doc. No. 204 at 10 (insisting that "[i]f that is all it takes to survive summary judgment, every single litigant could overwhelm the courts with new and successive discrimination and retaliation claims by merely showing up at their former place of employment and making a scene").) But Defendants overlook the fact that Azkour introduced more exhibits – including the relevant Nezili affidavit – than Defendants did. Thus, Defendants' assertion that Azkour relied entirely on his self-serving testimony in opposing their motion is simply incorrect. And in any event, it is hornbook law that the Court must "eschew credibility assessments" and "draw all reasonable inferences in favor of" the non-moving party. *Weyant*, 101 F.3d at 854; *see also Holtz v. Rockefeller & Co.*, 258 F.3d 62, 78 (2d Cir. 2001) (although testimony "consist[ing] largely of [plaintiff's] uncorroborated accounts of what [defendant] said" was "the only evidence in the record directly ascribing discriminatory intent" to Defendant, such statements were sufficient "to raise a genuine issue of fact as to the defendant's intent").

Accordingly, the Court finds that Judge Fox did not clearly err in recommending denial of summary judgment to LRT and to Macourt on Azkour's Section 1981 claim predicated on Defendants' alleged failure to rehire and to provide a letter of reference for Azkour. In fact, the Court would reach the same conclusion even if it were to review this portion of the Report *de novo*.

IV. ISSUE PRECLUSION

Surprisingly, Defendants did not raise the issue of collateral estoppel in their briefs before Judge Fox, even though they submitted their summary judgment motion several months after the trial in the FLSA Action. "Under the doctrine of collateral estoppel (issue preclusion), a plaintiff is prevented from 'relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding.'" *Austin v. Downs, Rachlin & Martin Burlington St. Johnsbury*, 270 F. App'x 52, 53 (2d Cir. 2008) (quoting *Marvel Chars., Inc. v. Simon*, 310 F.3d 280, 288 (2d Cir. 2002)). It is well settled that a district court may invoke collateral estoppel *sua sponte*. *See Curry v. City of Syracuse*, 316 F.3d 324, 331 (2d Cir. 2003); *Grieve v. Tamerin*, 269 F.3d 149, 154 (2d Cir. 2001); *Doe v. Pfrommer*, 148 F.3d 73, 80 (2d Cir. 1998). This is because "principles of preclusion involve more than the rights and interests of the parties. They also serve important interests of the public and the courts in avoiding repetitive litigation and potentially inconsistent decisions." *Grieve*, 269 F.3d at 154. Nevertheless, before applying collateral estoppel *sua sponte*, district courts must ensure that the parties have "notice" of its potential application and an "opportunity to respond." *Curry*, 316 F.3d at 331.

The remedy for racial discrimination under Section 1981 ordinarily is "an award of back pay from the date of [the plaintiff's] termination until the date of judgment," which is designed to "completely redress the economic injury the plaintiff has suffered as a result of discrimination." *Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 144 (2d Cir. 1993). A plaintiff cannot obtain "back pay for a period when [he] would have been unable, due to an intervening disability, to continue employment." *Thornley v. Penton Pub., Inc.*, 104 F.3d 26, 31 (2d Cir. 1997) (citation omitted). Similarly, "a victim of employment discrimination has the duty to mitigate his damages by 'us[ing] reasonable diligence in finding other suitable employment.'" *Jowers v. DME Interactive Holdings,*

*Inc.*, No. 00-cv-4753 (LTS) (KNF), 2006 WL 1408671, at *10 (S.D.N.Y. May 22, 2006) (quoting *Clarke v. Frank*, 960 F.2d 1146, 1152 (2d Cir. 1992)).

Here, the Court has already held a two-day trial in the FLSA Case, in which the jury considered Azkour's entitlement to back pay for the period between February 14, 2010 and July 22, 2014 and found that Azkour was only entitled to recover twelve weeks of back pay – that is, back pay for the time period ranging from February 14, 2010 through May 9, 2010. *Azkour*, 2015 WL 631377, at *3. The jury limited Azkour's damages either because he: (1) failed to "reasonably attempt to mitigate his damages despite the availability of similar work elsewhere," or (2) was unemployable as a result of a severe mental impairment. *Id.*; *accord Azkour*, 645 F. App'x at 101 (concluding that the "trial evidence indicating that Azkour either (a) failed to make reasonable efforts at re-employment, or (b) became disabled from employment, was sufficient to allow the jury reasonably to conclude that defendant's retaliatory discharge was the cause of 12 weeks of Azkour's unemployment, not 231 weeks").

It would therefore appear that the jury's findings in the FLSA Case preclude Azkour from seeking back pay for the period following May 9, 2010. Even so, the parties have not received "notice" of the Court's possible consideration of issue preclusion, nor have they had the "opportunity to respond." *Curry*, 316 F.3d at 331. Accordingly, the Court will direct Azkour to file a supplemental submission regarding the applicability of collateral estoppel to any award of back pay beyond May 9, 2010 of no more than 25 pages by September 5, 2017; Defendants to file a response of no more than 25 pages by October 2, 2017; and Azkour to file a reply of no more than 10 pages by October 13, 2017.

