UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



HICHAM AZKOUR,

Plaintiff,

-v-

No. 11-cv-5780 (RJS)
OPINION & ORDER

MAUCORT and LITTLE REST TWELVE,
INC.,

Defendants.

RICHARD J. SULLIVAN, District Judge:

Now before the Court is Defendants' motion for sanctions.  (Doc. No. 283 at 3.)  For the reasons set forth below, the Court grants Defendants' motion and dismisses this case with prejudice.

I.   BACKGROUND

Plaintiff commenced this action on August 8, 2011, alleging that the general manager of the restaurant where he was formerly employed improperly refused to rehire him or write him a letter of recommendation.  (Doc. Nos. 1, 2.)  The operative pleading, the Third Amended Complaint, was filed on February 2, 2012, and contains fifteen causes of action involving age discrimination, race discrimination, and retaliation, in violation of various federal, state, and local statutes.  (Doc. No. 40.)  Over the course of this litigation, the Court has issued rulings on Defendants' motions to dismiss (Doc. Nos. 75, 112) and for summary judgment (Doc. No. 224), resulting in dismissal of all but one of Plaintiff's claims; accordingly, the only remaining cause of action alleges that Defendants discriminated against Plaintiff on the basis on his race in violation of 42 U.S.C. § 1981.  (Id.)  As the record amply reflects, the Court has endeavored to adjudicate Plaintiff's case on the merits.  Nevertheless, Plaintiff has a lengthy and well-documented history

of abusive conduct directed toward Defendants, their counsel, and the Court, and the record is replete with the Court's attempts to manage Plaintiff's unruly behavior.[1]  As far back as January 13, 2012, the Court issued an order in response to a "series of disturbing and increasingly erratic letters" received from Plaintiff, in which Plaintiff made "numerous puzzling and at times incoherent and rambling references to matters that ha[d] nothing to do with this litigation" and included "an embedded video of a Tennessee state legislator discussing the Koran." (Doc. No. 19 at 2.)  In that order, the Court also addressed several "'very disturbing and potentially threatening email[s]' sent by Plaintiff to Defendants personally and to their counsel." (*Id.*)  In one of those emails, Plaintiff referred to Defendants as "coc******rs." (*Id.* at 19).  In another, he wrote, "I KNOW YOU BELIEVE I AM COOCOO, BUT I AM NOT," and "NOBODY IS GOING TO ABUSE ME ANYMORE. I'D RATHER DIE, THAN BE ABUSED." (*Id.* at 17.)  The Court directed Plaintiff "to refrain from any and all threatening and inappropriate communication with Defendants' counsel," and warned Plaintiff that "the Court will have no choice but to consider imposing sanctions against him" in the event that Plaintiff "is unwilling, or truly unable, to conduct himself in an appropriate and rational manner . . . ." (*Id.* at 3.)

Unfortunately, Plaintiff's harassing communications did not end.  In the months that followed, he continued to send letters to defense counsel containing "wild accusations" and "insults," such as one e-mail in which he wrote to defense counsel:  "You must have peanuts in your skull, instead of a brain. . . .  You're a retarded species.  I have never seen your like in any continent." (April 29, 2012 Letter from Plaintiff.)  Plaintiff also filed a series of frivolous motions, including a motion to hold defense counsel in contempt of court (Doc. No. 52) and a motion to

---

[1] Plaintiff also pursued a related case against the corporate defendant under the Fair Labor Standards Act (the "FLSA action").  *See Azkour v. Little Rest Twelve, Inc. et al.*, No. 10-cv-4132 (RJS).  Although Plaintiff's conduct during that litigation was similarly abusive, prompting repeated warnings and even sanctions from the Court, the Court does not include a full summary of that case here.

sanction defendants for "unlawful acts of witness intimidation and subornation of perjury" (Doc. No. 55). The Court concluded that these "repeated filings constitute[d] an abuse of the [Electronic Case Filing ("ECF")] system" and, in an order dated May 2, 2012, revoked Plaintiff's ECF account, ordered Plaintiff to "immediately cease all communication with Defendants' counsel and the Court that is not narrowly focused on the factual and legal issues properly before the Court" (*id*. at 2), and warned that "[f]ailure to comply with this Order will result in sanctions being imposed against Plaintiff" (*id.* at 3).

Around the same time in early 2012, Plaintiff filed a motion for the appointment of a guardian ad litem in which he represented to the Court that he suffered from "mental disabilities." (Doc. No. 24.) The magistrate judge to whom the Court referred this case for general pretrial supervision, Judge Fox, properly denied Plaintiff's request, noting that there is "no necessary relationship between mental incompetence of the sort that would warrant the appointment of a legal representative and various forms of mental derangement or personality disorder that may cause utterly bizarre and destructive conduct in litigation." (Doc. No. 86 at 8 (quoting *Ferrelli v. River Manor Health Care Ctr.*, 323 F.3d 196, 203 (2d Cir. 2003) (internal quotation marks omitted).) Even so, Plaintiff's motion injected the recurring issue of his mental health into this case. *See generally Azkour v. Little Rest Twelve*, No. 10-cv-4132 (RJS), 2017 WL 1609125, at *1 (S.D.N.Y. Apr. 28, 2017). Since then, Plaintiff has at times claimed to be mentally ill, suffering from "several mental health disorders" including "Adjustment Disorder," "Chronic Post Traumatic Stress Disorder," and "Major Depression Disorder" (Doc. No. 92 ¶ 121), while at other times he has denied ever making those statements and attacked the underlying medical reports that he himself submitted with his guardian ad litem request as false attempts to discredit him (*see, e.g.*, Doc. No. 223; Doc. No. 351, No. 10-cv-4132 ("FLSA Doc. No."); Doc. No. 298 at 17:18–19 ("Dec. 18 Tr."); Doc. No. 300 at 38:15–40:9 ("Jan. 4 Tr.")).