## V. Sanctions

Because the Court has partially denied Defendants' motion for summary judgment on Plaintiff's Section 1981 claim and has ordered supplemental briefing on the issue of collateral estoppel in this case, the Court wishes to emphasize to Plaintiff the importance of following court orders.  On May 30, 2014, the Court sanctioned Azkour in the FLSA Action after he had made "numerous insulting and possibly threatening comments" against defense counsel.  (No. 10-cv-4132 (RJS), Doc. No. 224 at 1.)  The Court underscored:

> Plaintiff needs to understand that personal insults have no place in legal proceedings.  If he has a legal or factual argument, he should focus on the merits of his arguments.  If he feels the need to attack a person instead of an argument, however, he must restrain himself.  No further personal attacks – whether directed to opposing counsel or the Court – will be tolerated.  (*Id.*)

Nonetheless, as noted above, Azkour filed "numerous" additional submissions that were "full of offensive statements, personal insults, and threats directed at, and clearly intended to harass and intimidate, Defendants, their counsel, and even the Court" during the months following Judge Fox's issuance of the Report.  (Doc. No. 217 at 11.)  For example, Azkour repeatedly attacked and taunted defense counsel, asserting that he "has never acted in good faith while prosecuting th[is] . . . action or the [related] FLSA Action" (Doc. No. 210 at 5), is "a person of bad moral character," and "is not fit to appear before this Court or practice in any jurisdiction" (*id.* at 3).  Azkour also baselessly accused defense counsel of engaging in discriminatory acts in language that was both incoherent and disturbing.  (*See, e.g.*, *id.* ("Sadly, it appears that Mr. Hoffmann just follows the trend in this country, where Muslim and Arab Americans are dehumanized, demonized, murdered, and deprived of their most basic civil rights.").)  Moreover, Azkour's submissions contained implicit threats that Azkour intended to disclose unspecified harmful information about defense counsel.  (*See* Doc. Nos. 213, 215.)  Indeed, Azkour even went so far

as to accuse defense counsel of "unlawful acts of influencing court employees and judges." (Doc. No. 206 at 1 n.1.) Azkour's submissions fit a clear pattern of "very disturbing and potentially threatening" correspondence in both the FLSA and Civil Rights Actions. (No. 10-cv-4132 (RJS), Doc. No. 89 at 2.)[4]

In light of this erratic and threatening correspondence, the Court ordered that "Plaintiff shall make no new submissions in either [the FLSA Action or the Civil Rights Action] without first seeking permission – by submitting a *one-page* letter to the Court via the *Pro Se* Office stating the reason for the contemplated filing and citing the relevant legal authority for the relief sought – and obtaining an order from the Court authorizing the filing." (Doc. No. 217 at 12 (the "November 18, 2015 Order").) The Court warned Azkour that non-compliance with the November 18, 2015 Order, "or any further attempts to harass or intimidate Defendants, their counsel, or the Court," might result in sanctions, including dismissal pursuant to 28 U.S.C. § 1915. (*Id.* at 13.)

Nonetheless, on August 9, 2016, March 9, 2017, and March 17, 2017, Azkour submitted letters requesting vacatur of the judgments in the FLSA case under Rule 60 of the Federal Rules of Civil Procedure without first submitting a one-page letter to the *Pro Se* Office. (No. 10-cv-4132 (RJS), Doc. Nos. 349, 351, 352.) In keeping with his previous behavior, Azkour's submissions were full of invective. For instance, Azkour accused defense counsel of committing "an act of fraud on the Court" by arguing that his mental illness prevented him from working, a preposterous assertion in light of Plaintiff's own admissions in previous court filings as to his mental illness. (No. 10-cv-4132 (RJS), Doc. Nos. 349 at 1, 351 at 1, 352 at 2–3 & n.4); *see also Azkour*, 2017 WL

---

[4] For instance, in the FLSA action, Azkour compared defense counsel to a Tennessee state representative who had, in a publicly circulated video, burned a copy of the Koran. On another occasion, he baselessly accused his former attorney in that action, an Orthodox Jew, of "taking advantage of Plaintiff's impairments to advance his own interests and the interests of his coreligionists, [D]efendant Jean-Yves Hazoui and his counsel, Andrew S. Hoffman." (*See* No. 10-cv-4132 (RJS), Doc. Nos. 89 at 10; 115 ¶ 22.)

1609125, at *5–6 (discussing Plaintiff's numerous prior admissions regarding mental illness in the FLSA and Civil Rights Actions).  Azkour also made the disturbing and foundationless allegation that a physician who diagnosed him, Dr. Angela Kedzior, committed fraud, deliberately misdiagnosed him, and is an "unhinged" individual.  (No. 10-cv-4132 (RJS), Doc. No. 351 at 3 & n.6.)  The Court denied Azkour's vacatur motion as frivolous on April 28, 2017, *Azkour*, 2017 WL 1609125, at *9, and his reconsideration motion on May 26, 2017 (No. 10-cv-4132 (RJS), Doc. Nos. 356, 357, 358).