On October 7, 2013, Judge Fox denied Plaintiff's request to file a fourth amended complaint (Doc. No. 127), prompting Plaintiff to file a motion for reconsideration where he again made insulting and potentially menacing comments directed toward defense counsel (Doc. No. 131).  Among other things, Plaintiff described defense counsel as a "pretentious seventh grade pupil" who "uses big words without knowing their meaning," and claimed that he himself possessed "skills that require federal security clearance," a strange comment that in context caused defense counsel unease.  (Doc. No. 131 at 19, 20 n.12.)  Plaintiff's motion provoked the Court to issue an order reminding Plaintiff that the Court had "already addressed in a previous order Plaintiff's inappropriate behavior," warning that "if Plaintiff cannot abide by normal standards of decorum, the Court must consider sanctions," and ordering Plaintiff to show cause why he should not be sanctioned for filing "a harassing submission."  (Doc. No. 133.)  Thereafter, on April 2, 2014, the Court declined to sanction Plaintiff, but stressed that the order constituted his "last warning" before sanctions would be imposed.  (Doc. No. 164.)  Indeed, the Court advised Plaintiff that if he "ever again ma[de] any statement targeted towards Defendants' counsel that could, in any way, be construed as offensive or threatening, the Court [would] sanction Plaintiff $1,000." (*Id.*)

Just *weeks* later, on May 1, 2014, Plaintiff again violated the Court's directive, this time in his related FLSA action, by filing a submission in which he accused defense counsel of, among other things, "lack[ing] the required sound judgment and mental capacity for an attorney to perform his duty."  (FLSA Doc. No. 205.)  The Court issued a second order to show cause, which was met with an even more troubling response from Plaintiff, who accused the Court of "join[ing] [defense] counsel in his foul play."  (FLSA Doc. No. 221.)  Plaintiff went on to "question counsel's judgment . . . [and] this Court's as well"; he also accused Defendants of perjury, accused the Court of "bias and hostility," and insisted that his offensive statements about defense counsel were

factually accurate. (*Id.*) Plaintiff further maintained that he could not be sanctioned because the Court had not yet made a finding of "bad faith." (*Id.* at 11). In light of Plaintiff's submissions, the Court sanctioned Plaintiff $2,000 on June 2, 2014. (*See* FLSA Doc. No. 224.) The Court also warned Plaintiff that future violations of this sort – in any "future legal filings" – would result in sanctions of $5,000. (*Id.*)

Nevertheless, in light of the Second Circuit's clear preference to resolve cases on the merits, *see Sec. & Exch. Comm'n v. Setteducate*, 419 F. App'x 23, 24 (2d Cir. 2011), the Court – and Judge Fox – continued to press forward in Plaintiff's two cases. After granting Plaintiff partial summary judgment with respect to liability in the FLSA action (FLSA Doc. No. 98), the Court presided over a jury trial on the issue of damages in July 2014, at which time the jury awarded Plaintiff twelve weeks of back pay and $50,000 in punitive damages (FLSA Doc. No. 279). Following post-trial briefing, the Court denied Plaintiff's motion for judgment as a matter of law or, in the alternative, for a new trial and Defendants' motion for judgment as a matter of law on the issue of back pay. (FLSA Doc. No. 317.) However, in light of Plaintiff's failure to put on any evidence, the Court granted Defendants' motion for judgment as a matter of law as to punitive damages, an issue for which Plaintiff carried the burden of proof. (*Id.*) Plaintiff thereafter appealed the Court's rulings, which were affirmed by the Second Circuit. *Azkour v. Little Rest Twelve, Inc.*, 645 F. App'x 98, 100 (2d Cir.), *cert. denied*, 137 S. Ct. 390 (2016), *reh'g denied*, 137 S. Ct. 716 (2017).

In this case – the discrimination/retaliation action – Defendants moved for summary judgment, which was rejected by Judge Fox in a report and recommendation that was ultimately adopted by the Court. (Doc. Nos. 200, 224.) Nevertheless, before and after these rulings, Plaintiff persisted in making *ad hominem* attacks against defense counsel. For example, Plaintiff filed a number of requests for this Court to sanction counsel (Doc. Nos. 207, 210), disqualify counsel

(Doc. No. 213), and refer counsel to the District's Grievance Committee for suspension or disbarment (Doc. No. 215).  Throughout these filings, Plaintiff made spurious and baseless allegations against defense counsel, including that he had committed criminal acts of perjury (Doc. No. 213) and engaged in bad-faith "scare tactics" and a "pattern of intimidation" against Plaintiff (Doc. No. 210 at 5).  Plaintiff's malicious filings required the Court to issue an order, dated November 18, 2015, denying Plaintiff's numerous requests for sanctions and other relief.  (Doc. No. 217.)  In that order, the Court also made the unambiguous finding that "Plaintiff's papers [were] clearly threatening, offensive, and abusive."  (*Id*. at 11–12.)  After explaining why Plaintiff's motions were frivolous, providing a lengthy catalog of Plaintiff's pattern of abusive tactics, and elaborating on the Court's inherent power to sanction recalcitrant litigants, the Court again put Plaintiff on firm notice that "future filings in violation of this Order may warrant sanctions and other penalties, including dismissal of this action."  (*Id*. at 7–13.)  Although the Court declined to impose monetary sanctions at that time, the Court prohibited Plaintiff from filing any "new submissions . . . without first seeking permission . . . and obtaining an order from the Court authorizing the filing."  (*Id*.)