Mindful of the "special solicitude" that the Court must "afford" to "*pro se* litigants," *Koehl v. Bernstein*, 740 F.3d 860, 862 (2d Cir. 2014) (quoting *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010), as well as the Second Circuit's "strong preference for resolving disputes on the merits," *Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011), the Court has not sanctioned Azkour pursuant to the November 18, 2015 Order and has not dismissed this case pursuant to Section 1915(e).  But the Court will tolerate no further violations of its orders or threatening and insulting submissions of any kind.  Azkour is therefore reminded that, before making any submissions in the Civil Rights Case or the FLSA Case, he must seek permission – by submitting a *one-page* letter to the Court via the *Pro Se* Office stating the reason for the contemplated filing and citing the relevant legal authority for the relief sought – unless such submissions have been previously authorized by the Court.  Because the Court has directed Azkour to file a brief by September 5, 2017 and a reply by October 13, 2017, those two briefs – and only those two briefs – may be filed without submitting the one-page letter to the *Pro Se* Office, which is otherwise required with respect to all other submissions in this case.

The Court reiterates that failure to comply with this Order or the November 18, 2015 Order, or other attempts to harass or intimidate Defendants, their counsel, the Court, or any other

individuals connected with this litigation, may result in sanctions, including a fine payable to the

Clerk of Court or dismissal of this case pursuant to Rule 16(f)[5] of the Federal Rules of Civil

Procedure or 28 U.S.C. § 1915(e).[6]

## VI. CONCLUSION

For the reasons set forth above, the Court partially adopts and partially rejects the Report.

Specifically, IT IS HEREBY ORDERED that summary judgment is GRANTED to Defendants

Haouzi and Comperiati, and GRANTED to Defendants Macourt and LRT with respect to the

negative-reference claim.  IT IS FURTHER ORDERED that summary judgment is DENIED to

Defendants Macourt and LRT on the failure-to-hire and letter-of-reference claims.  The Clerk is

respectfully directed to:  (1) terminate Haouzi and Comperiati from this action, and (2) mail a copy

of this Order to Plaintiff.

IT IS FURTHER ORDERED that Azkour shall show cause, by filing a brief of no more

than 25 pages by September 5, 2017, as to why he should not be precluded from seeking back pay

for the period following May 9, 2017 under the doctrine of collateral estoppel for the reasons

---

[5] Fed. R. Civ. P. 16(f) (authorizing sanctions, including dismissal, for failure to follow a pre-trial order); *Carter v. Jablonsky*, 121 F. App'x 888, 889 (2d Cir. 2005) ("[W]e have recognized the propriety of a dismissal sanction [under Rule 16(f)] where a party fails to comply with court orders 'willfully, in bad faith, or through fault.'" (quoting *John B. Hull, Inc. v. Waterbury Petroleum Prod., Inc.*, 845 F.2d 1172, 1176 (2d Cir. 1988)); *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 247 (2d Cir. 2004) (noting, in decision addressing *pro se* litigant's failure to comply with pretrial order, that available sanctions include "dismissing the action or proceeding or any part thereof" under Rules 16(f) and 37(b)(2)); *see also, e.g.*, *Smith v. N.Y. Presbyterian Hosp.*, No. 05-cv-7729 (RJS), Doc. No. 288 (S.D.N.Y. Jan. 26, 2015), *appeal dismissed*, No. 15-604 (2d. Cir. Sept. 30, 2015) (dismissing action pursuant to Rule 16(f) for failure to comply with court orders).

[6] *See* 28 U.S.C. § 1915(e)(2)(B)(i) (authorizing dismissal of "frivolous or malicious" actions); *Nelson v. Eaves*, 140 F. Supp. 2d 319, 322 (S.D.N.Y. 2001) (dismissing action pursuant to Section 1915(e)(2) where plaintiff wrote "abusive, demeaning, and threatening letters to [a former lawyer for the defendant]," "continued to try to contact [the lawyer] even after [the court] issued [an] order to show cause," and plaintiff's "inappropriate and crude comments were not isolated" events); *see also Cameron v. Lambert*, No. 07-cv-9258 (DC), 2008 WL 4823596, at *4 (S.D.N.Y. Nov. 7, 2008) (similarly dismissing with prejudice under Section 1915(e)(2) in light of Plaintiff's "threatening and inappropriate conduct" and the fact that no "lesser sanction would suffice to address the misconduct"); *cf. Sunegova v. Vill. of Rye Brook*, No. 09-cv-4956 (KMK), 2011 WL 6640424, at *8 (S.D.N.Y. Dec. 22, 2011) (warning plaintiff that case would be dismissed with prejudice under Section 1915(e)(2) "if there is one more instance of threatening or inappropriate communication" to the court or to counsel).

outlined in Section IV of this order. IT IS FURTHER ORDERED that Defendants shall file a response of no more than 25 pages no later than October 2, 2017. IT IS FURTHER ORDERED that Azkour may file a reply of no more than 10 pages by October 13, 2017. The Court will schedule a trial and issue a schedule for pretrial submissions following resolution of the collateral estoppel issue.

SO ORDERED.

Dated:      July 17, 2017
            New York, New York



RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/17/17