Remarkably, on February 4, 2016, the Court received a letter from defense counsel notifying the Court of additional offensive statements made by Plaintiff in a letter submitted to the Second Circuit pertaining to his related FLSA case, which was at that point on appeal.  (Doc. No. 218.)  Plaintiff's submission, a request for oral argument, asserted that "not even a mentally deficient person [could] accept Judge Sullivan's rulings," suggested that defense counsel had an "unhinged mind," called "into question the sanity of [Defendants] and their counsel," and accused defense counsel of "dirty tactics" and "vile attacks" against Plaintiff.  (Doc. No. 218-1.)  Because Plaintiff's submissions to the Second Circuit did not technically violate the Court's previous order, which only applied to submissions made by Plaintiff in "this action," the Court declined to impose

sanctions.  (Doc. No. 219.)  Nevertheless, the Court again reminded Plaintiff that the Court would "not tolerate future frivolous submissions in this case that are primarily intended to harass and intimidate Defendants, their counsel, or the Court."  (*Id*. at 2.)

In the fall of 2016, Plaintiff unleashed a new series of letters in the FLSA action that were full of invective and clearly in violation of the Court's earlier order requiring Plaintiff to obtain the Court's permission before filing any documents.  (FLSA Doc. Nos. 349, 351, 352.)  In one such submission – ostensibly seeking reconsideration of the Court's prior order denying his motion for judgment as a matter of law – Plaintiff asserted that defense counsel had "maliciously used [Plaintiff's] alleged mental health condition to initiate criminal proceedings" against him and "denied [Plaintiff] access to the courthouse building on false allegations of violence due to mental illness."  (FLSA Doc. No. 351.)  Among the targets of Plaintiff's tirades was the physician who signed a report attached to Plaintiff's *own* motion for the appointment of a guardian ad litem, who Plaintiff accused of "fraudulently" diagnosing him with "major depressive disorder," "post-traumatic stress disorder," "delusional disorder," "alcohol disorder," and "chronic paranoid schizophrenia."  (*Id*. at 3; Doc. No. 224 at 25.)  Notwithstanding the fact that Plaintiff himself had introduced these documents into the record, Plaintiff now accused the physician of "fantastically misrepresenting facts," deliberately misdiagnosing him, and of being an "unhinged" individual. (FLSA Doc. No. 351 at 3 & n.6.)  In an order dated July 14, 2017, the Court noted that Plaintiff had continued his pattern of making baseless accusations against third parties, and although the Court again declined to impose sanctions on Plaintiff, it nevertheless reiterated that "no further violations of its orders or threatening and insulting submissions of any kind" would be tolerated. (Doc. No. 224.)  The Court warned that failure to comply with the Court's order would result in dismissal of this action.  (*Id.*)  This marked the seventh time that Plaintiff had been threatened with

sanctions, including the ultimate sanction of dismissal.  (*See* Doc. Nos. 19, 60, 133, 164, 217, 219, 224.)

## II. RECENT EVENTS

On October 24, 2017, the Court issued an order scheduling a trial in this matter to commence on January 8, 2018.  (Doc. No. 234.)  Since then, Plaintiff has continued to flout the Court's unambiguous orders and make baseless accusations against the Court and defense counsel. For example, after the deadline for pretrial submissions elapsed, Plaintiff filed more than a dozen letters requesting various Court actions.  Plaintiff also issued trial subpoenas to third parties previously unidentified in this litigation, thus circumventing the pretrial order's requirement that all trial witnesses be identified by November 17, 2017.  (*Id*. at 3.)  The Court was forced to hold a pretrial conference on December 18, 2017 – significantly earlier than originally scheduled – because Plaintiff's trial subpoenas not only surprised the Court and defense counsel, but also third parties who were inappropriately served with such subpoenas.

At the December 18, 2018 conference, the Court ruled on the admissibility of the testimony of the witnesses subpoenaed by Plaintiff and unambiguously instructed Plaintiff that he would not be permitted to call expert witnesses who had not been properly noticed during discovery.  (Dec. 18 Tr. 18:16–18 ("[W]e're not going to be having experts in this case because nobody has noticed any experts in this case.")  The Court also made clear that the parties were not "redoing discovery" because "discovery is over."  (*Id*. 30:2.)  Even so, Plaintiff insisted on pursuing the issue further, at which point the Court said, "Again, I thought I made it clear. . . . [T]here is no relevance to expert testimony in this case.  It seems to me that you haven't given notice of your desire to call

experts in this case.  So for those reasons you'[re] precluded from introducing that evidence, for both those reasons. . . .  There are not going to be any experts testifying."  (*Id.* 33:22–34:4.) [2]

Notwithstanding the Court's clear – and repeated – rulings, Plaintiff deliberately defied the Court's orders.  Two days after the conference, Plaintiff filed a "Notice of Rule 30(b)(6) Deposition" directed toward an expert witness whose testimony the Court had already explicitly precluded during the December 18, 2017 pretrial conference.  (Doc. No. 269.)  The docket also reflected that, as of December 20, 2017, Plaintiff had requested the issuance of another trial subpoena by the Pro Se Intake Office.  And on December 22, 2017, Plaintiff again subpoenaed witnesses whose testimony the Court had already precluded at the initial pretrial conference.  (Doc. Nos. 284, 285, 286.)  Plaintiff's December 20, 2017 submission and the Pro Se Intake Office's docket entry prompted the Court to issue another order directing Plaintiff to cease subpoenaing third parties without prior approval from the Court and requiring that Plaintiff file a premotion letter with the Court prior to filing any additional "motions."  (Doc. No. 273.)[3]  This directive was largely duplicative of the Court's November 18, 2015 order, which instructed Plaintiff not to file any "submissions" absent prior approval from the Court.  (Doc. No. 217.)  The Court also warned Plaintiff that "[f]ailure to comply with this Order will result in sanctions, including dismissal of Plaintiff's case under Rule 16(f), 41(b), and the Court's inherent sanctioning power."  (Doc. No. 273 at 2.)

---

[2] During the December 18, 2017 conference, the Court also questioned the accuracy of one of Plaintiff's claims in a pretrial submission, specifically, Plaintiff's representation that he had "prevailed" in litigation prosecuted in another district.  After reviewing the docket in that case, the Court determined that Plaintiff's case had in fact been dismissed as a sanction for failing to comply with discovery orders – a judgment affirmed by the Third Circuit.  *See Azkour v. Aria*, 330 F. App'x 373 (3d Cir. 2009).  Plaintiff denied that fact and has since continued to insist that he "prevailed" in that litigation, going so far as to accuse the Court of perpetuating a "fallacy" that is "intended to discredit [him]." (Doc. No. 278 at 7.)  The Court addressed the falsity of Plaintiff's allegations in its order dated December 29, 2017 (*id.* at 4–5), and declines to revisit this issue here, except to note that this dispute is simply another example of Plaintiff's pattern of making false accusations against the Court (and others) in clear violation of the Court's orders.

[3] The Court's December 22, 2017 Order was issued before Plaintiff's affidavits of service for the December 22, 2017 subpoenas were docketed, and therefore the Court was unaware of those subpoenas when it issued its order.

On December 26, 2017, the Court received another letter from Plaintiff, this time notifying the Court that he would, "in good faith," file "a timely and sufficient affidavit pursuant to 28 U.S.C. § 144" – the federal recusal statute – in light of the Court's "acts of bias and prejudice against [him]." (Doc. No. 278 at 7.) Plaintiff accused the Court of "intimidating" him "with criminal investigations," "communicating ex parte with the [D]efendants and their counsel," and "retaliating against [him] for having complained of extrajudicial acts of misconduct to the Second Circuit's Chief Judge."[4] (*Id.*) Of course, these accusations were not new – Plaintiff made similar accusations of prejudice in the FLSA action, where he claimed that the Court was engaging in "foul play" and accused the Court of, *inter alia*, "bias and hostility." (FLSA Doc. No. 224.) As warned in its prior order addressing those accusations, the Court issued an order on December 29, 2017 sanctioning Plaintiff $5,000 in light of Plaintiff's pattern of making baseless accusations of "bias and hostility" against the Court. (Doc. No. 278 at 5.) Importantly, the Court gave "special attention" to Plaintiff's utterly unsubstantiated charges of bias, prejudice, retaliation, and intimidation, writing that those kinds of accusations in particular "threaten to undermine the dignity of the Court and the public's and potential jurors' respect for our system of justice." (*Id.*) The Court proceeded to make very clear that should Plaintiff continue making "baseless and insulting accusations against the Court," the Court would dismiss this case with prejudice, notwithstanding that dismissal "is a harsh remedy to be used only in extreme circumstances." (*Id.*

---

[4] Specifically, Plaintiff accused the Court of: (1) "den[ying]] [Plaintiff] the right to issue subpoenas to previously identified witnesses and to file motions in limine in preparation for the trial scheduled on January 8, 2017," (2) "threaten[ing] [Plaintiff] with sanctions . . . in retaliation for [his] complaint to the Court that defendant Little Rest Twelve, Inc. refuses to designate a person to testify and defend on its behalf," (3) "falsely stat[ing] that Bowery Residents' Committee, Inc. [a third party subpoenaed by Plaintiff] is not a previously disclosed witness," (4) "misrepresenting . . . that [Plaintiff] mischaracterized facts when [he] claimed that [he] had prevailed in the New Jersey suits" in an effort "to discredit [him]," and (5) "communicating ex parte with the defendants and their counsel." (Doc. No. 278.) Plaintiff also (again) accused the Court of "manifest bias and prejudice," "retaliation," "intimidation," and of "interfering with [his] constitutional rights to have a fair trial under the Seventh Amendment and the Due Process Clause of the Fourteenth Amendment to the United States Constitution." (*Id.*)

at 6 (citation omitted).)  The Court stressed that "Plaintiff is now on notice that the Court will tolerate no further expressions of disrespect, toward the Court or defense counsel," and again made explicit that baseless accusations against the Court would result in dismissal of this case.  (*Id.*)

On the same day that the Court sanctioned Plaintiff, but before the Court's order was docketed, Plaintiff filed a formal recusal motion pursuant to 28 U.S.C. § 144 and 455(a)–(b)(1), again citing the Court's "bias, prejudice, partiality, violation of the Due Process Clause, and retaliation" as grounds for his motion.[5]  (Doc. No. 279.)  Plaintiff also filed a supporting affidavit (Doc. No. 280), as required by the recusal statute, that made a series of extraordinary claims, including that the Court had "ordered" a "criminal proceeding" against Plaintiff (*id.* ¶ 82), that the Court "harbors extreme animosity towards [Plaintiff] because of [his] race (Arab) and religion (Muslim)" (*id.* ¶ 31), and that "in bad faith, [the Court] used mental illness to deny [Plaintiff] due process and a fair trial" during the related FLSA action (*id.* ¶ 69).  Plaintiff also attributed a series of statements to Deputy U.S. Marshal Scott Hicks, whom Plaintiff identified as a "criminal investigator" (*id.* ¶ 49), claiming that Hicks had "informed [Plaintiff] that the 'court' ordered an investigation on [Plaintiff] based on allegations that [Plaintiff] threatened the 'court' and [defense counsel] with acts of violence," and that "the 'court' also ordered a surveillance of [his] electronic submissions to the Court."  (*Id.*)  Plaintiff's affidavit directly quoted Deputy Marshal Hicks as telling Plaintiff that he "was subjected to bias and prejudice," that "the 'person' who complained to the Marshals must have a sentiment of deep-seated hatred towards [Plaintiff]" (*id.* at ¶ 65), that "'someone' tried to prevent [Plaintiff] from accessing the courts," and that "'someone' was also trying to pick the 'fruit from the poisonous tree' to harm [Plaintiff]" (*id.* at ¶ 64).  According to

---

[5] Although Plaintiff's motion was filed before the Court issued its order sanctioning Plaintiff on December 29, 2017, the Court did not receive the motion until January 2, 2018.

Plaintiff's affidavit, Deputy Marshal Hicks also "made statements questioning [the Court's] impartiality." (*Id.* ¶ 80.)

On January 2, 2018, Defendants filed an affidavit in opposition to Plaintiff's recusal motion. (Doc. No. 283.) In that submission, Defendants also requested that the Court dismiss this case in light of Plaintiff's continued inability to abide by court orders and suggested that the Court undertake an inquiry as to the truthfulness of the claims asserted in Plaintiff's affidavit, specifically urging the Court to question Deputy Marshal Hicks about the statements attributed to him by Plaintiff. (*Id.* at 2.)

On January 3, 2017, Plaintiff filed another request – styled as an "affidavit" – seeking enforcement of a trial subpoena he previously issued to corporate Defendant Little Rest Twelve. (Doc. No. 288.) That request was in blatant violation of the Court's December 22, 2017 order directing Plaintiff not to issue any more subpoenas of the sort. (Doc. No. 273.) On the same day, Plaintiff also submitted a request to the Clerk of Court – again without providing prior notice or receiving approval from the Court – for a default judgment against Defendant Little Rest Twelve, citing as grounds for his request that "Little Rest Twelve, Inc. refuses to appear, testify, and defend at the January 8, 2018 trial." (Doc. No. 289.)

On January 4, 2018, minutes before the beginning of the scheduled pretrial conference, Plaintiff filed a letter requesting that the Court reconsider and vacate its December 29, 2017 order sanctioning him. (Doc. No. 291.) In that submission, Plaintiff mischaracterized the Court's order as "sanctioning [him] $5,000 for allegedly failing to file a timely and sufficient affidavit supporting [his] December 26, 2017 letter," and again accused the Court of "retaliat[ing] against [him] for exercising [his] rights." (*Id.*) Plaintiff concluded his letter with yet another accusation: "The Court's decision to sanction me $5,000 was not made in good faith. It is an act of pure retaliation and constitutes manifest injustice." (*Id.*)

12

In the final episode of this litigation, the Court held a conference on January 4, 2018. That conference was originally meant to serve as the final pretrial conference, but in light of Plaintiff's recusal motion and Defendants' opposition, including Defendants' request for a dismissal sanction, the Court determined that it would address those issues first. The Court began by denying Plaintiff's motion to recuse for the reasons stated on the record at that conference. (Jan. 4 Tr. 3:19–7:5.). Briefly, the Court accepted all of Plaintiff's nonconclusory allegations as true for the purposes of the motion, as required by longstanding precedent, *see Berger v. United States*, 255 U.S. 22, 33–35 (1921), but determined that the majority of the claims in Plaintiff's motion were untimely, *Apple v. Jewish Hosp. & Med. Ctr.*, 829 F.2d 326, 333–34 (2d Cir. 1987). The Court further concluded that Plaintiff's timely allegations – pertaining to the Court's evidentiary rulings at the December 18, 2017 conference – were insufficient to warrant recusal, since they merely took issue with the Court's pretrial decisions. *See Liteky v. United States*, 510 U.S. 540, 555 (1994); *Chen v. Chen Qualified Settlement Fund*, 552 F.3d 218, 227 (2d Cir. 2009).

Next, the Court turned to Defendants' sanctions motion and to the issue of Plaintiff's affidavit. At that time, the Court called Deputy Marshal Hicks to testify about the statements he purportedly made to Plaintiff. After being confronted with the various statements attributed to him, Deputy Marshal Hicks denied making virtually all of them, demonstrating the falsity of Plaintiff's affidavit. Equally troubling, however, were Plaintiff's numerous interruptions of Hicks' testimony and his insistence on speaking over the witness and the Court during the examination. Indeed, the Court was forced to admonish Plaintiff several times, but the outbursts continued. After the Court concluded its questioning, Plaintiff was permitted to examine Deputy Marshal Hicks, but he elicited no testimony relevant to the veracity of the statements contained in Plaintiff's affidavit. Rather, Plaintiff insisted on pursuing alternative, irrelevant lines of questioning – including with respect to Plaintiff's mental health – until the Court was forced to intervene and

13

direct Plaintiff to limit his questions to the relevant issues.  (Jan. 4 Tr. 32:14–25.)  Toward the end of Plaintiff's questioning, Plaintiff suggested that all of the statements he attributed to Deputy Marshal Hicks might have instead been made by another Deputy, notwithstanding Plaintiff's assertion at the beginning of Hick's testimony that "I remember everything I said to him and everything he said to me."  (*Id*. 17:3–4.)

Plaintiff thereafter returned to the issue of his mental health and accused defense counsel of falsely asserting that he suffered from mental illness "to incite [the Court] to sanction [Plaintiff]" (*Id*. 38:16-17), and insisted that he did not suffer from mental illness, despite the fact that – as noted above – Plaintiff himself had submitted, among other filings, a motion for the appointment of a guardian ad litem that set forth in great detail his claimed mental disabilities.  (Doc. No. 24). Confronted with his own statements, Plaintiff explained that his prior motion for the appointment of a guardian was really just a "tactical motion" filed in response to defense counsel's "harassing" behavior, and that he knew all along that "it was going to be rejected."  (Jan. 4 Tr. 39:16–21.) When asked by the Court to clarify whether he "knowingly made . . . a baseless motion for tactical reasons?" Plaintiff responded:  "If you want to sanction me for that, your Honor, you may do it." (*Id*. 39:16–40:3.)

Although the Court reserved judgment on Defendants' motion for sanctions, the Court nevertheless observed that it was likely to dismiss the case, noting that there was no reason to believe the Plaintiff – who was already in violation of several Court orders and who was apparently undeterred by sanctions – would comply with any of the Court's directives at trial. (*Id*. 35:12–25.)

### III.  LEGAL STANDARD

There can be no dispute that the Court has the inherent power to sanction Plaintiff; that power has long been implied from the nature of the judiciary itself.  *Chambers v. NASCO, Inc*., 501 U.S. 32, 43 (1991) (quoting *United States v. Hudson*, 7 Cr. 32, 34 (1812) and *Roadway*

*Express, Inc. v. Piper*, 447 U.S. 752, 764 (1880)); *Ex parte Robinson*, 9 Wall 505, 510 (1874) ("The power to punish for contempts is inherent in all courts."). As the Supreme Court observed nearly two hundred years ago, "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Chambers*, 501 U.S. at 43 (quoting *Anderson v. Dunn*, 6 Wheat. 204, 227 (1821)). Indeed, that power is "essential to the preservation of order in judicial proceedings, and to the enforcement of the . . . orders . . . of the courts, and consequently to the due administration of justice." *Robinson*, 9 Wall, at 510.

The Supreme Court has held that the sanctioning power includes the authority "to levy sanctions in response to abusive litigation practices." *Roadway Exp*., 447 U.S. at 765 (citing *Link v. Wabash R. Co.*, 370 U.S. 626, 632 (1962)). That power is not defined or circumscribed by rule or statute. *Chambers*, 501 U.S. at 49 (citing *Link*, 370 U.S. at 630–31). Indeed, "the fact that there may be a statute or rule which provides a mechanism for imposing sanctions of a particular variety for a specific type of abuse does not limit a court's inherent power to fashion sanctions, even in situations similar or identical to those contemplated by the statute or rule." *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 136 (2d Cir. 1998) (citing *Chambers*, 501 U.S. at 45– 46).[6] Moreover, the Court may impose sanctions *sua sponte*. *Ransmeier v. Mariani*, 718 F.3d 64, 68 (2d Cir. 2013) (citing *Chambers*, 501 U.S. at 42 n.8).

In light of "their very potency, inherent powers must be exercised with restraint and discretion," *Chambers*, 501 U.S. at 44; a district court effectively plays the role of "accuser, fact

---

[6] Other sources of sanctioning power potentially relevant here include: Federal Rules of Civil Procedure 11 for filing frivolous motions and pleadings and/or making misrepresentations to the Court; Rule 16(f) for failure to obey a pretrial order; and 18 U.S.C. § 401 for contempt of court. Because the Court finds that "the conduct sanctionable under the Rules was intertwined within conduct that only the inherent power could address," it relies on its inherent power so as not "to foster extensive and needless satellite litigation, which is contrary to the aim of the Rules themselves." *Chambers*, 501 U.S. at 51.

finder and sentencing judge" all at once, *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 113–14 (2d Cir. 2009) (citation and internal quotation marks omitted).   Nevertheless, a "primary aspect" of the discretion to impose sanctions is "the ability to fashion an appropriate sanction for conduct which abuses the judicial process."  *Chambers*, 501 U.S. at 43–44.  And although dismissal with prejudice is a harsh sanction, it is incontrovertibly within the Court's discretion to impose when justified.  *Id*. at 45 (citing *Roadway Exp*., 447 U.S. at 765); *Mickle v. Morin*, 297 F.3d 114, 125 (2d Cir. 2002).

To that end, before invoking its inherent sanctioning power to dismiss a case with prejudice, the Court must show that it has employed – or at least "considered" – less drastic sanctions.  *S. New. Eng. Tel. Co. v. Global NAPs Inc*., 624 F.3d 123, 144 (2d Cir. 2010); *but see id*. at 148 (remarking that "district courts are not required to exhaust possible lesser sanctions before imposing dismissal or default if such a sanction is appropriate on the overall record"). Courts must also establish that the offending party was provided adequate notice that his conduct was sanctionable and an opportunity to be heard on the issue.  *Mickle*, 297 F.3d at 126.[7]  Finally, in the Second Circuit at least, the Court must make specific factual findings that a litigant acted in bad faith.[8]  *Id*. at 114; *Sec. & Exch. Comm'n v. Smith*, 710 F.3d 87, 97 (2d Cir. 2013); *In re Pennie & Edmonds LLP*, 323 F.3d 86, 90 (2d Cir. 2003); *but see id*. at 90 n.3 (noting that under certain

---

[7] The Supreme Court has held that "the absence of notice as to the possibility of dismissal or the failure to hold an adversary hearing" does not always "render such a dismissal void."  *Link*, 370 U.S. at 632.  Instead, the "adequacy of notice and hearing . . . turns, to a considerable extent, on the knowledge which the circumstances show [the litigant] may be taken to have of the consequences of his own conduct." *Id.*  Indeed, the Second Circuit has recognized that sufficiency of notice must be evaluated "in its totality."  *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 334 (2d Cir. 1999).

[8] The Court notes that this requirement of bad faith is in considerable tension with the Supreme Court's inherent-sanctioning-power jurisprudence.  *See generally*, *Chambers*, 501 U.S. at 59 (Scalia, J., dissenting) ("[A] 'bad-faith' limitation upon the particular sanction of attorney's fees derives from our jurisprudence regarding the so-called American Rule[.] . . .  We have held . . . in my view as a means of preventing erosion or evasion of the American Rule[,] [that] fee shifting as a sanction can only be imposed for litigation conduct characterized by bad faith.  But that in no way means that all sanctions imposed under the courts' inherent authority require a finding of bad faith. They do not." (citing *Redfield v. Ystalyfera Iron Co*., 110 U.S. 174, 176 (1884); *Link*, 370 U.S. 626)).

circumstances, the Court need only find "clear and convincing" evidence that the party violated a "clear and unambiguous" Court order before imposing sanctions). Thus, sanctions are appropriate where there is clear evidence that the conduct at issue is "(1) entirely without color and (2) motivated by improper purposes," findings that "must be supported by a high degree of specificity . . . ." *Id*. In addition, the Second Circuit has suggested that "egregious disrespect for the Court or judicial process," *Ransmeier*, 718 F.3d at 68, and "flagrant violation of the court's repeated orders to respect the dignity of the judicial proceeding," *Koehl v. Greene*, 424 F. App'x 61, 62 (2d Cir. 2011), justify the imposition of sanctions, as does "harassment," *DLC Mgmt. Corp*., 163 F.3d at 136 (quoting *United States v. Int'l Bhd. of Teamsters*, 948 F.2d 1338, 1345 (2d Cir. 1991)).

## IV. DISCUSSION

As previously noted, the Court has attempted throughout this litigation to reach a disposition of Plaintiff's case on the merits. The Court has already presided over a trial in Plaintiff's related action, issued numerous opinions in both cases, and devoted what can only be described as *substantial* judicial resources in responding to Plaintiff's court filings and attempting to control his abusive conduct toward virtually everyone involved in this litigation. Nevertheless, Plaintiff's flagrant disregard of the Court's directives and increasingly outrageous conduct in the weeks leading up to the scheduled trial compel dismissal of this action.

### A. Lesser Sanctions

The Court has already threatened – and employed – lesser sanctions, and concludes that no sanction less severe than dismissal with prejudice will effectively address Plaintiff's conduct. Early on, the Court sanctioned Plaintiff by removing his access to ECF after he continued to send harassing communications to defense counsel. (Doc. No. 60). More recently, the Court imposed a $5,000 monetary sanction against Plaintiff in response to his making baseless and insulting accusations against the Court. (Doc. No. 278.) And in the related FLSA action, the Court

17

sanctioned Plaintiff $2,000 for similar conduct.  (FLSA Doc. No. 224.)  The record demonstrates that these lesser sanctions have been wholly ineffective in controlling Plaintiff.  (*Compare* FLSA Doc. No. 224 (Court order dated June 2, 2014), *with* Doc. No. 210 (Plaintiff's submission dated September 22, 2015); *compare* Doc. No. 278 (Court order dated December 29, 2017), *with* Doc. No. 291 (Plaintiff's submission dated January 4, 2018).)   In addition, because Plaintiff is proceeding *in forma pauperis*, monetary sanctions are largely meaningless since they may be imposed only against a potential future recovery.

### B.   Adequacy of Notice

As to the adequacy of prior notice, the Court has warned Plaintiff on many occasions that his conduct, if continued, would result in the dismissal of his case.  (*E.g.*, Doc. Nos. 217 at 13, 224 at 26, 273 at 2, 278 at 6.)  Most recently, the Court explained that false accusations against the Court undermined the dignity of judicial proceedings and warned Plaintiff that if he continued to make such accusations, his case would be dismissed.  (Doc. No. 278.)  The Court also warned Plaintiff that failure to comply with the Court's orders, including its evidentiary rulings and filing requirements, would also result in dismissal.  (*E.g.*, Doc. No. 273.)  Moreover, Plaintiff had ample opportunity to be heard at the conference on January 4, 2018, where the Court reserved on the issue of imposing sanctions and engaged in a lengthy dialogue with Plaintiff about his conduct.

### C.   Sanctionable Conduct

Finally, Plaintiff's conduct warrants dismissal of his case.  Since the Court scheduled trial, Plaintiff has willfully ignored numerous Court orders by: (1) omitting information required by the Court's pretrial order, which was relevant to the Court and defense counsel's preparation for trial, (2) ignoring the Court's evidentiary rulings at the initial pretrial conference and subpoenaing witnesses whom the Court had already excluded, and (3) flouting the Court's instruction that he first obtain permission before making additional filings by submitting, among other things, a

request for a default judgment premised on an argument the Court already rejected.  Each instance of noncompliance further burdened the Court and demonstrated Plaintiff's utter lack of respect for the Court's authority to manage its proceedings.  Although the Second Circuit has instructed that "pro se litigants may in general deserve more lenient treatment than those represented by counsel," the law is clear that "all litigants, including pro ses, have an obligation to comply with court orders. When they flout that obligation they, like all litigants, must suffer the consequences of their actions."  *Greene*, 424 F. App'x at 61 (quotation marks omitted) (quoting *McDonald v. Head Criminal Ct. Supervisor Officer*, 850 F.2d 121, 124 (2d Cir. 1988); *see also Minotti v. Lensink*, 895 F.2d 100, 103 (2d Cir. 1990).

Although it hardly bears repeating, Plaintiff's recent offenses are simply the latest examples of intransigent behavior dating back to the initiation of this action in 2011.  The Court is not required to shield its eyes from prior conduct when fashioning an appropriate sanction.  *Link*, 370 U.S. at 663 (courts properly reviewed "the history of [the] litigation" and "all the circumstances surrounding counsel's action in the case" when imposing dismissal sanction); *see also Ransmeier*, 718 F.3d at 67 (evaluating "the totality" of litigants' "behavior").  Such a cumulative approach is even more fitting in the context of a multi-year litigation like this one.  Put simply, Plaintiff should not be permitted to escape the consequences of his repeated misconduct simply because the Court often exercised leniency when addressing each isolated instance.

In addition to defying Court orders, Plaintiff has also displayed an enormous lack of respect for judicial proceedings and a complete unwillingness or inability to control his courtroom behavior.  At the January 4, 2018 conference, Plaintiff frequently interrupted the witness and the Court.  When the Court directed Plaintiff to cease interrupting, Plaintiff simply continued to speak over the Court.  More than once while the Court was questioning Deputy Marshal Hicks, Plaintiff interrupted with "objections" and proceeded to offer his own version of the facts.  This behavior

prompted the Court to say to Plaintiff, "Just so the record is clear, you have multiple times interrupted with an objection and then you have launched into your own testimony. You have done that –," at which point Plaintiff *again* interrupted the Court. (Jan. 4 Tr. 19–22.)

Plaintiff's lack of respect for the judicial process is particularly illustrated by Plaintiff's submission of a false affidavit in connection with his recusal motion. Specifically, Plaintiff's affidavit claimed that Deputy Hicks told him that (1) "the 'court' . . . ordered a surveillance of [Plaintiff's] electronic submissions to the 'court,'" (2) "[Deputy Hicks] reasonably believed . . . that [Plaintiff] was subjected to bias and prejudice," and (3) the person who "complained to the Marshals must have a sentiment of deep-seated hatred towards [Plaintiff]." (Doc. No. 280 at 14–15.) In addition, Plaintiff affirmed that Deputy Hicks "made statements questioning [the Court's] impartiality." (*Id.* at 17.) Having conducted an evidentiary hearing at which Deputy Marshal Hicks was questioned by the Court and by Plaintiff, the Court finds that the statements attributed to Hicks in Plaintiff's affidavit were knowingly false. The Court further finds that Plaintiff's contentions of judicial "bias," "hostility," "prejudice," "intimidation," and "retaliation" reflect a relentless desire to discredit the reputation of the Court whenever he is dissatisfied with the Court's rulings. Such tactics are invidious and harmful to this institution; indeed, the Second Circuit has recognized that false accusations of judicial bias uniquely "undermine the integrity of the judicial process." *Ransmeier*, 718 F.3d at 68–69; *see also Gallop v. Cheney*, 660 F.3d 580, 584 (2d Cir. 2011) (per curiam), *vacated in part on other grounds*, 667 F.3d 226, 231 (2d Cir. 2011).

The Court also finds that sanctions are necessary to deter future litigants from similar misconduct. *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976). Even though he has been previously sanctioned, Plaintiff has remained undeterred and, it may be argued, emboldened to further challenge the Court's authority. Should the Court permit this case to go forward, it would suggest to other litigants that this is an acceptable way to litigate in the Courts

of the United States, and that judges may only threaten but never follow through on promised sanctions, even when confronted with the most egregious misconduct.

V.  CONCLUSION

For the reasons stated above, this case must be dismissed with prejudice.  The Court has attempted to shepherd this case to a final disposition on the merits of Plaintiff's claim, at times declining to impose sanctions when they were obviously called for.  But every act of indulgence toward Plaintiff is also an imposition on Defendants, their counsel, the Court, and the public, each of whom has a compelling interest in the orderly and respectful resolution of this action.  There is a limit to what any court should be forced to endure in the process of adjudicating a litigant's claim and, more importantly, to the tactics our system of justice must countenance.  Plaintiff may not use the legal system to harass and disparage Defendants, their counsel, or the Court, and the Court is convinced that proceeding with a trial in this action would only serve to demean this institution.

Accordingly, IT IS HEREBY ORDERED THAT this action is dismissed with prejudice. The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

Dated:      January 18, 2017
            New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE